# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

SHARMELL TAYLOR,

Plaintiff,

v.                                              5:24-CV-188
                                                (DNH/MJK)

EXPERIAN and CREDIT ACCEPTANCE
CORPORATION,

Defendants.

SHARMELL TAYLOR, Plaintiff, pro se

MITCHELL J. KATZ, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review an amended complaint (Dkt. No. 6) ("AC"), filed by plaintiff in response to this court's February 14, 2024 Order and Report-Recommendation (" February 2024 ORR") and the District Court's approval of that recommendation on March 7, 2024 (Dkt. Nos. 4, 5).  In the February 2024 ORR, this court granted plaintiff's application to proceed in forma pauperis based on her financial eligibility. (Dkt. No. 4 at 1).

However, I also stated that in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

1

seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiffs' complaint under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

2

Plaintiff has now filed a proposed amended complaint, which I will review based on the above standards.

## I.    __Amended Complaint__

Plaintiff asserts that defendant Experian, a credit reporting agency, "never received consent to report the information on plaintiff's consumer report." (AC at 6-7). Plaintiff alleges that Experian nevertheless "provided [defendant] Credit Acceptance Corporation with access to the [plaintiff's] consumer report and allowed Credit Acceptance Corporation to use it for impermissible purposes." (AC at 7). When plaintiff sent Experian a dispute regarding the transactions being reported, Experian responded to plaintiff that they had "contacted the company who was reporting the information and supplied them with all the information and instructed them to review it, verify the accuracy of the information and provide a response." (*Id.*). Plaintiff states that Experian "exhibited willful and negligent disregard for maintaining reasonable procedures in handling the [plaintiff's] complaint." (*Id.*). Plaintiff states that the "inaccurate information is still being reported on the [plaintiff's] consumer report and has led the [plaintiff's] credit score to be lowered which has caused a struggle to obtain any credit at all." (*Id.*). She clarifies that the inaccurate information has been furnished on her consumer report "since 2018 adding up to 68 reported transactions." (*Id.*at 8).

Plaintiff alleges that Experian is "aware of the consequences of a company furnishing information that is inaccurate and owes a duty as a CRA when receiving

3

disputes to have a better procedure than just sending it to the furnisher." (AC at 8).  She states that after she disputed the information reported by Experian, they "said they did an investigation into the dispute on two different occasions.  On both occasions Experian stated they had sent the dispute to the furnisher of the information."  (*Id.*). Based on this representation, plaintiff asserts that Experian merely "push[ed] the investigation off to Credit Acceptance who was already furnishing the inaccurate information," even though Experian "had the opportunity to fix the inaccurate information on two occasions . . . ." (*Id.*).  She states Experian "could have pulled up the [plaintiff's] credit report and actually investigated the dispute." (*Id.* at 9).  Instead, plaintiff asserts, Experian relied on Credit Acceptance Corporation to "hold themselves accountable" and "fix the dispute." (*Id.*).  Experian continued to communicate to plaintiff that they had "done an investigation" concerning her dispute.  (*Id.* at 9-10). Plaintiff asserts that Experian "never actually did an investigation of the information being reported on their own." (*Id.* at 10).

Plaintiff further alleges that defendant Credit Acceptance Corporation is a "debt collector" under the FDCPA.  (AC at 10).  She asserts that when Credit Acceptance Corporation received the dispute from Experian, "they were supposed to remove the transactions that were at dispute but they failed to do so." (*Id.*).  Plaintiff asserts that Credit Acceptance Corporation has never responded to her multiple communications regarding her disputes.  (*Id.*).

4

**DISCUSSION**

**II.**    <u>**The Fair Debt Collection Practices Act**</u>

A summary of the relative scope and purpose of the FDCPA was set forth in this court's February 2024 ORR, and thus will not be restated herein.  (Dkt. No. 4 at 5-7). In her amended complaint, plaintiff asserts a claim for relief under the FDCPA against defendant Credit Acceptance Corporation, whom she identifies as a "debt collector" for purposes of the statute. Credit Acceptance Corporation holds itself out to be an auto finance company providing automobile loans and other related financial products.[1] At least one other court has recognized Credit Acceptance Corporation to operate as the assignee of automobile retail installment sales contracts.  *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 104 (6th Cir. 1996).

The definition of the term "debt collector" is set forth in 15. U.S.C. §1692a(6), and begins as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

The legislative history of the FDCPA indicates "conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a

---

[1] *See* https://www.creditacceptance.com/about (last visited April 26, 2024).

debt, as long as the debt was not in default at the time it was assigned." *In re Residential Cap., LLC*, No. 12-12020, 2015 WL 4747860, at *8 (Bankr. S.D.N.Y. Aug. 4, 2015) (quoting *Whittle v. Wells Fargo Bank, N.A.*, No. CV F 10–0429, 2010 WL 1444532, at *9 (E.D. Cal. Apr. 9, 2010)).  In *Wadlington,* the Sixth Circuit concluded that Credit Acceptance Corporation did not fall under the statutory definition of a debt collector.  76 F.3d at 106.

Here, plaintiff has provided little to no information about Credit Acceptance Corporation's conduct as a purported "debt collector," nor is there any indication from the amended complaint, other than plaintiff's conclusory statement as to this fact, that Credit Acceptance Corporation actually operated in this capacity.  Because plaintiff has not plausibly alleged that Credit Acceptance Corporation is a "debt collector" under the FDCPA, plaintiff has failed to state a claim under the statute. *See Ghiazza v. Anchorage Marina, Inc.*, No. 19-CV-2792, 2021 WL 4392482, at *4 (S.D.N.Y. Sept. 24, 2021) (citing *Johnson-Gellineau v. Steine & Associates*, No. 16-CV-9945, 2019 WL 2647598, at *8–9 (S.D.N.Y. June 27, 2019) (dismissing FDCPA claim where the plaintiff failed to allege facts showing that the defendants constituted "debt collectors" under the FDCPA); *Dash v. Bank of America Corp.*, No. 18-CV-4807, 2019 WL 1780140, at *10 (S.D.N.Y. Apr. 23, 2019) (dismissing claim under the FDCPA where the plaintiff "failed to plead facts to show that [the defendant] is actually a debt collector within the meaning of the statute"); *Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68

6

(2d Cir. 2019) (affirming dismissal of FDCPA claim where the plaintiff's "complaint fail[ed] adequately to allege that the defendants qualif[ied] as debt collectors for purposes of the FDCPA")).

### III.   **The Fair Credit Reporting Act**

### A.   **Credit Acceptance Corporation**

Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not bring a new case that includes claims or defenses that were, or could have been, raised in an earlier case in which the same parties were involved if that case resulted in a judgment on the merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion thus "prevents parties from raising issues that could have been raised and decided in a prior action - even if they were not actually litigated." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 898 F.3d 232, 236-37 (2d Cir. 2018), *rev'd on other grounds*, 509 U.S. 405 (2020). Claim preclusion generally applies if: "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted).

To determine whether a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action. *See Pike v. Freeman*, 266 F.3d 78, 91 (2d

7

Cir. 2001). In other words, whether facts essential to the second suit were present in the first suit, *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). Claims are treated as the same if they "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees, Inc.*, 590 U.S. at 412) "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted).

This court's review of PACER indicates that on January 10, 2024, plaintiff filed a pro se complaint in the Eastern District of Michigan against defendant Credit Acceptance Corp., alleging violations of the Fair Credit Reporting Act. *See Taylor v. Credit Acceptance Corp.*, Case No. 2:24-CV-10080 (E.D. Mich.) ("*Taylor I*"). Specifically, plaintiff alleged that she "sent out" two "disputes" to Credit Acceptance Corp. in October and December of 2023 requesting that they "remove the transactions and experiences they were reporting to the credit bureaus." *Taylor I*, Dkt. No. 1 at 5. Plaintiff further alleged that Credit Acceptance Corp. failed to respond to either of her letters. *Id.*

On January 18, 2024, the Honorable Gershwin A. Drain of the Eastern District of Michigan undertook an initial review of the *Taylor I* complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). *Taylor I*, Dkt. No. 5. Judge Drain issued an order explaining that

plaintiff failed to state a claim under the FCRA, because in order to do so she was "required to plausibly allege that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed." *Id.* at 3 (internal quotations and citation omitted). Accordingly, Judge Drain dismissed the *Taylor I* complaint for failure to state a clam under 28 U.S.C. § 1915(e)(2)(B). *Id.* Plaintiff did not file an amended complaint, nor did she appeal Judge Drain's order.

Plaintiff proceeded to file the instant action in the Northern District of New York on February 7, 2024. Although her original complaint did not name Credit Acceptance Corporation as a defendant, the amended complaint asserts, among other things, FCRA claims against this entity. (AC at 10-11). A dismissal for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) operates as a "final judgment on the merits and thus has *res judicata* effects." *West v. City of New York*, No. 23-CV-2256, 2024 WL 1639347, at *5 (S.D.N.Y. Apr. 15, 2024) (quoting *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016)); *see also Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009) (endorsing the "dismissal of an in forma pauperis complaint on the ground of res judicata where the plaintiff's prior complaint arising out of the same events, albeit raising a different legal theory, had been dismissed pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.").

*Taylor I* was therefore dismissed in a final judgment on the merits by a court of competent jurisdiction. Furthermore, *Taylor I* asserts FCRA claims against Credit

Acceptance Corporation under the same legal theories and arising from the same facts as those raised in the instant amended complaint. Accordingly, these claims are barred by claim preclusion and should be dismissed.

### B.    Experian

The FCRA claims against Experian raised by plaintiff in her amended complaint suffer from many of the same pleading deficiencies as those raised in her original complaint. With respect to plaintiff's claim asserting liability under Section 1681b, plaintiff appears to operate under the mistaken belief that Experian required her "consent" to report the information on her consumer credit report in order to constitute a "permissible purpose." (AC at 6-7). As plaintiff notes, §1681b(a)(2) states that one of the limited purposes a CRA may furnish a consumer report is "in accordance with the written instructions of the consumer to whom it relates." Plaintiff, however, fails to acknowledge that §1681b(a) lists several other "permissible purposes" for which a CRA may furnish a consumer report, including the common practice of doing so in connection with the extension of credit to a consumer, among others. §1681b(a)(1)-(6). *See Ahmad v. Experian Info. Sols., Inc.*, No. 23-CV-2222, 2023 WL 8650192, at *7 (S.D.N.Y. Dec. 14, 2023) ("Under the FCRA, there are circumstances pursuant to which a consumer's credit report may be obtained without the consent or even the knowledge of the consumer.") (quoting *Gamble v. Citifinancial & Landers*, No. 3:02-CV-693, 2002 WL 31643028, at *2 (D. Conn. Nov. 19, 2002)). Because plaintiff's

allegation that she did not provide consent for Experian to issue a credit report does not

amount to a plausible allegation that Credit Acceptance Corporation accessed or used

the consumer report for an impermissible purpose, for which liability against Experian

under §1681b could attach, this claim is subject to dismissal.

Plaintiff's claims against Experian pursuant to §§1681e(b) and 1681i are also

deficiently pled.  Among other things, plaintiff continues to fail to specify what

information in her credit report was inaccurate, and why.  Instead, plaintiff makes only

conclusory allegations that Experian reported "inaccurate information."  (AC at 7, 8, 9,

11).  "Other courts . . . routinely dismiss Section 1681e(b) and 1681i claims like this

that do not identify specific misstatements and explain why they were incorrect."

*Rogers v. Trans Union LLC*, No. 23-CV-0536, 2024 WL 1556890, at *2 (E.D.N.Y.

Apr. 10, 2024) (listing cases).

Accordingly, plaintiff's FCRA claims against Experian should be dismissed for

failure to state a claim.

IV.  **State Law Claims**

Plaintiff's state law claims against Experian and Credit Acceptance Corporation

suffer from the same deficiencies as those pled in the original complaint.  Not only has

plaintiff failed to allege anything more than conclusory statements to suggest that these

defendants reported and/or furnished the allegedly inaccurate information with "malice"

or "willful intent," but her allegations still lack the sufficient specificity required of

11

such claims to put the defendants on notice.  (*See* Dkt. No. 4 at 16-18).  Accordingly, the state law claims raised in plaintiff's amended complaint should be dismissed.

## V.    <u>Opportunity to Amend</u>

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

This court has already afforded plaintiff the opportunity to amend, and she has been unable to plausibly associate the defendants' alleged actions to any statutorily or constitutionally prohibited conduct.  Thus, the court will recommend dismissing plaintiff's amended complaint without the further opportunity to amend.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's amended complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[2]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such

---

[2] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 1, 2024

Mitchell J. Katz
U.S. Magistrate Judge

Case 5:24-cv-00188-DNH-MJK   Document 7   Filed 05/01/24   Page 14 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

2015 WL 4747860
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States Bankruptcy Court, S.D. New York.

IN RE: RESIDENTIAL CAPITAL, LLC, et al., Debtors.

Case No. 12–12020 (MG) Jointly Administered
|
Signed August 4, 2015

**Attorneys and Law Firms**

MORRISON & FOERSTER LLP, Attorneys for ResCap
Borrower Claims Trust, 250 West 55th Street, New York,
New York, 10019 By: Norman S. Rosenbaum, Esq., Jordan
A. Wishnew, Esq., Erica J. Richards, Esq.

JULIO PICHARDO, Pro Se, 120 E. Sudene Avenue,
Fullerton, California, 92831 By: Julio Pichardo

*MEMORANDUM OPINION AND ORDER (I)
SUSTAINING IN PART AND OVERRULING
IN PART THE RESCAP BORROWER
CLAIMS TRUST'S OBJECTION TO CLAIM
NUMBER 452 FILED BY JULIO PICHARDO
AND (II) DENYING JULIO PICHARDO'S
MOTION TO LIFT THE AUTOMATIC STAY*

MARTIN GLENN, UNITED STATES BANKRUPTCY
JUDGE

**\*1** Julio Pichardo ("Pichardo") filed Claim Number 452 (the
"Claim," Obj. Ex. 1) against Debtor GMAC Mortgage, LLC
("GMACM") in the above-captioned chapter 11 bankruptcy
cases. GMACM serviced Pichardo's loan from November
2003 through February 2013. Pichardo's Claim arises out
of, among other things, a purported agreement between
GMACM and Pichardo to modify Pichardo's then-existing
loan terms. After the parties entered into the modification
agreement, GMACM realized it mistakenly omitted what
its successor in interest, the ResCap Borrower Claims Trust
(the "Trust"), argues is a material term. GMACM contacted
Pichardo, advised him of the mistake, and told him he had
to execute a corrected modification agreement fixing the
error. Pichardo alleges that he originally did not want to sign
the corrected agreement, but ultimately executed it because
GMACM threatened to foreclose on his home if he did not.

The Trust objects to Pichardo's Claim, asserting that Pichardo
has failed to establish a viable claim for relief. [1] At this
stage of the pleadings, Pichardo has alleged a plausible
claim that he signed the corrected modification agreement
under duress from GMACM. As discussed below, the Court
**SUSTAINS** in part and **OVERRULES** in part the Objection
to Pichardo's Claim. To the extent the Objection is overruled,
it is overruled without prejudice; the remaining portions of the
Claim involve disputed issues of fact that cannot be resolved
on the current record. Unless the parties are able to resolve
the remaining portions of Pichardo's Claim, an evidentiary
hearing will be required.

[1]  The Trust's objection (the "Objection," ECF Doc.
# 8676) to Pichardo's Claim is supported by the
declarations of Kathy Priore (the "Priore Decl.,"
Obj. Ex. 2) and Yaron Shaham (the "Shaham
Decl.," Obj. Ex. 3), an attorney with the Trust's
local California counsel, Severson & Werson ("S
& W"). Responses to the Objection were due on
June 22, 2015. (See Obj. at 1.) Pichardo filed an
opposition (the "Opposition," ECF Doc. # 8745)
to the Objection on June 8, 2015, which does
not respond to the Trust's substantive arguments
raised in its Objection, but rather requests an
evidentiary hearing on the Objection in lieu of
a non-evidentiary hearing on July 15, 2015 and
attaches what appear to be his filings in a prior
action filed in California state court.
On June 15, 2015, Pichardo filed a proof of
service that included a statement that Pichardo
intends to appear at the hearing on the Objection
telephonically and requests "RELIEF FROM
STAY RULING TO PURSUE FRAUDULENT
CLAIM AGAINST DEBTORS RULINGS TO BE
FRAUDULENT ON ACQUIRED LOAN." (See
"Lift Stay Motion," ECF Doc. # 8798 at 1.) After
the response deadline on June 29, 2015 (though
the document is dated June 23, 2015), Pichardo
filed a supplemental opposition to the Objection
(the "Supp. Opp.," ECF Doc. # 8878).
On July 13, 2015, the Trust filed a reply
in support of its Objection (the "Reply," ECF
Doc. # 8876), addressing the Opposition and
Lift Stay Motion, and arguing that the untimely
Supplemental Opposition should not be considered
by the Court. Since Pichardo failed to pay the filing
fee for his Lift Stay Motion, the Court will not

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 15 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

consider the requested relief and **DENIES** the Lift Stay Motion without prejudice.

## I. *BACKGROUND*

### A. Pichardo's Loan History

**\*2**  Non-debtor Home Star Mortgage Services, LLC ("Home Star") originated a residential mortgage loan refinancing (the "Loan") to Pichardo on July 31, 2003. (Obj. ¶ 13 (citing Priore Decl. ¶ 6).) The Loan is evidenced by a $199,000.00 note (the "Note," Priore Decl. Ex. A) secured by a deed of trust (the "Deed of Trust," *id.* Ex. B) encumbering real property located at 1202 East Sudene Avenue, Fullerton, California 92831 (the "Property"). (Obj. ¶ 13 (citing Priore Decl. ¶ 6).) The Deed of Trust lists Mortgage Electronic Registration Systems, Inc. ("MERS") as the "beneficiary" for Home Star, the "Lender." (Deed of Trust at 2–3.) The Note was transferred, by way of an explicit endorsement, to HSBC Bank USA ("HSBC") as trustee; this transfer occurred, according to the Trust, when the Loan was securitized on January 1, 2004. (*See* Note at 4; Obj. ¶ 14 (citing Priore Decl. ¶ 7).) GMACM serviced the Loan from November 3, 2003 until February 16, 2013, when servicing was transferred to non-debtor Ocwen Loan Servicing, LLC ("Ocwen"). (Obj. ¶ 15 (citing Priore Decl. ¶ 8).)

In March 2009 and multiple times thereafter while loan modification applications were pending (see below), Pichardo requested a reduction in principal and interest payments on the Loan. (*I d.* ¶ 16 (citing Priore Decl. ¶ 9).) GMACM repeatedly advised Pichardo that no principal forgiveness would be provided. (*Id.*)

Based on the Loan payment history (the "Payment History," Priore Decl. Ex. C), Pichardo made timely payments on January 8, February 9, March 6, and April 13, 2009, each in the amount of $1,584.50 (*see id.* at 4). Once the April 13, 2009 payment was applied to the account, Pichardo was current on his payments through April 1, 2009. (*Id.*) Pichardo then failed to make Loan payments due on May 1 and June 1, 2009. (*Id.*) The next "PAYMENT" entries in the Payment History were made on June 24, 2009 in the amounts of $776.35 and $832.00, but these payments did not affect the "current through" date of the Loan; the Trust does not explain why, nor does it explain the purpose of these payments. (*Id.*) A July 14, 2009 entry in the Payment History, listed as a "Comment" with no money applied or deducted from the Loan account balance, shows that Pichardo became current through May 1, 2009. (*Id.*)

On July 10, 2009, GMACM sent Pichardo a letter (the "July 10, 2009 Letter," Opp. at 44) advising him that his Loan account was in default because he failed to make the June and July 2009 payments (*id.*). The letter further states: "If you are already working with the Loss Mitigation department on a special forbearance or other foreclosure prevention alternatives, this letter does not apply to you." (*Id.*)

On July 31, 2009, Pichardo's Loan was approved for a permanent loan modification: $120,000 of the principal balance was supposed to be deferred, the interest rate was reduced from 4% to 1% and applied only to the remaining principal balance of $63,272.87, with the non-interest bearing principal deferment coming due when the Loan matured, was paid in full, or the Property was sold. (*Id.* ¶ 18 (citing Priore Decl. ¶ 12).) Pichardo's monthly payments were reduced from $1,550 to $622.53. (*Id.*)

On August 3, 2009, before this modification became effective, GMACM sent Pichardo a letter stating that the Loan was in default because his June, July, and August 2009 payments were overdue (the "August 3, 2009 Breach Letter," Priore Decl. Ex. G). (Obj. ¶ 17 (citing Priore Decl. ¶ 11).) The letter further states:

> Unless we receive full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings. This could result in the loss of your property. You have the right to assert or defend the non-existence of a default and you may have other rights under state law.

(*Id.* at 2.)

On August 8, 2009, Pichardo entered into the modification agreement with GMACM (the "August Agreement," Priore Decl. Ex. L), effective as of September 1, 2009, and intended to memorialize the terms of the approved permanent loan modification. (Obj. ¶ 18 (citing Priore Decl. ¶ 12).) GMACM received the signed copy of the August Agreement from Pichardo on August 10, 2009. (*Id.* ¶ 19 (citing Priore Decl. ¶ 14).) The Trust alleges that it countersigned the agreement on

Case 5:24-cv-00188-DNH-MJK   Document 7   Filed 05/01/24   Page 16 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)
2015 WL 4747860

that date, but it cannot find a copy of the actual countersigned document. (*Id.*)

 **\*3** On August 12, 2009, Pichardo made a $620.00 payment that was applied to the account, but did not affect the "current through" date. (Payment History at 4.) The Loan remained current only through May 1, 2009. (*Id.*) Pichardo made a $622.53 payment on September 3, 2009, after the August Agreement memorializing the loan modification is alleged to have become effective. (*Id.*; Obj. ¶ 18 (citing Priore Decl. ¶ 12).) This September 3 payment, however, did not affect the "current through" date; the Loan remained current only through May 1, 2009. (*Id.*)

On September 24, 2009, GMACM began to process the modification and determined that the loan modification needed to be "reset." (*Id.*) Under the reset terms, the monthly principal and interest payments increased by $0.77 from the originally approved modification. (*Id.*) On September 28, 2009, GMACM advised Pichardo that the modification would need to be reset and further informed him on October 2, 2009 that GMACM would amend any negative reporting caused by the reset once the new modification agreement was executed. (*Id.*)

On October 6, 2009, Pichardo made a $622.53 payment; it was applied to his Loan account balance, but did not affect the "current through" date. (Payment History at 4.)

When GMACM began to process the reset of the modification, it noticed that the August Agreement did not reference the amount of the deferred principal balance. (*Id.* ¶ 20 (citing Priore Decl. ¶ 15).) The August Agreement refers only to the current non-deferred principal balance of $63,272.87 on which interest would continue to accrue; it did not address the treatment of the remaining $120,000.00 balance of deferred principal. (*Id.*) GMACM sought to cure this error in the August Agreement, sending Pichardo corrected loan modification documentation on October 14, 2009. (*Id.*) The return deadline was November 1, 2009. (*Id.*) On October 27, 2009, Pichardo advised GMACM that he had not received the corrected documents; as a result, GMACM was required to reset the modification again. (*Id.*) With this reset of the modification, all terms remained the same except that the monthly principal and interest payments increased by $1.85 from the modification documents sent to Pichardo on October 14, 2009. (*Id.*) This second reset modification was mailed to Pichardo on November 10, 2009. (*Id.* ¶ 21 (citing Priore Decl. ¶ 16); *see also* Priore Decl. Ex. N.)

Pichardo executed the corrected documents on November 12, 2009, returned them to GMACM on November 16, 2009, and the corrected modification agreement thereafter became effective on December 1, 2009 (the "Corrected Agreement," Priore Decl. Ex. M). (Obj. ¶ 21 (citing Priore Decl. ¶ 16).) Under the Corrected Agreement, Pichardo was required to make $624.85 monthly payments. (*Id.*) On November 18, 2009, an entry in the Payment History indicates that $120,000.00 was applied to the principal balance of the Loan account, bringing the Loan account balance down to $63,272.87. (Payment History at 4.) On November 20, 2009, another Payment History entry indicates that the Loan became current through December 1, 2009; payments consistent with the terms of the Corrected Agreement were made monthly thereafter and were applied to the account balance affecting the "current through" date. (*See id.* at 2–4.)

Pichardo made timely payments under the Corrected Agreement until servicing was sold to Ocwen in February 2013. (*Id.*) But in March 2010, Pichardo applied for a further loan modification, renewing his request for cancellation of principal via numerous calls and letters to GMACM. (*Id.* ¶ 22 (citing the "March 26, 2010 Letter," Priore Decl. Ex. O, and the "Comment History," *id.* Ex. E at 66, 69, 70, 81, 82, 83, 85, 86, 87, 89, 90, 92, 93, 94, 95, 112, 113, 116, 121, 140, 145).) GMACM ultimately determined that Pichardo was ineligible for a further loan modification, including any principal reductions, meaning that the Corrected Agreement allegedly remained in effect through the date upon which Ocwen took over servicing of the Loan. (*Id.* (citing Priore Decl. ¶ 17).)

### B. Litigation History
 **\*4** Without leave of this Court, Pichardo, represented by counsel, filed a complaint (the "Initial Complaint," Priore Decl. Ex. R) (the "California Action") against GMACM in the Orange County Superior Court of California (the "California State Court"). (Obj. ¶ 23 (citing Priore Decl. ¶ 21).) The Initial Complaint sought compensatory damages, punitive damages, restitution, and attorneys' fees for GMACM's alleged violation of the Fair Debt Collection Practices Act (the "FDCPA"), negligent misrepresentation, and unfair business practices and false advertising in violation of California Business Code sections 17200 and 17500. (*See* Initial Comp. at 3–7).)

On July 30, 2012, the Debtors filed a notice of bankruptcy and suggestion of automatic stay, serving Pichardo's counsel in the

California Action (the "Notice of Bankruptcy," Priore Decl. Ex. S). (Obj. ¶ 24 (citing Priore Decl. ¶ 22).) The Debtors also sent Pichardo's counsel a letter advising that the filing and continued prosecution of certain claims alleged in the Initial Complaint violated the automatic stay (the "July 30, 2012 Letter," Priore Decl. Ex. T). (Obj. ¶ 24 (citing Priore Decl. ¶ 22).)

On August 6, 2012, Pichardo filed a motion to lift the stay in this Court, seeking to prosecute the California Action against GMACM. (*See* ECF Doc. # 1026.) On August 29, 2012, this Court denied the motion. (*See* ECF Doc. # 1307.)

On February 24, 2014, Pichardo filed a first amended complaint (the "First Amended Complaint," Shaham Decl. Ex. A), adding Ocwen as a defendant and asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, unjust enrichment, and violation of the California Business and Profession Code section 17200. (*See generally* First Am. Compl.) On February 28, 2014, Ocwen filed a demurrer to the First Amended Complaint (the "First Demurrer," Shaham Decl. Ex. C). On May 12, 2014, the California State Court sustained the First Demurrer with leave to amend the negligence claim, sustained the First Demurrer without leave to amend the claim for unjust enrichment, and overruled the First Demurrer as to all other causes of action (the "First Demurrer Ruling," Shaham Decl. Ex. D).

On June 2, 2014, Pichardo filed a second amended complaint against Ocwen (the "Second Amended Complaint," Shaham Decl. Ex. E), asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, statutory relief, violation of California Business and Professions Code section 17200, and requesting injunctive relief. GMACM was removed as a named defendant from the Second Amended Complaint, but the California Action was not formally withdrawn as to GMACM. (Obj. ¶ 29 (citing Priore Decl. ¶ 7).)

On June 3, 2014, the ResCap Liquidating Trust's counsel sent a letter to Pichardo's new counsel in the California Action, advising counsel that the continued prosecution of the California Action against GMACM violated the automatic stay; the letter requested that GMACM be dismissed from the California Action (the "June 3, 2014 Letter," Priore Decl. Ex. U).

On June 10, 2014, Ocwen filed a demurrer to the Second Amended Complaint (the "Second Demurrer," Shaham Decl. Ex. F). The California State Court ultimately held that Pichardo met the pleading requirements for each of his claims against Ocwen, except those asserting statutory relief (the "Second Demurrer Ruling," Shaham Decl. Ex. G). A hearing on a pending summary judgment motion is scheduled for September 8, 2015.

### C. The Claim

Pichardo timely filed the Claim on September 4, 2012, asserting a general unsecured claim against GMACM in the amount of $650,000. (*See* Claim.) The stated basis for the Claim is "COLLECTION PRACTICES—PERSONAL INJURY." (*Id.* at 1.) The Claim attaches a document referring to the California Action, and a copy of the July 30, 2012 Letter to his counsel stating that the prosecution of the case violated the automatic stay. (*See id.* at 4–6.)

**\*5** The Trust sent Pichardo a letter on June 21, 2013 requesting additional information supporting his Claim. (Obj. ¶ 36; Priore Decl. Ex. V.) Pichardo responded by letter (the "Response Letter," Priore Decl. Ex. W), attaching a copy of the Initial Complaint, a page from a "Client Action Plan" that may have been prepared by a debt counseling service, various pleadings filed by or in response to Pichardo in these chapter 11 proceedings, and correspondence sent by Pichardo to the Debtors, Debtors' counsel, Ocwen, and Wells Fargo. The Response Letter refers to "improper collection calls," "mis-applied escrow payments," and improper notices of foreclosure or default. (*See generally id.*) No documentary evidence supporting these allegations was provided. (*See id.*)

### D. The Objection

The Trust assumes for purposes of the Objection that the Claim is based on the allegations in the Initial Complaint. The Trust also addresses the causes of action asserted in the First Amended Complaint. The Trust does not address the causes of action in the Second Amended Complaint because GMACM is not listed as a defendant in that complaint.

The causes of action in the Initial Complaint include: (1) violation of the FDCPA; (2) negligent misrepresentation; (3) violation of California Business and Professional Code § 17200 (the "Unfair Competition Law" or "UCL"); and (4) violation of California Business and Professional Code section 17500 (the "False Advertising Law" or "FAL"). First, the Trust argues that the FDCPA claim fails because: (i)

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

GMACM is not a "debt collector" under the statute; (ii) GMACM's books and records demonstrate that Pichardo was current on his Loan payments after the Corrective Agreement was signed until servicing was transferred to Ocwen; and (iii) the allegedly repeated calls from GMACM were largely in response to calls Pichardo made to GMACM. (*Id.* ¶¶ 44–46.) Second, the Trust asserts that Pichardo fails to satisfy the elements of his negligent misrepresentation claim because: (1) Pichardo does not adequately demonstrate that the information GMACM provided to Pichardo about the status of his Loan was false; (2) Pichardo has not demonstrated how he relied on information that he was in default or that GMACM would pursue foreclosure when he also responded to such information that his Loan was current; and (3) Pichardo fails to show that his alleged "severe emotional distress" and medical expenses were proximately caused by GMACM's conduct. (*Id.* ¶¶ 47–49.) Third, the Trust contends that Pichardo cannot establish a claim for violation of the UCL because such a claim is limited to restitution and/or injunctive relief. (*Id.* at 50–51.) According to the Trust, Pichardo cannot obtain restitution damages— although Pichardo alleges that GMACM requested additional payments that were not due, Pichardo fails to allege that he actually made any additional payments. Additionally, the Trust asserts that Pichardo is not entitled to injunctive relief because GMACM is no longer involved with his Loan. (*Id.*) Finally, the Trust argues that the FAL claim fails because the law is inapplicable; Pichardo has not alleged that GMACM attempted to induce him to enter into any obligation to receive services from GMACM via any advertising device or public statement. Instead, Pichardo relies on allegations that GMACM was already servicing his Loan but did so in an improper manner—allegations that do not give rise to a FAL claim. (*Id.* ¶¶ 52–53.)

The causes of action asserted in the First Amended Complaint against GMACM are as follows: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) unjust enrichment; and (5) violation of the UCL. First, the Trust argues that the breach of contract claim is deficient because: (i) Pichardo cannot show that the August Agreement is a valid contract; and (ii) to the extent the August Agreement was a valid contract, it was superseded by the Corrected Agreement. (*Id.* ¶¶ 55–61.) Second, the Trust asserts that the breach of the implied covenant of good faith and fair dealing claim fails because the August Agreement does not constitute a binding contract, and even if it did, Pichardo voluntarily entered into a contract superseding the August Agreement. (*Id.* ¶¶ 62–63.) The Trust further argues

that GMACM's request that Pichardo execute the Corrected Agreement also cannot constitute a breach of the covenant of good faith and fair dealing because the purpose of the Corrected Agreement was to enforce the original expectations of the parties, not to violate them. (*Id.* ¶ 63.) Third, with respect to the negligence cause of action, the Trust asserts that Pichardo cannot establish that GMACM owed him a duty of care on which to base this claim. (*Id.* ¶¶ 65–66.) Moreover, the Trust argues that the negligence claim is based on insufficient and unsupported allegations of negligent acts that are inadequate to support such a claim. (*Id.* ¶ 67.) Fourth, the Trust refutes the validity of Pichardo's unjust enrichment claim by arguing first that the California State Court dismissed this claim against Ocwen without leave to amend, and second that Pichardo fails to establish he is entitled to restitution, as required for such a claim. (*Id.* ¶¶ 68–70.) Fifth, the Trust addresses Pichardo's renewed UCL claim, asserting again that Pichardo is unable to establish entitlement to injunctive relief or restitution. (*Id.* ¶¶ 71–72.) The Trust further argues that any alleged "improper payments" were not retained by GMACM for its benefit; rather, any payments received were applied to Pichardo's account for his own benefit. (*Id.* ¶ 73.)

### E. Pichardo's Filings

**\*6** Pichardo made three filings after the Objection was filed. First, Pichardo filed his Opposition, requesting that the hearing on the Objection be an evidentiary hearing. (*See generally* Opp.) Pichardo also asserts: (1) his medical condition was aggravated by GMACM's actions (i.e. foreclosure threats, demand for undue payments, escrow payments, etc.) such that he was hospitalized, as set forth in a medical report he attaches; (2) when he directed GMACM to the August Agreement's principal reduction, GMACM proceeded to demand an unsolicited payoff; (3) an unclear allegation that the carried liens provision of one of the contracts imposed fees that were not due; (4) GMACM placed the Loan in default when no payment was due. (*Id.* at 2.) Pichardo attaches to the Opposition several documents filed in the underlying California Action. (*See generally id.*) Some documents indicate that the Corrected Agreement was never countersigned by GMACM, implying that the Corrected Agreement is invalid. (*See id.* at 149.) He also alleges that GMACM attempted to forcibly subordinate existing senior priority security interests in the Property held by certain of Pichardo's relatives. (*Id.*)

Second, Pichardo subsequently filed a proof of service and Lift Stay Motion. (*See generally* Lift Stay Motion.) He did not

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 19 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

pay a filing fee for the Lift Stay Motion, nor did he submit any brief or argument supporting the motion. [2] (*See generally id.*)

[2]   As indicated above, because Pichardo failed to pay the filing fee for his Lift Stay Motion, the Court will not consider the requested relief and **DENIES** the Lift Stay Motion without prejudice.

Lastly, Pichardo filed the Supplemental Opposition, which purports to attach evidence that he made his first modification payment to GMACM in June 2009. (*See* Supp. Opp. at 1–2.) According to Pichardo, the mailing receipts demonstrate that he never missed a payment and should not have been considered to be in default in August 2009. (*Id.* at 2.)

### F. The Reply

The Trust first addresses the validity of the Corrected Assignment, put into question by Pichardo's assertion that it was never countersigned by GMACM. (Reply ¶ 3.) According to the Trust, the ResCap Liquidating Trust could not locate a copy of the countersigned Corrected Agreement. (*Id.*) Nevertheless, the Trust argues that the Corrected Agreement remains valid because GMACM informed Pichardo that it had received and processed the Corrected Agreement on November 11, 2009. (*Id.*) Additionally, Pichardo made payments pursuant to the Corrected Assignment for over five and a half years and GMACM accepted such reduced payments, constituting ratification of the Corrected Agreement. (*Id.*)

As to allegations regarding the priority of liens on the Property, the Trust argues that Pichardo lacks standing to challenge the priority of any liens because he himself does not have a security interest in the Property. (*Id.* ¶ 5.) The Trust also argues that at the time the Loan was originated there is no evidence of pre-existing security interests on the Property. (*Id.* ¶ 6 (citing Reply Ex. X).) The Trust further points out that the only recorded deed of trust in favor of Pichardo's relatives attached to the Opposition was recorded on November 30, 2004, after the Deed of Trust securing the Loan was recorded; therefore, the relative's security interest is subordinate to the Deed of Trust. (*Id.* (citing Response at 187).) The Trust further argues that the August Agreement and Corrected Agreement do not actually seek to subordinate any other liens but rather state that any other liens remained in effect. (*Id.* ¶ 7.)

The Trust then argues that the hearing on the Objection should not be treated as an evidentiary hearing. (*Id.* ¶ 8.) The Trust further asserts that the Lift Stay Motion should be denied

because Pichardo fails to address the relevant factors to lift the automatic stay. (*Id.* ¶ 9.)

## II. *DISCUSSION*

### A. Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim.... To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir.B.A.P.2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.),* No. 12 Civ. 6074(RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013)* (internal quotation marks omitted). If the objector does not "introduce[ ] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2014).

**\*7** Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr.D.Del.2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g., In re Residential Capital, LLC,* 518 B.R. 720, 731 (Bankr.S.D.N.Y.2014); *In re DJK Residential LLC,* 416 B.R. 100, 106 (Bankr.S.D.N.Y.2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, Pichardo must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 20 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

of entitlement to relief." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g., id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir.2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal,* 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal,* 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly,* 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir.2008) (citation omitted).

The Court does not resolve whether Pichardo's Claim is based on either the Initial Complaint or the First Amended Complaint, but rather addresses the causes of actions asserted in each below.

**B. The Initial Complaint**

### 1. Violation of the FDCPA

 **\*8**  Pichardo bases his FDCPA claim on allegedly repetitive phone calls GMACM made to him throughout 2011 and 2012, during which GMACM representatives advised Pichardo that he was in default on his Loan and that GMACM intended to

foreclose on his Property. (Initial Compl. ¶¶ 20–28.) Pichardo further alleges that in response to Pichardo's assertions that he remained current on his Loan, GMACM representatives stated that he was past due, "using verbally abusive language, including threats of criminal liability and obscene and profane language." (*Id.* ¶¶ 21–22.)

Although the FDCPA "makes it unlawful for debt collectors to use abusive tactics while collecting debts for others," GMACM is not a "debt collector" subject to the statute in these circumstances. *See Whittle v. Wells Fargo Bank, N.A.,* No. CV F 10–0429 LJO GSA, 2010 WL 1444532, at \*9 (E.D.Cal. Apr. 9, 2010). A "debt collector" is "any person ... who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition does not include entities seeking to collect a debt "to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). The legislative history of the FDCPA indicates "conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *See Whittle,* 2010 WL 1444532, at \*9 (citation omitted). GMACM began servicing the Loan in February 2004; the alleged default, if any, on the Loan did not occur until 2009. Thus, GMACM cannot be construed as a "debt collector," and the Objection to this cause of action is **SUSTAINED.**

### 2. Negligent Misrepresentation

Under California law, to adequately plead a negligent misrepresentation claim, the plaintiff must allege: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack,* 226 Cal.Rptr. 532, 537 (Cal.Ct.App.1986) (citation omitted).

Pichardo bases his negligent misrepresentation claim on the July 10, 2009 Letter, the August 3, 2009 Breach Letter, and unspecified telephone conversations between himself and GMACM representatives. Each of the letters states that Pichardo was in default on his Loan by failing to make his June and July 2009 payments; the August 3, 2009 Breach Letter also states that Pichardo failed to make his August

2009 payment. The return receipts attached to Pichardo's Supplemental Opposition demonstrate that Pichardo made payments to GMACM in June and July 2009; the Trust does not dispute this fact. [3] As a result, the issue whether Pichardo was in default in June and July 2009 is in dispute. If Pichardo was not in default, then the July 10, 2009 Letter and August, 3, 2009 Breach Letter, both stating that Pichardo failed to make the June and July Loan payments, included false representations. There are further disputed issues of fact such as whether Pichardo reasonably relied on those false representations and whether he was consequently damaged. [4] In light of these disputed issues of fact, the Court **OVERRULES** the Objection to this cause of action.

[3]    At the hearing on the Objection, the Trust agreed that the Supplemental Opposition demonstrates that Pichardo made Loan payments in June and July 2009. (*See* July 16, 2015 Hrg. Tr. 14:22–15:7, ECF Doc. # 8940.)

[4]    The Trust also agreed at the hearing that a plaintiff's pre-existing medical condition does not necessarily preclude a plaintiff from recovering for an exacerbation of that condition, meaning that Pichardo's claimed damages are in dispute. (July 16 Hrg. Tr. at 10:18–11:17.)

### 3. Violation of the UCL

**\*9** California's UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice...." CAL. BUS. & PROF.CODE § 17200. A claim based on a violation of the UCL may be brought under any of the above prongs. *See Birdsong v. Apple, Inc.,* 590 F.3d 955, 959 (9th Cir.2009) ("Each prong of the UCL is a separate and distinct theory of liability." (citing *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir.2009))). A UCL claim may also be based on the violation of another law. *Leonel v. Am. Airlines, Inc.,* 400 F.3d 702, 714 (9th Cir.2005) ("Under the statute, '[u]nfair competition encompasses anything that can properly be called a business practice which at the same time is forbidden by law.' " (quoting *Wilkinson v. Times Mirror Corp.,* 264 Cal.Rptr. 194, 206 (Ct.App.1989))). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir.2000) (quoting *Cel–*

*Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 973 P.2d 527, 539–40 (Cal.1999)).

The Initial Complaint alleges that GMACM violated the UCL by falsely informing Pichardo that his Loan was in default and subject to foreclosure and that Pichardo would be subject to criminal liability if he did not make additional payments which were not due. (Initial Compl. ¶¶ 38–40.) The Trust bases its Objection to this cause of action solely on Pichardo's failure to demonstrate an entitlement to damages. (Obj.¶ 51.) According to the Trust, the UCL only provides for injunctive relief or restitution; Pichardo cannot obtain injunctive relief because GMACM is no longer involved with his Loan and Pichardo is not entitled to restitution because the purported "additional payments which were not due" have not been alleged to have been actually made by Pichardo. (*Id.*)

"While the scope of conduct covered by the UCL is broad, its remedies are limited." *Korea Supply Co. v. Lockheed Martin Corp.,* 131 Cal.Rptr. 29, 37 (2003) (citation omitted). Monetary damages are not recoverable because this statute is equitable in nature; only injunctive relief and restitution are available remedies. *See id.* (citations omitted).

To the extent Pichardo seeks injunctive relief, the Objection to the UCL claim alleged in the Initial Complaint is **SUSTAINED.** GMACM no longer retains an interest in the Loan and therefore any awarded injunctive relief would be futile.

To the extent Pichardo seeks restitution, the Objection to the UCL claim is **OVERRULED** without prejudice. The Trust asserts that Pichardo has failed to demonstrate that he made "additional payments" to ward off criminal liability in accordance with alleged misrepresentations made by GMACM. (Obj.¶ 51.) Pichardo's Payment History, however, indicates that Pichardo made payments in different amounts on June 24, August 12, September 3, October 6, October 14, and November 17, 2009. (Payment History at 3–4.) Not one of these payments affected the "current through" date. (*See id.*) The Trust has not provided any explanation for these payment entries in the Payment History; in fact, the Trust does not even cite to the Payment History in its Objection. As such, there are disputed issues of fact why these payments were made, what these payments were for, and why these payments did not help bring the account current. There is also a disputed issue of fact whether Pichardo would be entitled to restitution in light of the payments he made.

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 22 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

### 4. Violation of the FAL

The last cause of action asserted in the Initial Complaint is a violation of the FAL. (Initial Compl. ¶¶ 41–43.) The FAL provides:

> **\*10** It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised....

CAL. BUS. & PROF.CODE§ 17500 (2015). Courts recognize that "[t]he [FAL] makes it unlawful to induce the public to enter into any obligation through the dissemination of untrue or misleading statements." *Avila v. Lease Fin. Grp., LLC,* No. 11 Civ. 8125(KBF), 2012 WL 3165408, at *8 (S.D.N.Y. July 31, 2012) (internal quotation marks omitted) (quoting *Lam v. Gen. Mills, Inc.,* No. 11–5056, 2012 WL 1656731, at *4 (N.D.Cal. May 10, 2012) (emphasis added) (citing CAL. BUS. & PROF.CODE § 17500)). A plaintiff alleging a violation of the FAL must therefore allege that the alleged statements were "(1) widely disseminated to the public ... (2) for the purpose of influencing consumers to purchases [sic] goods or services...." *Id.* (internal quotation marks omitted) (quoting *In re Jamster Mktg. Litig.,* MDL 1751, 2009 WL 1456632, at *9 (S.D.Cal. May 22, 2009).

The Initial Complaint alleges that GMACM violated the FAL by "making or disseminating untrue or misleading statements, or by causing untrue or misleading statements to be made or disseminated, in or from California." (*Id.* ¶ 42.) According to the Initial Complaint, the misstatements include the numerous threatening phone calls Pichardo received from GMACM throughout 2011 and 2012, during which GMACM advised Pichardo that he was in default, that GMACM was going to foreclose on the Property, and that Pichardo would be subject to criminal liability if he did not make additional payments. (*Id.*) These allegations only amount to misstatements GMACM purportedly made to Pichardo regarding the status of his Loan; not widely disseminated statements or statements made for the purpose of influencing customers to purchase any goods or services. Pichardo's allegations are therefore insufficient to give rise to a cause of action under the FAL and the Objection to this claim is **SUSTAINED.**

### C. The First Amended Complaint

#### 1. Breach of Contract

"California law requires four elements to [demonstrate the] form[ation of] a valid contract: 1) parties capable of contracting; 2) their mutual consent; 3) a lawful object; and 4) sufficient consideration." *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.,* 520 F.Supp.2d 1184, 1193 (C.D.Cal.2007) (citing Cal. Civ.Code §§ 1550, 1565). To state a claim for breach of contract, a plaintiff must allege: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 23 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman,* 250 P.3d 1115, 1121 (Cal.2011) (citing *Reichert v. Gen. Ins. Co.,* 442 P.2d 377, 381 (Cal.1968)) (en banc)).

Pichardo's breach of contract cause of action is based on the August Agreement, which GMACM allegedly breached by refusing to accept payment under the terms of such agreement. (First Am. Compl. ¶¶ 21–24.) The Trust argues that Pichardo's breach of contract cause of action fails because he cannot establish that the August Agreement is a valid contract. (Obj. ¶ 55.) Specifically, the Trust asserts that the August Agreement is not a valid contract because it omitted a material term—the treatment of the additional $120,000.00 balance of deferred principal owed on the Loan at the time the agreement was drafted. (*Id.* ¶ 56.) While Pichardo requested a reduction of principal, he was informed that he would be offered a principal deferment, not reduction, before receiving the August Agreement. (*Id.*) The Trust further argues that even if the August Agreement were a valid contract, it was superseded by the Corrected Agreement and therefore cannot form the basis of Pichardo's breach of contract claim. (*Id.* ¶ 55.)

### a. *The August Agreement*

**\*11** Analyzing the validity of the August Agreement first, the Court concludes that the August Agreement satisfies the requirements to be a valid and binding contract between GMACM and Pichardo. The Trust's primary argument against the validity of the August Agreement is that it lacked the parties' mutual assent to its terms; namely, the treatment of the deferred principal in the amount of $120,000.00. (*See* Obj. ¶ 56.) A contract is not formed absent the parties' mutual consent or assent. *Meyer v. Benko,* 127 Cal.Rptr. 846, 848 (Ct.App.1976) (citing CAL. CIV.CODE §§ 1550, 1565). In other words, the parties must agree "upon the same thing in the same sense." CAL. CIV.CODE § 1580; *see Banner Entm't, Inc. v.Super. Ct. (Alchemy Filmworks, Inc.),* 72 Cal.Rptr.2d 598, 603 (Ct.App.1998) ("California law is clear that there is no contract until there has been a meeting of the minds on *all* material points." (citations omitted)). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Meyer,* 127 Cal.Rptr. at 848 (citation omitted). Absent evidence establishing that the parties' expressed their mutual assent to the same operative terms, "there is no mutual consent to contract and no contract formation." *Weddington*

*Prods., Inc. v. Flick,* 71 Cal.Rptr. 265, 277 (Ct.App.1998) (citing CAL. CIV.CODE §§ 1550, 1565, 1580). "A proposal cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain." *Id.* (citation and internal quotation marks omitted); *Ladas v. Cal. State Auto. Ass'n,* 23 Cal.Rptr. 810, 814 (Ct.App.1993) ("Under basic contract law an offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain." (citation and internal quotation marks omitted)). A contract is void where it is so indefinite that the parties' intention with respect to material terms cannot be ascertained. *Ladas,* 23 Cal.Rptr. at 814 (citing *Cal. Lettuce Growers v. Union Sugar Co.,* 289 P.2d 785, 789 (Cal.1955) (en banc); CAL. CIV.CODE § 1598).

According to the Trust, under *Peterson Development Company v. Torrey Pines Bank,* 284 Cal.Rptr. 367 (Ct.App.1991), the treatment of deferred principal, the term at issue with respect to the August Agreement's validity, constitutes a material term of any loan modification agreement. (Obj. ¶ 56 (citing *Peterson,* 284 Cal.Rptr. at 374).) In *Peterson,* the California Court of Appeal affirmed a grant of summary judgment to the defendant on a claim for breach of a loan commitment letter, holding that the subject loan commitment was not a valid contract. *See Peterson,* 284 Cal.Rptr. at 374–75. The court observed that "[t]he material terms of a loan include the identity of the lender and borrower, the amount of the loan, and the terms for repayment." *Id.* at 374 (citation omitted). In holding that the loan commitment letter did not constitute an enforceable contract, the court found that the material contract terms were too broadly defined "to be capable of being made certain...." *Id.* According to the Trust, the August Agreement did not contain a material term because it neither referenced the principal deferment nor referenced any reduction of principal. (*See* Obj. ¶ 56.)

*Peterson* is distinguishable from the instant case because the material terms of the August Agreement are not indefinite on their face. First, the August Agreement identifies the lender as GMACM and the borrower as Pichardo (and his wife). (*See* August Agmt. at 1.) Second, the August Agreement recites that it "amends and supplements" the Note in the original principal amount of $190,000.00 (*id.*), and it sets forth that, as of its effective date, "the amount payable under the Note" is $63,272.87, "consisting of the amount(s) loaned to [Pichardo] by [the Lender] and any accrued but unpaid interest capitalized to date" (*id.* ¶ 1). Third, the August Agreement provides for the calculation of interest and the

Case 5:24-cv-00188-DNH-MJK   Document 7   Filed 05/01/24   Page 24 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

amount of Pichardo's monthly payments of principal and interest. (*See id.* ¶¶ 2–3.) Nothing in the four corners of the August Agreement suggests that there is any unaccounted for principal.

Moreover, the August Agreement expressly provides the following integration clause in capital letters: "THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES." (*Id.* ¶ 8.) Because the August Agreement was fully integrated, the Trust cannot rely on parol evidence to establish that the agreement failed to appropriately deal with the treatment of deferred principal. *See Casa Herrera, Inc. v. Beydoun,* 83 P.3d 497, 503 (Cal.2004) ("[The parol evidence] rule ... bars consideration of extrinsic evidence of prior or contemporaneous negotiations or agreements at variance with the written agreement"). Accordingly, the August Agreement is not, as a matter of law, an invalid contract, as the Trust contends. The issue still remains, of course, whether the August Agreement was superseded by the Corrected Agreement.

### b. *The Corrected Agreement*

 **\*12**  The Trust argues that even if the August Agreement is a valid contract, the August Agreement cannot form the basis of Pichardo's breach of contract claim because the August Agreement was superseded by the Corrected Agreement. (*See* Obj. ¶ 57.) According to the Trust, Pichardo executed the Corrected Agreement before a notary, and the Corrected Agreement expressly provides that, together with the Note and Deed of Trust, it sets forth the parties' entire agreement. (*Id.*) Pichardo argues that the Corrected Agreement is not enforceable for two reasons: (1) the Corrected Agreement was never countersigned by GMACM; and (2) Pichardo originally refused to sign the Corrected Agreement, but ultimately relented under duress after GMACM threatened to foreclose. (*See* Opp. at 6–7.)

The validity of the Corrected Agreement does not turn on whether GMACM countersigned it; nor does the plausibility of Pichardo's breach of contract claim. First, Pichardo's breach of contract claim is based on GMACM's purported breach of the August Agreement, not the Corrected Agreement. Second, under California's Statute of Frauds,

Pichardo can only demonstrate that the terms of the Corrected Agreement were *unenforceable,* rather than enforceable and able to be breached, against GMACM through GMACM's failure to countersign. Under California law, mortgages, deeds of trusts, and modifications of such contracts are subject to the Statute of Frauds. CAL. CIV.CODE §§ 1624, 2922; *Secrest v. Sec. Nat'l Mortg. Loan Tr.2002–2,* 84 Cal.Rptr.3d 275, 282 (Ct.App.2008) ("An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." (citing CAL. CIV.CODE § 1698(a)); *see also* CAL.CIV.CODE § 1698(b) ("A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties."). To be enforceable, a contract subject to the Statute of Frauds must be in writing and signed by the "party to be charged," or "the party to be charged in court with the performance of the obligation, i.e., the *defendant* in the action brought to enforce the contract." *Uloa v. McMillin Real Estate & Mortg., Inc.,* 57 Cal.Rptr.3d 1, 5 (Ct.App.2007) (emphasis in original) (citations omitted). "[T]he fact that a party to a contract has not signed the written document invalidates it only with regard to the statute of frauds and enforcing the agreement against that particular party." *Far W. Servs., Inc. v. Livingston,* 203 Cal.Rptr. 486, 491 (Ct.App.1984).

With respect to Pichardo's second argument, the Court finds disputed issues of fact whether Pichardo agreed to sign the Corrected Agreement under duress, putting the validity and superseding effect of the Corrected Agreement into question. Under California law, a contract party may rescind the contract if his consent "was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." CAL. CIV.CODE § 1689; *see id.* § 1567 (providing that a contract party's apparent consent is not freely given when obtained through duress, menace, fraud, undue influence, or mistake). "Duress consists in unlawful confinement of another's person, or relatives, or property, which causes him to consent to a transaction through fear." *Odorizzi v. Bloomfield Sch. Dist.,* 54 Cal.Rptr. 533, 538 (Ct.App.1966) (citing Cal. Civ.Code § 1569). Menace consists of a threat of duress, injury to a person's character, or "unlawful and violent injury to the person or property of any such person...." CAL. CIV.CODE § 1570. "The action or threat in duress or menace must be unlawful, and a threat to take legal action is not unlawful unless the party making the threat knows the falsity of his claim." *Odorizzi,* 54 Cal.Rptr. at 538 (citation omitted). While threatening to take legal action

Case 5:24-cv-00188-DNH-MJK   Document 7   Filed 05/01/24   Page 25 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

to foreclose on a mortgage generally does not constitute menace, such a threat may constitute menace if the party making the threat knows it has no legal basis to foreclose. *See Leeper v. Beltrami,* 347 P.2d 12, 18–19 (Cal.1959) (en banc) (citations omitted).

**\*13** Here, Pichardo asserts that he only signed the Corrected Agreement because GMACM told him that if he did not sign the Corrected Agreement, GMACM would foreclose on his Property. (*See* July 16, 2015 Hrg. Tr. at 41:22–42:24.) As indicated above, there are disputed issues of fact whether Pichardo was indeed in default on his Loan, giving GMACM a valid legal basis to foreclose. Consequently, there are disputed issues of fact whether GMACM's threat to foreclose on the Property unless Pichardo signed the Corrected Agreement constituted duress and whether such duress and the parties' conduct after signing the Corrected Agreement render the Corrected Agreement void. *See United States v. Mednansky,* No. 10cv1307 (LAB), 2011 WL 844956, at \*4 (S.D.Cal. Mar. 8, 2011) (holding that a contract entered into through the use of "menace" "would merely render the contract voidable by prompt disaffirmance, not void and subject to challenge years later" (citing *Barnette v. Wells Fargo Nev. Nat'l Bank of San Francisco,* 270 U.S. 438, 444 (1926))). Due to these disputed issues of fact, the Court cannot resolve Pichardo's breach of contract claim as a matter of law and thus **OVERRULES** without prejudice the Trust's Objection to Pichardo's breach of contract claim.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Pichardo's claim for breach of the implied covenant of good faith and fair dealing is based on his allegations that GMACM did not act in good faith when it: (i) "unilaterally change[d] the terms of the loan modification from a principal forgiveness [agreement] to [a] principal deferment [agreement]" (First Am. Compl. ¶ 28); and (ii) "threatened [Pichardo] with foreclosure if he did not sign the [Corrected Agreement] changing the terms to principal deferment" (*id.* ¶ 29). The Trust argues that an underlying contract is required to state a claim for breach of the implied covenant of good faith and fair dealing, and the August Agreement did not constitute a binding contract. (Obj.¶ 62.) Additionally, the Trust contends that GMACM did not breach any implied duty in requesting that Pichardo cooperate in executing the Corrected Agreement to "ensure that the parties' expectations at the time of contracting were enforced, not

violated, by correcting the agreement to prevent [Pichardo] from being provided with an unintended windfall." (*Id.* ¶ 63.)

"In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfield v. JPMorgan Chase Bank, N.A.,* 732 F.Supp.2d 952, 968 (N.D.Cal.2010) (citation omitted). Specifically, "[a] plaintiff must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities." *Woods v. Google, Inc.,* 889 F.Supp.2d 1882, 1194 (N.D.Cal.2012).

As discussed above, Pichardo alleged facts establishing that the August Agreement is a valid agreement. He also alleged that he made all of his payments under the August Agreement (and under the Corrected Agreement), that GMACM was obligated to perform under the August Agreement, that GMACM unfairly interfered with his rights to receive the benefits of the August Agreement by threatening foreclosure if he did not sign the Corrected Agreement, and that he was harmed as a result. While the Trust asserts that GMACM was simply trying to correct its mistake in executing the August Agreement, the Trust does not deny that GMACM took action to alter Pichardo's rights under the August Agreement, as much as those rights are challenged now. Altogether, Pichardo has alleged sufficient facts in support of his breach of the implied covenant of good faith and fair dealing claim and the Trust's Objection to this Claim is therefore **OVERRULED** without prejudice.

### 3. Negligence

**\*14** Pichardo asserts that GMACM is liable for negligence because it breached its duty to exercise reasonable care and skill in servicing his Loan by "failing to properly calculate and credit [his] payment, prepar[ing] and fil[ing] false documents, [and] threaten[ing] foreclosure without having the legal authority and proper documentation to do so." (First Am. Compl. ¶ 33.) The Trust argues that Pichardo fails to state a claim for negligence because: (i) he cannot show that GMACM owed him a duty of care (Obj.¶ 65); and (ii) he has

Case 5:24-cv-00188-DNH-MJK   Document 7   Filed 05/01/24   Page 26 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

not specifically identified any allegedly negligent acts taken by GMACM (*id.* ¶ 67).

Under California law, a negligence claim consists of three elements: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo,* 911 P.2d 496, 498 (Cal.1996) (alterations and internal quotation marks omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 283 Cal.Rptr. 53, 56 (Ct.App.1991) (quoting *Beauchamp v. Los Gatos Golf Course,* 77 Cal.Rptr. 914 (Ct.App.1969)). Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 56–57 (citing cases). However, California courts lack consensus regarding whether a financial institution owes a borrower a duty of care when a loan modification is involved. *See, e.g., Segura v. Wells Fargo Bank, N.A.,* No. CV–14–04195, 2014 WL 4798890, at *12 (C.D.Cal. Sept. 26, 2014) ("The existence of a duty of care owed by financial institutions in the process of considering borrowers for a loan modification ... is an unsettled issue."); *Armstrong v. Chevy Chase Bank, FSB,* No. 5:11–cv–05664 (EJD), 2012 WL 4747165, at *4 (N.D.Cal. Oct. 3, 2012) (observing that several courts "have characterized a loan modification as a traditional money lending activity," and finding that "the minority of cases which hold otherwise ... are unpersuasive") (internal citations and quotation marks omitted).

California courts examine and balance the following factors to determine whether a duty of care exists between a financial institution and a borrower: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Nymark,* 283 Cal.Rptr. at 58 (citing cases). The California Court of Appeal has held that these factors "do not support imposition of a common law duty to offer or approve a loan modification" or other foreclosure alternatives. *Lueras v. BAC Home Loans Servicing, LP,* 163 Cal.Rptr.3d 804, 820 (Ct.App.2013). Instead, the lending institutions' "rights, duties, and obligations in [offering, considering, or approving loan modifications and exploring

foreclosure alternatives] [a]re set forth in the note and deed of trust, the [parties' forbearance agreement], federal and state statutes and regulations, and the directives and announcement of the United States Department of Treasury and Fannie Mae." *Id.* at 820–21. A plaintiff's negligence claim against a lending institution will not stand where the plaintiff fails to demonstrate that his or her default in paying the monthly loan payments was a result of, or exacerbated by, the defendant's conduct. *Id.* at 820–21 ("If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lenders conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct.").

**\*15** Pichardo's allegations are similar to the allegations made by the plaintiff and rejected by the court in *Lueras. See id.* ("[Plaintiff's] allegations that [defendants] owed him duties to follow through on their own agreements, to comply with consumer protection laws and to stop foreclosure sales that were unlawful fail to state a cause of action for negligence because such duties, if any, are imposed by the loan documents and the [parties' forbearance agreement], statutes and regulations. If [the defendants] failed to follow through on those agreements, then [plaintiff's] remedy lies in breach of contract not negligence."). Moreover, Pichardo has failed to demonstrate that GMACM acted outside of its "conventional role" as a loan servicer such that the *Nymark* factors would support a finding that GMACM owed a duty of care to Pichardo. Thus, the Trust's Objection to Pichardo's negligence cause of action is **SUSTAINED.**

### 4. Unjust Enrichment

Pichardo asserts that GMACM has been unjustly enriched by its "wrongful acts and omissions" at his expense. (First Am. Compl. ¶ 36.) The Trust argues that Pichardo's unjust enrichment claim fails because there is no independent cause of action for unjust enrichment under California law and, in any event, Pichardo "has not alleged any specific benefit retained by GMACM." (Obj.¶ 70.)

The Trust is correct: Unjust enrichment is not an independent cause of action under California law. *See, e.g., McBride v. Boughton,* 20 Cal.Rptr. 115, 121 (Ct.App.2004) ("Unjust enrichment is not a cause of action, ... or even a remedy, but rather a general principle, underlying various legal

Case 5:24-cv-00188-DNH-MJK   Document 7   Filed 05/01/24   Page 27 of 90

In re Residential Capital, LLC, Not Reported in B.R. Rptr. (2015)

2015 WL 4747860

doctrines and remedies." (citation and internal quotation marks omitted); *Melchior v. New Lines Prods., Inc.,* 131 Cal.Rptr. 347, 357 (Ct.App.2003) ("[T]here is no cause of action in California for unjust enrichment."). Consequently, the Trust's Objection to Pichardo's unjust enrichment claim is **SUSTAINED.**

### 5. Violation of the UCL

In his First Amended Complaint, Pichardo asserts a more robust UCL claim than he did in his Initial Complaint. Pichardo alleges that GMACM engaged in deceptive business practices by, among other things: (i) assessing improper fees; (ii) improperly characterizing borrowers as being late or in default; (iii) improperly threatening foreclosure proceedings; (iv) misapplying borrower payments; (v) failing to provide borrowers adequate monthly statements; (vi) failing to disclose certain fees, costs, and charges; (vii) ignoring grace periods; and (viii) executing and recording false and misleading documents. (First Am. Compl. ¶ 41.) The Trust acknowledges that an individual can bring a cause of action under the UCL on behalf of members of the general public, but argues that Pichardo's "vague and conclusory statements regarding GMACM's general business practices with respect to other borrowers are not sufficient to satisfy the basic pleading standards with respect to a claim brought ... on behalf of the general public." (Obj. ¶ 72.) Additionally, the Trust argues that Pichardo fails to state a claim for violation of the UCL with respect to actions specific to him because his payment history indicates no evidence of improper charges or misapplied payments. (*See id.* ¶ 73.)

An act or practice is "unfair" within the meaning of the UCL if it is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker,* 543 F.3d 498, 506 (9th Cir.2008) (citation and internal quotation marks omitted). "A business practice is 'fraudulent' within the meaning of Section 17200 if 'members of the public are likely to be deceived.' " *Bias v. Wells Fargo & Co.,*

942 F.Supp.2d 915, 934 (N.D.Cal.2013) (quoting *Comm. on Children's Television v. Gen. Foods Corp.,* 673 P.2d 660, 668 (Cal.1983), *superseded by statute on other grounds,* 2004 Cal. Legis. Serv. Prop. 64 (West 2004)). "The fraudulent practice 'may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive.... A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.' " *Id.* (quoting *Klein v. Chevron U.S.A., Inc.,* 137 Cal.Rptr.3d 293, 324 (Ct.App.2012)).

**\*16** Pichardo has alleged that he was coerced into executing the Corrected Agreement under the pretense that GMACM would foreclose on his Property at a time when he was allegedly not in default on his Loan obligations. This allegation, if true, may constitute an unfair or fraudulent business practice within the meaning of the UCL. In light of this disputed issue of fact, the Objection to Pichardo's UCL claim is **OVERRULED** without prejudice.

### III. *CONCLUSION*

For the foregoing reasons, the Trust's Objection to Pichardo's Claim is **SUSTAINED** in part and **OVERRULED** in part. To the extent the Objection to Pichardo's Claim is overruled, it is overruled without prejudice.

The Court **ORDERS** that the parties meet and confer and provide a status letter to the Court no later than September 4, 2015, advising whether they are able to resolve the Claim, and if not, proposing a schedule for discovery, if necessary, and for an evidentiary hearing.

**IT IS SO ORDERED.**

### All Citations

Not Reported in B.R. Rptr., 2015 WL 4747860

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1444532
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

James Allen WHITTLE, Plaintiff,
v.
WELLS FARGO BANK, N.A., et al, Defendants.

No. CV F 10–0429 LJO GSA.
|
April 9, 2010.

**Attorneys and Law Firms**

James Allen Whittle, Fresno, CA, pro se.

Fred J. Hickman, Jeremy E. Shulman, Mark T. Flewelling, Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP, Pasadena, CA, for Defendants.

**ORDER ON WELLS FARGO'S F.R.Civ.P. 12 MOTION TO DISMISS** (Doc. 10.)

LAWRENCE J. O'NEILL, District Judge.

### INTRODUCTION

*1 Defendant Wells Fargo, N.A. ("Wells Fargo") seeks to dismiss as meritless and barred by res judicata pro se plaintiff James Allen Whittle's claims arising from his defaulted home loan. This Court considered Wells Fargo's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the May 10, 2010 hearing, pursuant to this Court's sua sponte dismissal of this action.

### BACKGROUND

#### Mr. Whittle's Home Loan

Mr. Whittle executed an August 24, 2007 promissory note ("note") for Wells Fargo's $145,000 home loan. The note was secured by a deed of trust ("DOT") recorded against Mr. Whittle's Fresno residence ("property"). [1] Mr. Whittle is in default on the note.

1    The DOT was recorded with the Fresno County Recorder.

#### Mr. Whittle's Dismissed Prior Action

On January 3, 2010, Mr. Whittle filed in state court a document entitled "Plaintiff's Petition for Injunctive and Other Relief and for Court to Compel Defendant to Produce and Comply with Plaintiff's Demands" ("prior complaint"). Wells Fargo removed the action to this Court as *James Allen Whittle v. Wells Fargo Bank, N.A.,* Case No. CV F 10–0229 LJO SMS ("prior action"). This Court construed the prior complaint to attempt to allege claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq. The prior complaint alleged that "there is no contractual obligation between Plaintiff and Defendant." The prior complaint demanded "injunctive relief and/or other relief which will effectively stop (Status Quo) any and all of Defendant's collection activities, including foreclosure sale" of the property.

This Court's February 24, 2010 order ("February 24 order") dismissed the prior action on grounds that the prior complaint failed to satisfy F.R.Civ.P. 8 pleading standards and to allege cognizable FDCPA and RESPA claims. The prior complaint's significant deficiencies barred an attempt to amend it. The February 24, 2010 order noted this Court's concern that "Mr. Whittle has brought this action in absence of good faith and that Mr. Whittle exploits the court system solely for delay or to vex Wells Fargo" and that an "attempt to vex or delay provides further grounds to dismiss this action against Wells Fargo." Judgment was entered on February 24, 2010.

#### Mr. Whittle's Claims In This Action

On March 4, 2010, prior to removal to this Court, Mr. Whittle filed in state court his "Verified Complaint for Declaratory and Injunctive Relief to Void Power of Sale" ("current complaint") to take issue with the DOT's power of sale clause. The current complaint alleges claims of:

1.  "Deprivation of Plaintiff's Due Process" that "Defendants willfully and intentionally concealed" "a small and somewhat hidden and/or disguised provision, known as a Power of Sale Clause ... to literally confiscate Plaintiff's property without due process";

2. "Deprivation of Plaintiff's Rights under Cognovit Note" that a power of sale clause "is akin in performance to a cognovit note and/or confession of judgment" which "robs the (unknowing maker of certain or otherwise assured rights and remedies)";

**\*2** 3. "Deprivation of Plaintiff's Rights due to Unconscionability and Adhesion Contracts" that "Plaintiff has established enough doubt as to the validity of an enforceable contract that this court is required to determine the enforceability of the contract";

4. "Declaratory Relief" that "Plaintiff clearly has a direct, substantial and present interest in the controversy"; and

5. "Injunctive Relief" as to "Dispossessing Plaintiff of Property."

### DISCUSSION

### *F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards*

Wells Fargo describes this action as Mr. Whittle's "continued attempt to enjoin the foreclosure sale and to thwart Wells Fargo's rightful interests."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6).... Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea–Land Service, Inc.,* 813 F.2d 986, 991 (9th Cir.1987); *see Wong v. Bell,* 642 F.2d 359, 361–362 (9th Cir.1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy,* 745 F.2d 1221, 1226 (9th Cir.1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gilligan v. Jamco Development*

*Corp.,* 108 F.3d 246, 249 (9th Cir.1997). A F.R .Civ.P. 12(b) (6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.,* 901 F.2d 696,699 (9th Cir.1990); *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir.1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–338 (9th Cir.1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.,* 536 F.3d 1049, 1055 (9th Cir.2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose,* 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated ... laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir.2005).

**\*3** "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 554,550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes,* 181 F.R.D. 629, 634 (S.D.Cal.1998). In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly,* 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984)).

In *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937,1949, 173 L.Ed.2d 868 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal,* the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 989 (9th Cir.2009) (quoting *Iqbal,* —— U.S. ——, 129 S.Ct. at 1949, 173 L.Ed.2d 868).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.... Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

**\*4** In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* —— U.S. ——, 129 S.Ct. at 1949–1950, 173 L.Ed.2d 868.

With these standards in mind, this Court turns to Wells Fargo's challenges to the current complaint.

### Res Judicata

Wells Fargo argues that res judicata bars this action given dismissal of the prior action.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). "Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised *or could have been raised'* in a prior action." *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th Cir.2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708,713 (9th Cir.2001) (emphasis in original)).

Res judicata serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen,* 449 U.S. at 94, 101 S.Ct. 411, 66 L.Ed.2d 308.

The U.S. Supreme Court has further explained the "general rule of res judicata":

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' ... The judgment puts an end to the cause of action, which cannot again be

brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*C.I.R. v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (citation omitted).

An action is barred by res judicata when it arises out of the "same transactional nucleus of fact" as a prior action. *See International Union of Operating Engineers– Employers Const. Industry Pension, Welfare, etc. v. Karr,* 994 F.2d 1426, 1430 (9th Cir.1993); *Sidney v. Zah,* 718 F.2d 1453, 1459 (9th Cir.1983)* (citing with approval transactional approach of Restatement (Second) of Judgments § 24 and noting that whether the claim "arise[s] out of the same transactional nucleus of facts [is] the criteria most stressed in our decisions"). As such, "a difference in the legal theories asserted in two suits that arise from the same transaction (or set of transactions) does not undermine the identity of causes between them." *Boateng v. Interamerican Univ., Inc.,* 210 F.3d 56, 62 (1st Cir.2000)* (plaintiff "did not have a right to bring separate and successive suits on different legal theories arising out of a single nucleus of operative facts").

**\*5** Wells Fargo notes that the prior and current complaints "attack" the DOT's "validity" and seek to enjoin property foreclosure. Wells Fargo argues that the current complaint's "new legal theories" do not allow Mr. Whittle to " 'sidestep' the bar of res judicata, for plaintiff's new claims for relief arise from the same 'transactional nucleus of operative facts.' " Wells Fargo points to the "virtual match" of the prior and current complaint's injunctive relief claims.

Wells Fargo is correct. The prior action's judgment bars this action to warrant its dismissal. Mr. Whittle's claims in the prior and current complaints arise from his loan default and attempted foreclosure—the same transactional nucleus of fact. Despite its theory or label, any purported claim in the current complaint could have been raised in the prior action. Permitting this action to proceed would defeat res judicata purposes and would burden Wells Fargo and this Court to relitigate decided issues. Mr. Whittle is unable to bring separate and successive actions on purported different theories arising out of the same nucleus of operative facts to warrant dismissal of this action.

**Failure To Satisfy *F.R.Civ.P. 8***

Putting aside res judicata, the current complaint fails on other grounds. The current complaint references five "causes of action," but each cause of action fails to allege facts sufficient to state a claim. F.R.Civ.P. 8 requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County,* 216 F.3d 837, 840 (9th Cir.2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne,* 84 F.3d 1172, 1179 (9th Cir.1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry,* 84 F.3d at 1180. "Prolix, confusing complaints ... impose unfair burdens on litigants and judges." *McHenry,* 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency,* 733 F.2d 646, 649 (9th Cir.1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones,* 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion [s] devoid of 'further factual enhancement.' " *Iqbal,* ––– U.S. ––––, 129 S.Ct. at 1949, 173 L.Ed.2d 868 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929). The U.S. Supreme Court has explained:

**\*6** While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly,* 550 U.S. at 556, n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929.

The current complaint fails to satisfy F.R.Civ.P. 8. The current complaint makes mere references to due process "deprivation," "unconscionable means," "unfettered power of sale," "unconscionability," "violation of Federal and California State law," "misrepresentation," and "unjust enrichment." The current complaint lacks facts to support claims or valid, cognizable legal theories as to Wells Fargo. The current complaint lacks specific, clearly defined allegations as to Wells Fargo. The current complaint fails to give Wells Fargo fair notice of claims plainly and succinctly to warrant dismissal of this action.

### Failure To Tender Indebtedness

Wells Fargo characterizes the current complaint's five claims as "defective because plaintiff fails to tender the amount of indebtedness in his complaint."

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen,* 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance ... and must be unconditional to be valid." *Arnolds Management,* 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank,* 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied,* 519 U.S. 1081, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna,* 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE–HAB 01 v. E & G Investments, Ltd.,* 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

**\*7** ... generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."…. This rule ... is based upon the equitable maxim that a court of equity will not order a useless act performed…. "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." ... The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.,* 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen,* 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing Cal. Civ.Code, § 1495.) Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen,* 15 Cal.App.3d at 118, 15 Cal.App.3d 112, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management,* 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney,* 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd,* 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci,* 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to

2010 WL 1444532

his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction.... The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan,* 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal–Western Reconveyance Corp.,* 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

**\*8** "The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun,* 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney,* 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Neither the current complaint nor record references Mr. Whittle's tender of indebtedness. The current complaint's silence on Mr. Whittle's tender of or ability to tender loan proceeds is construed as his concession of inability to do so. Without Mr. Whittle's meaningful tender, Mr. Whittle seeks empty remedies, not capable of being granted. The claims against Wells Fargo are subject to dismissal in the absence of a sufficiently alleged tender of loan proceeds.

### No State Actor

The current complaint's reference to 42 U.S.C. § 1983 ("section 1983") and civil rights violations does not save this action.

The "ultimate issue" to determine whether a person is subject to a section 1983 action is whether "the alleged infringement of federal rights [is] 'fairly attributable to the State?' " *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764,

73 L.Ed.2d 418 (1982) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)). The United States Supreme Court has adopted a two-part test to address whether infringement is attributable to the state:

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation a federal right be fairly attributable to the State: These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

A private remedy such as non-judicial foreclosure does not involve state action to invoke a section 1983 claim. *Apao v. Bank of New York,* 324 F.3d 1091, 1095 (9th Cir.2003); *Charmicor v. Deaner,* 572 F.2d 694, 696 (9th Cir.1978) (source of the non-judicial foreclosure "right is not conclusive as to state action"). "California's nonjudicial foreclosure procedure does not constitute state action and is therefore immune from the procedural due process requirements of the federal Constitution." *Garfinkle v. Superior Court,* 21 Cal.3d 268, 281, 146 Cal.Rptr. 208, 578 P.2d 925 (1978).

**\*9**  Non-judicial foreclosure proceedings do not constitute state action to bar Mr. Whittle's section 1983 claims.

In addition, the current complaint fails to substantiate that Wells Fargo is a state actor. "When addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical Center,* 192 F.3d 826, 835 (9th Cir.1999); *see Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes ."); *Price v. Hawaii,* 939 F.2d 702, 707–08 (9th Cir.1991) ("[P]rivate parties are not generally acting under color of state law.") " § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted).

As a private actor, Wells Fargo is subject to no section 1983 claim.

### The FDCPA

The current complaint's passing reference to the FDCPA fails to prevents this action's doom.

The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others. *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985), *mod. on other grounds,* 761 F.2d 237 (5th Cir.1985). The FDCPA defines a debt collector as "any person ... who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt collector" does not include a person who collects or attempts to collect a debt "to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C.1962a(6)(F). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry,* 756 F.2d at 1208.

Wells Fargo is correct that a debtor collector does not include lenders such as itself. *See Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106 (6th Cir.1996); *Kloth v. Citibank (South Dakota), N.A.,* 33 F.Supp.2d 115, 1998 (D.Conn.1998)

("Generally, the FDCPA does not apply to creditors."). This action fails despite the current complaint's reference to the FDCPA.

### Declaratory Relief

Wells Fargo argues that the current complaint's request for declaratory relief dies with other purported claims and "adds nothing of substance to the pleading."

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**\*10**  28 U.S.C. § 2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.,* 41 F.3d 764, 775 (1st Cir.1994). The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp,* 108 F.3d 17, 21 (2nd Cir.1997) (italics in original). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns,* 15 F.3d 142, 143 (9th Cir.1994).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The United States Supreme Court has further explained:

A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth,* 300 U.S. at 240–241, 57 S.Ct. at 464 (citations omitted).

The failure of the current complaint as a whole demonstrates the absence of an actual controversy subject to declaratory relief. A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.,* 655 F.2d 938, 943 (9th Cir.1981). In the absence of a viable claim, the current complaint fails to support declaratory relief.

### Injunctive Relief

Wells Fargo argues that an injunctive relief remedy is unavailable without a viable claim.

"Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. In the absence of plaintiffs' meaningful tender of indebtedness, no beneficial purpose appears for plaintiffs' requested injunctive relief.

"Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter,* 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942). Neither a viable claim nor

"an independent duty" supports injunctive relief to doom the current complaint's injunctive relief claim.

### Attempt At Amendment And Malice

**\*11** Mr. Whittle has brought against Wells Fargo meritless claims barred by res judicata. Mr. Whittle is unable to cure his claims by allegation of other facts and thus is not granted an attempt to amend.

Moreover, this Court is convinced that Mr. Whittle has brought this action in absence of good faith and that Mr. Whittle exploits the court system solely for delay or to vex Wells Fargo. The test for maliciousness is a subjective one and requires the court to "determine the ... good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.,* 236 U.S. 43, 46, 35 S.Ct. 236, 59 L.Ed. 457 (1915); *see Wright v. Newsome,* 795 F.2d 964, 968, n. 1 (11th Cir.1986); *cf. Glick v. Gutbrod,* 782 F.2d 754, 757 (7th Cir.1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher,* 741 F.2d 209, 212 (8th Cir.1984). An attempt to vex or delay provides further grounds to dismiss this action against Wells Fargo, especially since this is the second meritless action Mr. Whittle has pursued against Wells Fargo.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against Wells Fargo; and

2. DIRECTS the clerk to enter judgment in favor of defendant Wells Fargo Bank, N.A. and against plaintiff James Allen Whittle.

In addition, this Court will not tolerate Mr. Whittle's further frivolous filings or abuse of the judicial process. This Court ADMONISHES Mr. Whittle that it will impose monetary and/or other sanctions on Mr. Whittle if he continues to vex Wells Fargo and this Court and/or engages in abuse of the judicial process.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1444532

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4392482
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jeffrey GHIAZZA, Plaintiff,

v.

ANCHORAGE MARINA, INC., et al., Defendants.

No. 19-CV-2792 (KMK)
|
Signed 09/24/2021

**Attorneys and Law Firms**

Jeffrey Ghiazza, Pleasant Valley, NY, Pro se Plaintiff.

Eric M. Kurtz, Esq., Cook, Netter, Cloonan, Kurtz & Murphy, P.C., Kingston, NY, Counsel for Anchorage Defendants.

Russell A. Schindler, Esq., Kingston, NY, Counsel for Defendant Lawrence W. Ghiazza, Jr.

OPINION & ORDER

KENNETH M. KARAS, United States District Judge:

**\*1** Pro se Plaintiff Jeffrey Ghiazza ("Plaintiff") pursues a putative claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41 *et seq.*, against Defendants Anchorage Marina, Inc. (the "Marina"), Anchorage Restaurant and Marina (the "Restaurant"), Julie Swarthout ("Swarthout") (collectively, the "Anchorage Defendants"), and Lawrence W. Ghiazza, Jr. ("Defendant Ghiazza"). (Am. Compl. 1–2 (Dkt. No. 36).) Before the Court are (i) the Anchorage Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), and (ii) Defendant Ghiazza's Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Anchorage Defs.' Not. of Mot. (Dkt. No. 49); Def. Ghiazza's Not. of Mot. (Dkt. No. 45).) For the following reasons, the Motions are granted, and the case is dismissed for lack of subject matter jurisdiction.

I. Background

The Court previously described the allegations of this case in an Opinion & Order issued on July 27, 2020 (the "July 2020 Opinion"). (*See* Op. & Order ("July 2020 Op.") (Dkt. No. 33).) [1] As discussed in the July 2020 Opinion, Plaintiff and Defendant Ghiazza, residents of New York State, are the children of Lawrence W. Ghiazza, Sr. and Helene A. Ghiazza (the "Parents"). (July 2020 Op. 2.) Prior to the commencement of this case, Plaintiff performed renovations on the Parents' mobile home, for which they owed Plaintiff approximately $13,650. (*Id.*; *see also* Am. Compl. 1.) The Parents attempted to transfer title of their boat, the "Lucky Four," to Plaintiff in partial satisfaction of the debt. (Am. Compl. 1.) [2] The Lucky Four, which was registered with the U.S. Coast Guard, was valued at approximately $3,600, leaving a balance of approximately $10,050 still owed to Plaintiff. (*Id.*) At some point, the Parents passed away. (*See id.*) Before their death, Defendant Ghiazza "was named as the responsible party over the remaining business," although there were allegedly "no letters of administration and ... no probate proceedings." (*Id.*) [3]

[1]    Although the Court, in dismissing Plaintiff's claims, warned him that his amended complaint would "replace, not supplement, his original Complaint," and therefore advised him that any amended complaint should "contain *all* of the claims, factual allegations, and exhibits that [he] wishe[d] the Court to consider," (July 2020 Op. 10–11), the Amended Complaint omits certain factual context that was set forth in the original Complaint, (*compare* Compl. (Dkt. No. 2), *with* Am. Compl.). To make sense of the underlying narrative, the Court will, as necessary, rely on the factual allegations as described in the July 2020 Opinion. The Court will also endeavor to identify certain factual discrepancies between the Complaint and Amended Complaint.

[2]    In his Amended Complaint, Plaintiff alleges that his Parents "unsuccessfully transferred" title of the Lucky Four. (Am. Compl. 1.) In his original Complaint, Plaintiff did not allege that his Parents' transfer of the Lucky Four was "unsuccessful." (*See* Compl. ¶ 18.) Rather, he merely alleged that the boat was not transferred "free and clear of all encumbrances," as it was "suppose[d] to be." (*Id.* ¶¶ 18–19.)

2021 WL 4392482

3          It is unclear what "business" Plaintiff refers to. He
        may well be referring to the fact that Defendant
        Ghiazza was named executor of the Parents' estate.
        (July 2020 Op. 2.)

**\*2**  Plaintiff alleges that although "[i]t was agreed" that
Defendant Ghiazza would satisfy the remainder of the
Parents' debt to Plaintiff, and would "deliver the Lucky
Four to [Plaintiff] free of all encumbrances," he has failed
to do so. (*Id.* at 1–2.) Of relevance here, the Anchorage
Defendants "claim[ ] that a lien was placed on the boat prior
to the unsuccessful transfer of title to [Plaintiff]," apparently
because of boat storage fees that are past due. (*See id.* at 2; *see
also* July 2020 Op. 2–3 (explaining Plaintiff's allegation that
the Anchorage Defendants have placed a lien on the Lucky
Four because of unpaid storage fees).) Plaintiff alleges that
because "the lien was placed on the Lucky Four while in
the care and control of [his] deceased father and [D]efendant
[Ghiazza]," he is "not financially responsible for the payment
of past or recurring storage fees." (Am. Compl. 2.)

In his initial Complaint, Plaintiff sought a declaratory
judgment "clearing the Title of the Boat in controversy
and releasing the Boat to [P]laintiff, free of all
encumbrances." (July 2020 Op. 3 (alteration in original)
(quoting Compl. ¶ 14).) He also brought claims for fraud
and unjust windfall against the Anchorage Defendants, and
for breach of fiduciary duty and breach of contract against
Defendant Ghiazza. (*Id.*) The Court dismissed the claims
for lack of subject matter jurisdiction. (*See id.* at 6–11.)
Because both Plaintiff and the Anchorage Defendants are
citizens of New York State, and because Plaintiff had asserted
exclusively state law claims, Plaintiff's sole asserted basis
for invoking the Court's subject matter jurisdiction was the
fact that the Lucky Four was "under the jurisdiction of the
United States Coast Guard and Homeland Security," which,
he argued, "qualif[ied] as a federal question." (*Id.* at 6 (record
citation omitted).) The Court held that there was no basis for
maritime jurisdiction over any of Plaintiff's claims against the
Anchorage Defendants, (*see id.* at 7–10), and therefore found
that the Court lacked subject matter jurisdiction, (*see id.* at 7,
10–11.)

Plaintiff filed his Amended Complaint on September 18,
2020. (Dkt. No. 35.) With minor discrepancies, noted *supra*,
Plaintiff's factual allegations remain unchanged. (*Compare*
Compl., *with* Am. Compl.) Now, however, Plaintiff purports
to bring a claim against the Anchorage Defendants under
the FDCPA and possibly the FTCA. (Am. Compl. 2.)
Specifically, Plaintiff alleges that the Anchorage Defendants

have "no grounds to demand payment for storage fees ...
for a boat that was never legally transferred or in [his]
possession during the time that the fees were accrued." (*Id.*)
"This conduct," Plaintiff alleges, constitutes "an unfair or
deceptive act or practice in violation of the [FDCPA] pursuant
to the [FTCA]." (*Id.*) He seeks $350,000 in damages from the
Anchorage Defendants based on their alleged violations of the
FDCPA. (*Id.*) He also seeks $13,650 from Defendant Ghiazza
for the renovations he performed on the Parents' mobile home,
"plus court costs and damages" in the amount of $25,000. (*Id.*
at 2–3.)

On October 21, 2020, Defendant Ghiazza and the Anchorage
Defendants filed Answers to the Amended Complaint. (Dkt.
Nos. 37, 40.) The Anchorage Defendants also asserted
a counterclaim against Plaintiff. (Dkt. No. 40.) On the same
day, Defendant Ghiazza filed a pre-motion letter seeking
permission to file a motion to dismiss. (Dkt. No. 38.) On
October 29, 2020, the Court adopted a briefing schedule
for Defendant Ghiazza's motion, (Dkt. No. 42), and the
Anchorage Defendants requested a pre-motion conference
in anticipation of filing their own motion to dismiss, (Dkt.
No. 41.) The Court adopted a briefing schedule for the
Anchorage Defendants' motion on November 6, 2020. (Dkt.
No. 43.) Defendant Ghiazza submitted the instant Motion To
Dismiss and supporting papers on December 1, 2020. (*See*
Def. Ghiazza's Not. of Mot.; Decl. of Russell A. Schindler,
Esq., in Supp. of Mot. ("Schindler Decl.") (Dkt. No. 46); Def.
Ghiazza's Mem. of Law in Supp. of Mot. ("Def. Ghiazza's
Mem.") (Dkt. No. 47).) On the same day, the Anchorage
Defendants filed the instant Motion for Judgment on the
Pleadings and supporting papers. (*See* Anchorage Defs.' Not.
of Mot.; Aff. of Eric M. Kurtz, Esq., in Supp. of Mot. ("Kurtz
Aff.") (Dkt. No. 50); Anchorage Defs.' Mem. of Law in
Supp. of Mot. ("Anchorage Defs.' Mem.") (Dkt. No. 51).)
Plaintiff filed an Opposition on January 7, 2021. (*See* Pls.'
Mem. of Law in Opp'n to Mots. ("Pl.'s Opp'n") (Dkt. No.
52).) Defendant Ghiazza filed a Reply on January 20, 2021.
(Def. Ghiazza's Mem. of Law in Further Supp. of Mot. ("Def.
Ghiazza's Reply") (Dkt. No. 54).) The Anchorage Defendants
did not submit a Reply. (*See* Dkt.)

## II. Discussion

### A. Standard of Review

**\*3**  To prevail on a motion under Federal Rule of Civil
Procedure 12(c), a party must establish that no material facts
are in dispute and that judgment must be granted as a matter

Ghiazza v. Anchorage Marina, Inc., Not Reported in Fed. Supp. (2021)

2021 WL 4392482

of law. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Nieves v. Comm'r of Soc. Sec.*, No. 17-CV-6844, 2019 WL 5722272, at \*10 (S.D.N.Y. Aug. 9, 2019). "In deciding a Rule 12(c) motion, [the Court] employ[s] the same standard applicable to dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (citation, alterations, and quotation marks omitted). To resolve a Rule 12(c) motion, "the [C]ourt considers the complaint, the answer, any written documents attached to them, and any matter of which the [C]ourt can take judicial notice for the factual background of the case." *Id.* at 422 (citation and quotation marks omitted).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### B. Analysis

**\*4** Anchorage Defendants argue that they do not constitute a "debt collector" under the FDCPA, and thus, this statute "is inapplicable to the matter before this Court." (Anchorage Defs.' Mem. 8.) [4] To the extent Plaintiff purports to assert a claim under the FTCA, Anchorage Defendants note that there is no private right of action under this statute. (*Id.* at 10.) Defendant Ghiazza argues that the only factual claim made against him is that he is the "responsible party" for payment of an alleged debt owed to Plaintiff. (Def. Ghiazza's Mem. 1.) He moves to dismiss this Action on the grounds that the instant claims are identical to those raised unsuccessfully in a state court action, and therefore must be dismissed under principles of res judicata or collateral estoppel. (*Id.*) Alternatively, he argues that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim(s) against him. (*Id.*)

[4]     Unless otherwise noted, citations to all Defendants' motion papers refer to the ECF stamp at the top of the page.

"The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Schmelczer v. Penn Credit Corp.*, No. 20-CV-2380, 2021 WL 325982, at \*4 (S.D.N.Y. Feb. 1, 2021) (citation, brackets, and quotation marks omitted). To establish a claim under the FDCPA, a plaintiff must meet three requirements:

(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any action or omission in violation of FDCPA requirements.

*Id.* at \*5 (quoting *Okyere v. Palisades Collection*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013)). "A 'debt collector' is a person 'who regularly collects ... debts owed ... another' or a person involved 'in any business the principal purpose of which is the collection of any debts.'" *Okyere*, 961 F. Supp. 2d at 529 (quoting 15 U.S.C. § 1692a(6)). The definition of "debt collector" excludes "creditors," whom the FDCPA defines as "any person who offers or extends credit creating a debt *or to whom a debt is owed*." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 579 (S.D.N.Y. 2015) (emphasis added) (citing 15 U.S.C. § 1692a(4), (6)(A)). "Put simply, a debt collector collects debt owed to another person, while a creditor seeks to collect on a debt owed to it." *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-CV-9945, 2018 WL 1605574, at \*11 (S.D.N.Y. Mar. 29, 2018). Creditors, as opposed to debt collectors, are not generally subject to the FDCPA. *Dash v. Bank of Am. Corp.*, No. 18-CV-4807, 2019 WL 1780140, at \*9 (S.D.N.Y. Apr. 23, 2019); *see also Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014) (same). That is, the FDCPA "limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts." *Dash*, 2019 WL 1780140, at \*9 (quoting *1077 Madison Street LLC v. March*, No. 14-CV-4253, 2015 WL 6455145, at \*3 (E.D.N.Y. Oct. 26, 2015)).

Here, the Amended Complaint "fails to provide any facts that actively and plausibly support the conclusion that any of the [Anchorage] [D]efendants are 'debt collectors' within the meaning of the [FDCPA]." *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009). "There is no contention," for example, "that debt collection was a principal purpose of [Anchorage Defendants'] business." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004). Nor has Plaintiff alleged that Anchorage Defendants "regularly engaged in such activity."

*Id.* (explaining that "[t]he FDCPA establishes two alternative predicates for 'debt collector' status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity"). To the contrary, the Amended Complaint makes clear that Anchorage Defendants have simply demanded payment of a debt which Plaintiff allegedly owes them. (*See* Am. Compl. 2 (indicating that Anchorage Defendants have demanded "payment of past or recurring storage fees" for their storage of the Lucky Four).) As persons "to whom a debt is owed," Anchorage Defendants fall squarely under the FDCPA's definition of "creditor," *Polanco*, 132 F. Supp. 3d at 579, and therefore are not subject to its provisions, *Backuswalcott v. Common Ground Comm. HDFC, Inc.*, 104 F. Supp. 2d 363, 366 (S.D.N.Y. 2000) (noting that the FDCPA "does not apply to creditors collecting their own debts"). Because Plaintiff has not alleged that Anchorage Defendants are "debt collectors" under the FDCPA, Plaintiff has failed to state a claim under the statute. *See Johnson-Gellineau*, 2019 WL 2647598, at \*8–9 (dismissing FDCPA claim where the plaintiff failed to allege facts showing that the defendants constituted "debt collectors" under the FDCPA); *Dash*, 2019 WL 1780140, at \*10 (dismissing claim under the FDCPA where the plaintiff "failed to plead facts to show that [the defendant] is actually a debt collector within the meaning of the statute"); *see also Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68 (2d Cir. 2019) (summary order) (affirming dismissal of FDCPA claim where the plaintiffs' "complaint fail[ed] adequately to allege that the defendants qualif[ied] as debt collectors for purposes of the FDCPA").

**\*5** Although it is unclear whether Plaintiff actually seeks to assert a claim under the FTCA, Anchorage Defendants correctly point out that there is no private right of action under this statute. (*See* Anchorage Defs.' Mem. 10.) *See, e.g.*, *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978) ("[I]t is clear that no private right of action arises under th[e] [FTCA]."); *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232, 237 (2d Cir. 1974) (observing that "the provisions of the [FTCA] may be enforced only by the Federal Trade Commission[,]" and that "[n]owhere does the [FTCA] bestow upon either competitors or consumers standing to enforce its provisions"); *Trisvan v. Checkers Drive-In Rests., Inc.*, No. 16-CV-7000, 2020 WL 906635, at \*5 (E.D.N.Y. Feb. 18, 2020) (dismissing a plaintiff's putative claim under the FTCA "[b]ecause [the] [p]laintiff [was] a private party and the FTCA may be enforced only by the FTC"); *Oliver v. U.S. Bancorp*, No. 14-CV-8948, 2015 WL 4111908, at \*6 (S.D.N.Y. July 8, 2015) ("[I]t is well settled that there is no

2021 WL 4392482

private right of action under the [FTCA]."). Thus, the FTCA does not provide a basis for invoking the Court's federal-question jurisdiction in this case.

Because Plaintiff has failed to invoke the Court's federal-question jurisdiction, this Court lacks subject matter jurisdiction to hear claims against the Anchorage Defendants. *See Suarez v. Marcus*, No. 20-CV-11051, 2021 WL 603048, at *2 (S.D.N.Y. Feb. 12, 2021) ("Mere invocation of federal-question jurisdiction, without any facts demonstrating a federal-law claim, does not create federal-question jurisdiction."). Having dismissed the putative federal claims against Anchorage Defendants, the Court lacks subject matter jurisdiction over this Action. Plaintiff's claim(s) against Defendant Ghiazza sound solely in state law, (*see* Am. Compl. 2–3), and Plaintiff fails to allege any facts that would enable him to invoke the Court's diversity jurisdiction, *see Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) ("[I]t is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." (citation, quotation marks, and brackets omitted)). Plaintiff has not alleged, for example, that there is diversity of citizenship between him and Defendants, as is required under 28 U.S.C. § 1332. (*See generally* Am. Compl.) *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) ("It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship."). Because Plaintiff has failed to invoke the Court's diversity jurisdiction, his remaining claim(s) against Defendant Ghiazza are dismissed. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." (citation omitted)); *Cloyce v. Macy's Dep't Store*, No. 05-CV-597, 2006 WL 983931, at *3 (S.D.N.Y. Apr. 12, 2006) (adopting report & recommendation dismissing a plaintiff's state law claims "for failure to demonstrate a basis for diversity jurisdiction"). [5]

[5] Although Plaintiff argues that Defendant Ghiazza's Motion was improperly filed because he had

already filed an Answer to the Amended Complaint, (*see* Pl.'s Opp'n 6–7), "when a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006); *see also, e.g.*, *LaSpisa v. CitiFinancial Co.*, No. 19-CV-228, 2020 WL 2079410, at *7 (N.D.N.Y. Apr. 30, 2020) (observing that courts "may (and, indeed, ha[ve] to) sua sponte analyze and dismiss any claims for lack of subject-matter jurisdiction" (italics omitted)). Moreover, although both Parties filed the instant Motions *after* filing Answers, they were expressly permitted to do so by this Court. (*See* Dkt. Nos. 42–43.)

**\*6** Having dismissed all of Plaintiff's claims, the Court has no independent subject matter jurisdiction over Anchorage Defendants' counterclaim, which also sounds solely in state law. (*See* Answer ¶¶ 1–14.) *See Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg, P.C. v. Noto*, 94 F.R.D. 184, 188 (E.D.N.Y. 1982) (noting that, "[i]f the underlying complaint ... ha[s] been dismissed for lack of subject matter jurisdiction, any counterclaims brought pursuant to the [c]ourt's ancillary jurisdiction [must] be dismissed as well"). [6]

[6] Anchorage Defendants' counterclaim is set forth in numbered paragraphs 1–14 beginning on page four of their Answer.

### III. Conclusion

For the reasons stated above, Defendants' Motions are granted.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 45, 49), enter judgment for Defendants, and close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4392482

---

   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 42 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

2019 WL 2647598
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Nicole JOHNSON-GELLINEAU, Plaintiff,

v.

STEINE & ASSOCIATES, P.C.; Christopher
Virga, Esq.; Ronni Ginsberg, Esq.; JPMorgan Chase
Bank National Association; and Wells Fargo Bank
National Association, as Trustee for Carrington
Mortgage Loan Trust, Series 2007-FRE1, Asset-
Backed Pass-Through Certificates, Defendants.

No. 16-CV-9945 (KMK)
|
Signed 06/27/2019

**Attorneys and Law Firms**

Nicole Johnson-Gellineau, Beacon, NY, Pro Se Plaintiff.

Matthew J. Bizzaro, Esq., L'Abbate, Balkan, Colavita &
Contini, LLP, Garden City, NY, Counsel for Defendants
Steine & Associates, P.C., Christopher Virga, Esq., and Ronni
Ginsberg, Esq.

Brian P. Scibetta, Esq., Buckley Madole, P.C., Iselin, NJ,
Counsel for Defendants JPMorgan Chase Bank National
Association and Wells Fargo Bank National Association.

**OPINION & ORDER**

KENNETH M. KARAS, District Judge:

 *1  Nicole Johnson-Gellineau ("Plaintiff") brings this
Action against the law firm Steine & Associates, P.C.
("Steine"), attorneys Christopher Virga, Esq. ("Virga") and
Ronni Ginsberg, Esq. ("Ginsberg") (together, "Attorney
Defendants"), JPMorgan Chase Bank National Association
("Chase"), and Wells Fargo Bank National Association, as
Trustee for Carrington Mortgage Loan Trust, Series 2007-
FRE1, Asset-Backed Pass-Through Certificates ("Wells
Fargo") (together, the "Bank Defendants") (collectively,
"Defendants"), seeking damages for alleged violations of the
Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §
1692 et seq. (See Am. Compl. (Dkt. No. 58).) Before the
Court are the Attorney Defendants' and the Bank Defendants'

Motions To Dismiss. (See Dkt. Nos. 80, 75.) For the following
reasons, the Motions are granted.

**I. Background**

**A. Factual Background**
The following facts are drawn from Plaintiff's Amended
Complaint and documents attached to it, and are taken as true
for the purpose of resolving the instant Motion.

On December 18, 2006, Plaintiff took out a $262,880.00
loan. (Am. Compl. ¶ 14.) She executed a note payable to
Fremont Investment & Loan ("Fremont") or any transferees,
denominated "the Lender," and the loan was secured by
a mortgage on her home, located at 149 Wilkes St.,
Beacon, NY 12508 (the "Property"), in favor of Mortgage
Electronic Registration Systems, Inc. ("MERS"), as nominee
for Fremont and Fremont's successors in interest (the
"Mortgage"). (Id. ¶¶ 15–16.) The Mortgage noted that:

> The Note, or an interest in the
> Note, together with this Security
> Instrument, may be sold one or
> more times. [Plaintiff] might not
> receive any prior notice of these
> sales. The entity that collects the
> Periodic Payments and performs other
> mortgage loan servicing obligations
> under the Note, this Security
> Instrument, and Applicable Law is
> called the "Loan Servicer." There may
> be a change of the Loan Servicer as
> a result of the sale of the Note. There
> also may be one or more changes of
> the Loan Servicer unrelated to a sale
> of the Note. Applicable Law requires
> that [Plaintiff] be given written notice
> of any change of the Loan Servicer.

(Id. ¶ 16.) The Mortgage was recorded on March 3, 2008 in
the Dutchess County Clerk's Office. (Id.)

"Contemporaneously with or subsequent to" Plaintiff's
mortgage, but prior to Plaintiff defaulting on that mortgage,
an investor "who wished to remain nameless invested in
Plaintiff's Note, became creditor, and appointed ... EMC as

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 43 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

his servicer/custodian." (*Id.* ¶ 21.) Fremont "lodged Plaintiff's Note in an irrevocable trust" (the "Intermediate Trust") and "completed transfer to Wells Fargo." (*Id.* ¶ 22.) The Intermediate Trust "provided for transferring Plaintiff's Note" to a trust entitled the Carrington Mortgage Loan Trust, Series 2007-FRE1, Asset-Backed Pass-Through Certificates (the "Pass-Through Trust") in the event of Plaintiff's default on her Note, with Wells Fargo as Trustee. (*Id.*)

Plaintiff failed to make payment on her mortgage due on September 1, 2009, and "failed to make subsequent payments to bring the loan current." (*Id.* ¶ 23.) On February 22, 2010, an Assignment of Mortgage from Fremont to Wells Fargo was signed, and the assignment was recorded on March 5, 2010 in Dutchess County. (*Id.* ¶ 24.) Upon transfer of the Note to Wells Fargo, "the right to collect for Wells Fargo was transferred to Chase, and Chase began collecting the debt for Wells Fargo." (*Id.* ¶ 26.)

**\*2** On December 24, 2015, Defendant Virga contacted the Dutchess County clerk on behalf of Wells Fargo, transmitted Plaintiff's name, address, and "information regarding the ... debt," and stated that Wells Fargo sought to recover money owing on Plaintiff's mortgage. (*Id.* ¶ 48.) On March 17, 2016, Defendant Ginsberg also contacted the Dutchess County clerk "on behalf of Chase and transmitted Plaintiff's name, address, and information regarding Plaintiff's debt." (*Id.* ¶ 49.)

Plaintiff alleges that "Chase, in its capacity as servicer for Wells Fargo, regularly mailed Plaintiff monthly statements," and attaches the statements as an exhibit to the Amended Complaint. (*Id.* ¶ 35; Am. Compl. Ex. B ("Chase Statements").) The statements generally indicate that Plaintiff's Mortgage is "in default," and that the "foreclosure process has started." (*See, e.g.*, Chase Statements 4, 10, 14.) [1] On January 12, 2016, Plaintiff mailed Chase a Consumer Notice of Dispute disputing the entire debt, "requiring Chase to cease and desist from collection efforts," and requesting "the name of the creditor to whom the debt is owed." (Am. Compl. ¶ 44.) On January 20, 2016, Chase sent Plaintiff a letter in response indicating that the owner of Plaintiff's mortgage is "Wells Fargo Bank NA as Trustee for CMLT 2007-FREI." (*See* Am. Compl. ¶ 45; Am. Compl. Ex. A ("Chase Letter").)

---

[1]    Because the Chase Statements are not consecutively paginated, the Court cites to the

ECF-generated page number at the upper right corner of each page.

**B. Procedural Background**

Plaintiff filed the Complaint on December 23, 2016, alleging that Defendants violated the FDCPA, 15 U.S.C. §§ 1692c(b) and 1692e. (Compl. (Dkt. No. 2).) Plaintiff was granted in forma pauperis status, (Dkt. No. 4), and the Court issued an Order of Service on March 30, 2017 to allow Plaintiff to effect service on Defendants, (Order of Service (Dkt. No. 6)). All Defendants were served. (*See* Dkt. Nos. 13, 22, 23, 26, 28.) On May 9, 2017, the Attorney Defendants filed a pre-motion letter indicating the grounds upon which they would move to dismiss. (Dkt. No. 20.) The Bank Defendants also filed a pre-motion letter the next day. (Dkt. No. 21.) Plaintiff filed letters opposing both pre-motion letters. (*See* Dkt. Nos. 24, 25.) On August 11, 2017, the Bank Defendants filed their Motion To Dismiss and accompanying papers. (Dkt. Nos. 34–36.) The same day, after fixing docketing errors, (*see* Dkt. Nos. 30–33), the Attorney Defendants filed their Motion To Dismiss and accompanying papers, (Dkt. Nos. 39, 40, 42). Plaintiff filed oppositions to both Motions on October 12, 2017. (Dkt. Nos. 45, 46.) The Attorney Defendants filed a reply memorandum on November 3, 2017, (Dkt. No. 51), and the Bank Defendants filed a reply memorandum on November 9, 2017, (Dkt. No. 53).

On March 29, 2018, the Court issued an Opinion and Order on the Motions To Dismiss. (*See* Op. & Order on Defs.' Mot. ("Opinion") (Dkt. No. 55).) The Court rejected Defendants' arguments that the *Rooker-Feldman* Doctrine and collateral estoppel barred Plaintiff's claims. (*See id.* at 12–23.) The Court then granted the Bank Defendants' Motion on the basis that Plaintiff failed to sufficiently plead that Chase and Wells Fargo were debt collectors under the FDCPA. (*See id.* at 23–33.) The Court denied the Attorney Defendants' Motion without prejudice; the Court noted that "on October 2, 2017, the Second Circuit heard oral argument in a case that presents" the same arguments at issue in this case—i.e. that documents sent in connection with a foreclosure action do not constitute debt collection under the FDCPA—and gave the Attorney Defendants leave to renew the Motion "once the Second Circuit issues its opinion." (*Id.* at 34.)

**\*3** On April 30, 2018, Plaintiff filed the operative Amended Complaint. (*See* Am. Compl.) On September 28, 2018, with leave of the Court, (Dkt. No. 74), the Bank Defendants filed a Motion To Dismiss, (Bank Defs.' Not. of Mot. (Dkt. No. 75); Bank Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Bank

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 44 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

Defs.' Mem.") (Dkt. No. 77); Bank Defs.' Decl. in Supp. of Mot. To Dismiss ("Bank Defs.' Decl.") (Dkt. No. 76)), and the Attorney Defendants filed a Motion for Judgment on the Pleadings, (Attorney Defs.' Not. of Mot. (Dkt. No. 80); Attorney Defs.' Mem. of Law in Supp. of Mot. for Judgment on the Pleadings ("Att'y Defs.' Mem.") (Dkt. No. 83); Attorney Defs.' Decl. in Supp. of Mot. for Judgment on the Pleadings ("Att'y Defs.' Decl.") (Dkt. No. 81)). Plaintiff filed oppositions to the Motions on November 30, 2018. (Pl.'s Mem. in Opp'n to Bank Defs.' Mot. ("Pl.'s Bank Mem.") (Dkt. No 87); Pl.'s Mem. in Opp'n to Attorney Defs.' Mot. ("Pl.'s Att'y Mem.") (Dkt. No. 86).) Defendants filed their respective replies on January 4, 2019. (Bank Defs.' Reply in Further Supp. of Mot. To Dismiss ("Bank Defs.' Reply") (Dkt. No. 91); Attorney Defs.' Reply in Further Supp. of Mot. for Judgment on the Pleadings ("Att'y Defs.' Reply") (Dkt. No. 93).) On March 29, 2019, Defendants filed a joint letter bringing to the Court's attention a Supreme Court opinion issued on March 20, 2019, *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019), and asking the Court to consider it in deciding their Motions. (Joint Letter from Defs.' To Court (Mar. 29, 2019) ("Defs.' Joint Letter") (Dkt. No. 98).) Plaintiff filed a response to the letter on April 5, 2019. (Letter from Plaintiff to Court (Apr. 5, 2019) ("Pl.'s Letter") (Dkt. No. 99).)

## II. Discussion

### A. Standard of Review

The Bank Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); the Attorney Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The standards of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim and Rule 12(c) for judgment on the pleadings are the same. *See Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Motion To Dismiss, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does

a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motions, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[ ] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [her complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

**\*4** Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 45 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

(quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to [her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[ ] either possessed or knew about and upon which [she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Here, Plaintiff chose to omit several of the documents she attached to her original Complaint from her Amended Complaint. Defendants urge the Court to consider several of these documents in deciding their Motions. (*See* Bank Defs.' Mem. 10–11; Att'y Defs.' Mem. 10–11 n.1.) However, Plaintiff argues that the Court can only consider the Amended Complaint and the documents she attached or relied on therein, asserting that "Plaintiff integrated only enough facts and exhibits she 'wishes the Court to consider' to nudge her claim over the line from conceivable to plausible." (Pl.'s Bank Mem. 2.) Plaintiff states that the Amended Complaint relies only on "the publicly recorded Assignment of Mortgage ..., and ... a 2013 Limited Power of Attorney from Wells Fargo granting servicing rights to Chase." (*Id.* at 2; *see also id.* at 4–6 (arguing that the Court cannot consider the modification agreement attached to the original Complaint but omitted from the Amended Complaint, because "[t]he [Amended Complaint] is the operative complaint and the original complaint has no legal effect," and because the document is "inconsistent with" the Amended Complaint).)

Although courts in pro se cases are authorized to consider materials outside the complaint under some circumstances, *see Alsaifullah*, 2013 WL 2972514, at *4 n.3 (noting that "although courts generally may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials" (citation and quotation marks omitted)), here, Plaintiff expressly argues that the Court may *not* consider her prior Complaint and documents that she intentionally omitted from her Amended Complaint. Accordingly, the Court will consider only the documents attached to or relied on in the Amended Complaint, and documents of which the Court may take judicial notice, including "documents filed in other courts," which Plaintiff concedes the Court may properly

consider "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (Pl.'s Bank Mem. 4–5.) *See Newby v. GVC II, Inc.*, No. 17-CV-9742, 2018 WL 1989588, at *2 (S.D.N.Y. Apr. 25, 2018) ("A court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." (citation and quotation marks omitted)); *Houck v. US Bank NA*, No. 15-CV-10042, 2016 WL 5720783, at *4 (S.D.N.Y. Sept. 30, 2016) ("Courts are permitted to take judicial notice of state court documents, even on a motion to dismiss."), *aff'd*, 689 F. App'x 662, 664–65 (2d Cir. 2017). Therefore, in deciding Defendants' Motions, the Court will rely solely on the documents attached to the Amended Complaint, and on publicly filed documents submitted by Defendants, including the Consent Order, pursuant to which Chase became the successor servicer to loans formerly serviced by EMC as of April 1, 2011, (Bank Defs.' Decl. Ex. 8 (Consent Order, *In re JPMorgan Chase & Co. and EMC Mortg. Corp.*, Dkt. No. 11-023 (U.S. Board of Governors of the Fed. Reserve Sys.) ("Consent Order"); *see also* Opinion 7 n.6 (taking judicial notice of the Consent Order)), and the documents filed in Plaintiff's state court foreclosure action (the "Foreclosure Action"), (Bank Defs.' Decl. Ex. 2 ("Foreclosure Compl."); Bank Defs.' Decl. Ex. 3 ("Foreclosure Answer"); Bank Defs.' Decl. Ex. 4 ("Foreclosure Mot. for Summ. J."); Bank Defs.' Decl. Ex. 5 ("Foreclosure Order"); Bank Defs.' Decl. Ex. 6 ("Judgment of Foreclosure"); Bank Defs.' Decl. Ex. 7 ("Foreclosure Action Docket")).

### B. Analysis

**\*5** Plaintiff alleges that Defendants violated the FDCPA, 15 U.S.C. § 1692c(b), by sending or causing to be sent communications in connection with the collection of Plaintiff's debt to the Dutchess County clerk, and 15 U.S.C. §§ 1692e and 1692g, for failing to identify Plaintiff's current creditor in its attempts to collect the debt. (Am. Compl. ¶¶ 63–64.) Defendants seek dismissal on the grounds that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and collateral estoppel, and, in the alternative, that the Complaint fails to state a claim under the FDCPA. (*See generally* Bank Defs.' Mem.; Att'y Defs.' Mem.)

### 1. *Rooker-Feldman* and Collateral Estoppel [2]

[2]    The Court notes that this argument relating to the Court's jurisdiction should have been brought pursuant to Rule 12(b)(1), rather than Rule 12(b)

(6). However, this posture does not affect the Court's analysis, because "[t]he only substantive difference" between a motion to dismiss under Rule 12(b)(6) and Rule 12(b)(1) is that, under the latter motion, Plaintiff bears "the burden of proof" of establishing jurisdiction. *Fagan v. U.S. Dist. Court for S. Dist. of New York*, 644 F. Supp. 2d 441, 447 n.7 (S.D.N.Y. 2009) (citation and quotation marks omitted).

In connection with their Motions To Dismiss the original Complaint, Defendants argued that Plaintiff's FDCPA claims were barred by the *Rooker-Feldman* Doctrine and by collateral estoppel, because Plaintiff effectively seeks to challenge the outcome of the Foreclosure Action. (*See* Opinion 14, 20.) The Court rejected these arguments. Specifically, the Court held that Plaintiff's claims are not barred by *Rooker-Feldman* because she "is not complaining of an injury caused by the Judgment of Foreclosure," and because deciding Plaintiff's claims in her favor "would not invalidate the Judgment of Foreclosure or contradict the New York Supreme Court's conclusion." (*See id.* at 14–20.) With respect to collateral estoppel, the Court held that Plaintiff is not collaterally estopped from bringing her FDCPA claims because the question of whether Wells Fargo was Plaintiff's creditor under the FDCPA was not raised or decided in the Foreclosure Action. (*See id.* at 20–23.)

The Bank Defendants seek to renew these arguments based on "the additional attention devoted to these allegations in the [Amended Complaint]." (Bank Defs.' Mem. 12.) In doing so, the Bank Defendants rely on the exact arguments the Court previously rejected—that in order to find for Plaintiff, the Court would necessarily have to rule "in direct contradiction to the state court's judgment." (*Id.* at 13.) The Amended Complaint, although it alleges slightly different facts and omits others, brings the same two FDCPA claims based on the same legal theories as the original Complaint. The Court therefore declines to alter its prior determination that neither the *Rooker-Feldman* Doctrine nor collateral estoppel bars Plaintiff's claims.

## 2. FDCPA

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt

collection abuses.' " *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692e). "The FDCPA establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *Id.* (citation and quotation marks omitted). "Debt collectors that violate the FDCPA are strictly liable, meaning that a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (citation and quotation marks omitted). Moreover, "a single violation of the FDCPA is sufficient to impose liability" on a debt collector under the statute. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133 (2d Cir. 2010).

**\*6** "To state a claim under the FDCPA, a plaintiff must show (1) [s]he has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Nath v. Select Portfolio Servicing, Inc.*, No. 15-CV-8183, 2017 WL 782914, at *11 (S.D.N.Y. Feb. 28, 2017) (citation and quotation marks omitted); *see also Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (same). [3]

3      No Party disputes that Plaintiff is a consumer owing a debt, which satisfies the first element.

Construed liberally, the Complaint alleges that (1) the Attorney Defendants violated 15 U.S.C. § 1692c(b) by sending communications in connection with the collection of the debt to the Dutchess County clerk in furtherance of the Foreclosure Action, and (2) all Defendants violated §§ 1692e and 1692g(a)(2) by failing to identify the creditor in their communications with Plaintiff. (*See generally* Am. Compl.) The Bank Defendants argue that Plaintiff fails to plead that Wells Fargo and Chase are "debt collectors" as defined by the FDCPA, and also fails to plead that Chase engaged in "debt collection" activity as defined in the FDCPA. (*See* Bank Defs.' Mem. 8–19.) The Attorney Defendants argue that Plaintiff fails to plead that the Attorney Defendants attempted to collect a debt without a creditor, and that any documents submitted in connection with Plaintiff's foreclosure action do not violate the FDCPA. (Att'y Defs.' Mem. 3–15.)

### a. Bank Defendants

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

As a threshold matter, "[t]he relevant provisions of the FDCPA apply only to the activities of a 'debt collector,' " *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (citation omitted), and generally, "creditors are not subject to the FDCPA," *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). Under the FDCPA,

> [t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6); *see also Goldstein v. Hutton*, 374 F.3d 56, 61 (2d Cir. 2004) ("The FDCPA establishes two alternative predicates for 'debt collector' status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." (citation omitted)). However, the term "debt collector" does not include:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F). By contrast,

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

**\*7** *Id.* § 1692a(4). Put simply, a debt collector collects debt owed to another person, while a creditor seeks to collect on a debt owed to it. This "distinction between creditors and external debt collectors reflects Congress's judgment that debt collectors were more likely than creditors to engage in abusive practices: Whereas creditors seeking to recover their own debts are apt to be restrained by their desire to maintain a good relationship with the consumer, a third-party debt collector does not have the same inhibition." *Muniz v. Bank of Am., N.A.*, No. 11-CV-8296, 2012 WL 2878120, at \*3 (S.D.N.Y. July 13, 2012). The same logic applies to loan servicers acting as "agents of the creditor." *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998).

The Bank Defendants argue that they are not "debt collectors," and thus not subject to the FDCPA. (Bank Defs.' Mem. 8–19.) The Court will address this argument with respect to Wells Fargo and Chase separately.

### i. Wells Fargo

Plaintiff alleges that Wells Fargo is a debt collector within the meaning of the FDCPA because it uses "post-default trusts" to "acquire legal title to defaulted Notes solely for the purpose of facilitating collection of debt due, or asserted to be *due*, the investor, for the investor." (Am. Compl. ¶ 31.) The Bank Defendants argue that Wells Fargo is a "creditor," rather than a debt collector, because it is "attempting to collect its own debt." (Bank Defs.' Mem. 10.)

Plaintiff argues that Wells Fargo "is collecting as trustee for one or more third-party beneficial interest holders," and that "[a] fiduciary relationship is traditionally and reasonably inferred." (Pl.'s Bank Mem. 8–9.) Plaintiff insists that because

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

Wells Fargo "obtained the debt and foreclosed 'as trustee,' " it did not foreclose "for 'its own account.' " (*Id.* at 11.) However, as the Court explained in its prior Opinion, (Opinion 26), when Wells Fargo acts as trustee for the mortgage loan trust, it acts on behalf of, or as, the trust itself, and therefore collects the debt on its own behalf, *see Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000) ("[A] trustee stands in the shoes of the corporation."). That Wells Fargo is a "trustee" does not mean, as Plaintiff contends, that it is collecting debt owed to another. (*Contra* Pl.'s Bank Mem. 8–9.) Indeed, courts frequently find entities acting in the trustee capacity that Wells Fargo does here to be creditors under the FDCPA. *See, e.g., Munroe v. Specialized Loan Serv. LLC*, No. 14-CV-1883, 2016 WL 1248818, at *1, *5 (E.D.N.Y. Mar. 28, 2016) (finding that the Bank of New York, as Trustee for the Certificate Holders of CWMBS, Inc., CIL Mortgage Pass-Through Trust 2004-04 Mortgage Pass-Through Certificates Sires 2005-4, "is a 'creditor' not a 'debt collector' under the FDCPA," because it was collecting on behalf of itself (citation omitted); *Houck*, 2016 WL 5720783, at *9 (holding that US Bank as Trustee for Citigroup Mortgage Loan Trust 207-AR5 is not a debt collector under the FDCPA), *aff'd*, 689 F. App'x 662, 664–65 (2d Cir. 2017) ("Because the [d]efendants are 'creditors' seeking to collect debts owed to them, the district court appropriately concluded that ... U.S. Bank [is] not [a] 'debt collector[ ]' within the meaning of the statute."). Plaintiff's assertion that Wells Fargo is not collecting on Plaintiff's debt for its own account because it is acting as trustee is thus contradicted by the caselaw.

Plaintiff also argues that Wells Fargo acquired the debt after Plaintiff defaulted solely for purposes of collection, and therefore cannot be a creditor under the FDCPA. (Am. Compl. ¶ 31; Pl.'s Bank Mem. 4, 7–8.) The Court previously held that the Modification Agreement submitted with Plaintiff's original Complaint demonstrated that Wells Fargo acquired the Note and Mortgage on August 26, 2008, before Plaintiff defaulted. (*See* Opinion 27.) Plaintiff notably did not attach the Modification Agreement to her Amended Complaint, and insists that the Court cannot consider it because the Amended Complaint does not expressly rely on it. (Pl.'s Bank Mem. 4–6.) However, even in cases involving pro se plaintiffs, "where allegations in an amended pleading 'directly contradict' pleadings in the original complaint, courts have disregarded the amended pleading." *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014) (citation omitted); *see also Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012)

("There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings."); *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011) (noting that "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict the facts set forth in his original complaint" (citation, alteration, and quotation marks omitted)), *aff'd*, 457 F. App'x 40 (2d Cir. 2012); *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (dismissing pro se amended complaint based on "facts set forth in his original complaint" where the plaintiff "blatantly change[d] his statement of the facts in order to respond to the defendants' motion to dismiss"). This is particularly relevant where, as here, "Plaintiff relied on the facts demonstrated by exhibits attached to [her] ... Complaint, rather than merely allegations in the Complaint, and the Court found that the facts reflected in those exhibits" defeated Plaintiff's claims. *James v. Gage*, No. 15-CV-106, 2019 WL 1429520, at *7 (S.D.N.Y. Mar. 29, 2019) (finding that the plaintiff's omission of exhibits included in prior versions of his complaint in order to evade dismissal of his claims presented "the kind of rare occasion on which it is appropriate to depart from the usual rule that an amended complaint supersedes all prior complaints" (citation, alteration, and quotation marks omitted)); *see also Torres v. Howell*, No. 03-CV-2227, 2006 WL 1525942, at *2 (D. Conn. May 30, 2006) (considering on a motion to dismiss "the ... facts from [the plaintiff's] amended complaint and the exhibits attached to both his original and amended complaints" (citing *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n.3 (2d Cir. 2001))).

**\*8** Nevertheless, even without considering the Modification Agreement, Wells Fargo is not a debt collector under the FDCPA merely because it allegedly acquired the debt after default. "[E]ven where an entity acquires a defaulted debt, it is not a debt collector where it does not engage in collection activities or seek to collect on its own behalf rather than 'for another.' " *Munroe*, 2016 WL 1248818, at *5 (collecting cases); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017) ("[The] language [of § 1692a(6) does not] appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.' "); *George v. Nationstar Mortg., LLC*, No. 16-CV-261, 2017 WL 3316065, at *9 (E.D.N.Y. Aug. 2, 2017)

(holding the defendant who allegedly "received the debt by assignment ... three months after [the] [p]laintiff defaulted on the [m]ortgage" is "not a 'debt collector' under the FDCPA" because "it is ... clear from the ... underlying foreclosure proceeding that [the defendant] sought to collect its own debt under the Mortgage, and not the debt of another"); *Estate of Izzo v. Vanguard Funding, LLC*, No. 15-CV-7084, 2017 WL 1194464, at *13 (E.D.N.Y. Mar. 30, 2017) (explaining that "the caselaw makes clear that ... a loan servicing company who is assigned a defaulted mortgage but does not seek to collect the debt for an entity other than itself ... is [not] a debt collector subject to the FDCPA's provisions"); *Daniels v. US Bank Nat'l Ass'n*, No. 15-CV-5163, 2016 WL 5678563, at *4 (E.D.N.Y. Sept. 28, 2016) ("Even where an entity acquired a defaulted debt, it is not a debt collector pursuant to the FDCPA where it does not engage in collection activities 'for another.' "); *Izmirligil v. Bank of New York Mellon*, No. 11-CV-4491, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) (explaining that because "plaintiff alleges that BNYM is a debt collector simply because BNYM took an assignment of the alleged debt while the debt was allegedly in default," but "does not sufficiently allege that BNYM is a debt collector in the first place," the exception to the definition of "debt collector" under § 1692a(6)(F)(iii) for debts not in default "is irrelevant"). Although Plaintiff correctly notes that the exception to the definition of "creditor" under § 1692a(4) includes a person who "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt," it also expressly states that the person must be collecting such debt "for another." 15 U.S.C. § 1692a(4). Section 1692a(6) similarly limits the term "debt collector" to only those who collect "debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). To hold that anyone who attempts to collect on a debt acquired after default violates the FDCPA, even if collecting the debt for his or her own account, would render the words "for another" meaningless, a practice the Court is to avoid. *See Beck v. Prupis*, 529 U.S. 494, 506 (2000) (describing "the longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous"). Thus, because Wells Fargo is a "person ... to whom a debt is owed," and did not acquire the debt in default "solely for the purpose of facilitating collection of such debt *for another*," Wells Fargo was Plaintiff's creditor under the FDCPA. 15 U.S.C. § 1692a(4) (emphasis added).

The Amended Complaint also alleges that Wells Fargo regularly collects debt; specifically, Plaintiff alleges that

Wells Fargo "receives and acquires tens of thousands of consumer mortgage debts in default each calendar year since 2008," and that it operates a "post-default-trust business model" pursuant to which it creates "pass-through trusts" that acquire defaulted loans and, "as trustee of these post-default pass-through trusts," is involved in collecting on the defaulted debt. (Am. Compl. ¶ 29.) Even if true, these allegations indicate that Wells Fargo regularly seeks to collect debt on its own behalf, rather than debt owed to another, and therefore do not make Wells Fargo a debt collector under the FDCPA. *See Henson*, 137 S. Ct. at 1724 ("[W]hile the statute surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must include anyone who regularly collects debts acquired after default. After all and again, under the definition at issue before us you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector."); *Bank of New York Mellon Tr. Co. N.A. v. Henderson*, 862 F.3d 29, 34 (D.C. Cir. 2017) (holding a bank was not a debt collector because "the Bank is [not] seeking to collect [a debt] 'due another,' " but is rather "the current holder of the Note and Deed of Trust," and noting the fact "[t]hat the debt was already in default when the Bank purchased it did not make the Bank a debt collector"); *George*, 2017 WL 3316065, at *8 ("[E]ven where an entity acquires a defaulted debt, it is not a debt collector where it does not engage in collection activities or where it seeks to collect on its own behalf rather than 'for another.' "). [4]

[4]     Plaintiff also invokes the "false name exception," which provides that the term "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Plaintiff clarifies in her memorandum that she "did not allege that Wells Fargo is the creditor that used a false name," but rather that any argument that Wells Fargo is both the trustee and beneficiary of the trust suggests "an impermissible merger," and that Wells Fargo is therefore "pretending to be a trustee." (Pl.'s Bank Mem. 19.) However, no Party has argued that the trust has no beneficiaries, so this argument is inapplicable. If indeed Plaintiff "did not allege that Wells Fargo is the creditor that used a false name," (*id.*), then she has not alleged that Wells Fargo fits within the false name exception, *see Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir.

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 50 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

2013) (explaining that the false name exception applies where "(1) the creditor uses a name that falsely implies that a third party is involved in collecting its debts; (2) the creditor pretends to be someone else; or (3) the creditor uses a pseudonym or alias." (citation omitted)).

**\*9** The Court therefore grants Wells Fargo's Motion To Dismiss Plaintiff's FDCPA claims against it because it is not a debt collector.[5]

5

To the extent that the Complaint alleges that Wells Fargo should be held vicariously liable for Chase's and the Attorney Defendants' purported FDCPA violations, (Am. Compl. ¶ 58), this legal conclusion is inconsistent with governing caselaw, *see, e.g., Munroe*, 2016 WL 1248818, at *5 ("[A] creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." (quotation marks omitted)).

### ii. Chase

Chase argues that it is not a debt collector, because it began servicing Plaintiff's loan before default. (Bank Defs.' Mem. 15–16.) The Bank Defendants rely in part on the Modification Agreement, (*id.* at 15), and, as already discussed, Plaintiff strenuously objects to consideration of this document, (Pl.'s Bank Mem. 4–6). However, Plaintiff's own Amended Complaint alleges that EMC was appointed as servicer of the loan "prior to Plaintiff's default," (Am. Compl. ¶ 21), and the Consent Order, of which the Court has already taken judicial notice, (*see* Opinion 31), indicates that as of April 1, 2011, Chase became the successor servicer for loans formerly serviced by EMC, acquiring all of EMC's mortgage loan servicing rights, (*see* Consent Order 2). In other words, Chase obtained Plaintiff's loan as part of an acquisition of *all* of EMC's mortgage servicing rights and obligations, rather than through a specific assignment or transfer of Plaintiff's mortgage for the purposes of debt collection after default. As a result, Chase "stand[s] in the place of [EMC] as Plaintiffs' loan servicer," and obtained Plaintiff's loan, based on Plaintiff's own allegations and judicially-noticeable documents, before she defaulted on it, and therefore is not a debt collector under the FDCPA. *Pascal v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 09-CV-10082, 2013 WL 878588, at *4 (S.D.N.Y. Mar. 11, 2013) (citation and quotation marks omitted). Courts have found transfers

similar to the one between EMC and Chase here constitute "obtain[ing]" the loan for FDCPA purposes. *See, e.g., Nichols v. BAC Home Loans Servicing LP*, No. 13-CV-224, 2013 WL 5723072, at *2, *6 (N.D.N.Y. Oct. 18, 2013) (finding, in case where one entity "transferred the loan and servicing responsibilities" to the defendant, that the defendant stood in the shoes of the original loan servicing company); *Pascal*, 2013 WL 878588, at *4 (finding that JPMorgan stood in the place of WaMu, the original loan servicer, and acquired the loan before default where the documents established that "JPMorgan acquired the right to service Plaintiffs' loan upon its acquisition of WaMu's assets," JPMorgan "assum[ed] all mortgage servicing rights and obligations of WaMu," and "JPMorgan would continue to operate WaMu as the servicer of [the] [p]laintiffs' mortgage" (citations and quotation marks omitted)).

Because Chase obtained Plaintiff's loan before she defaulted, Chase meets the exception in § 1692a(6)(F)(iii), and Plaintiff has not plausibly pled that it is a debt collector under the FDCPA. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) (affirming dismissal of FDCPA claim against mortgage servicer because the complaint did not establish that the servicer "acquired [the plaintiff's] debt after it was in default and so fails to plausibly allege that [the mortgage servicer] qualifies as a debt collector under FDCPA" (citing 15 U.S.C. § 1692a(6)(F)(iii))); *see also Franceschi*, 22 F. Supp. 2d at 253–54 (holding the § 1692a(6)(F)(iii) exception covers entities who serviced the loan prior to default). The Court therefore grants Chase's Motion To Dismiss the FDCPA claims against it. *See Hoo-Chong v. Citimortgage, Inc.*, No. 15-CV-4051, 2016 WL 868814, at *3 (E.D.N.Y. Mar. 7, 2016) ("[M]ortgage servicers are not 'debt collectors' as defined by the FDCPA if they obtained the particular mortgage at issue before the mortgagor defaulted."); *Pascal*, 2013 WL 878588, at *4 ("Mortgage servicers are therefore not covered by the FDCPA if the debt at issue was acquired before a customer default. That is, the FDCPA only covers servicers who obtain a mortgage that is already in default." (italics omitted)); *Gabrielle v. Law Office of Martha Croog*, No. 10-CV-1798, 2012 WL 460264, at *4 (D. Conn. Feb. 9, 2012) (dismissing FDCPA claims against a loan servicing and debt collection corporation because "the complaint [wa]s silent as to whether the debt was in default when [the loan servicer] acquired it"), *aff'd*, 503 F. App'x 89 (2d Cir. 2012).

### b. Attorney Defendants

Case 5:24-cv-00188-DNH-MJK   Document 7   Filed 05/01/24   Page 51 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

**\*10** The Amended Complaint alleges that the Attorney Defendants violated 15 U.S.C. §§ 1692c(b), 1692e, and 1692g(a)(2). (Am. Compl. ¶¶ 63–64.) However, there are only two factual allegations with respect to Plaintiff's debt included in the Amended Complaint against the Attorney Defendants. Plaintiff alleges that "[o]n December 24, 2015, Virga ... contacted the Dutchess County clerk by mail on behalf of Chase and transmitted Plaintiff's name, address, and information regarding the same debt Chase [was] attempting to collect, stating that Wells Fargo seeks to recover sums of money that are allegedly due and owing, and stating that the Plaintiff owes Wells Fargo $430,431.62." (Am. Compl. ¶ 48.) Similarly, Plaintiff alleges that "[o]n March 17, 2016, Ginsberg also contacted the Dutchess County clerk by mail on behalf of Chase and transmitted Plaintiff's name, address, and information regarding Plaintiff's debt, the same debt Chase is attempting to collect, that there is due and owing to Wells Fargo the sum of $430,431.62." (*Id.* ¶ 49.) Notably, Plaintiff has removed all reference to the Foreclosure Action relating to her debt from the Amended Complaint, and includes no detail about what form these "transmissions" took or in connection with what proceeding. However, Plaintiff makes clear in her Memorandum that she is referring to the Attorney Defendants' communications with the county clerk "to further the foreclosure action," (Pl.'s Att'y Mem. 21), and the Court may take judicial notice of the documents filed in the Foreclosure Action, not for the truth of the matters asserted but for the existence of the Foreclosure Action and the fact that those filings were made. Further, Plaintiff concedes that "[t]he Court can infer that the Defendants were in the process of attempting to get a Judgment of Foreclosure and Sale." (Pl.'s Att'y Mem. 16.) [6]

[6]     Indeed, this inference is necessary to establish that the Attorney Defendants communicated with the Dutchess County clerk "in connection with the collection of [a] debt," as required to state a claim for violation of § 1692c(b).

Previously, the Court denied the Attorney Defendants' Motion To Dismiss without prejudice to renew after the Second Circuit decided *Cohen v. Rosicki, Rosicki & Associates, P.C.* (Opinion 33–34.) On July 23, 2018, the Second Circuit issued its opinion holding that "a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82 (2d Cir. 2018) (citations omitted). Therefore, it is now settled in this Circuit that judicial foreclosure proceedings are within the purview of the FDCPA. However, this does not end the Court's inquiry.

Although *Cohen* held that conduct by attorneys representing creditors in foreclosure actions *can* violate the FDCPA, it did not hold that the mere filing of documents in connection with a foreclosure action violates the FDCPA.

In *Cohen*, the Second Circuit analyzed claims under § 1692e, which bars debt collectors from engaging in "false, deceptive, or misleading" practices, and § 1692g, which requires a debt collector to provide a consumer with "a detailed validation notice" identifying the creditor to whom the debt is owed, so that he or she may confirm the debt is in fact owed before paying it. *See Cohen*, 897 F.3d at 81. As noted, the Second Circuit held that filings in a foreclosure action can constitute an attempt to collect a debt under the FDCPA. Nevertheless, it went on to affirm dismissal of the plaintiff's § 1692e claim because the alleged misidentification of the proper creditor in the filing at issue was "not material," and therefore not actionable under § 1692e. *Id.* at 84–85. [7] It also affirmed dismissal of the plaintiff's § 1692g claim on the basis that the documents filed in connection with the foreclosure action against the plaintiff are not "initial communications," and therefore do not implicate § 1692g(d). *Id.* at 87–88.

[7]     The Second Circuit also noted, without deciding, that the defendants arguably made no misstatement at all, in light of the differing definitions of the term "creditor" under New York law and the FDCPA. *Cohen*, 897 F.3d at 85 ("[T]o determine whether the defendants' identification of Green Tree as the creditor was false or misleading, we would need to resolve th[e] tension between the different definitions of 'creditor' under the FDCPA and New York law. We do not resolve this issue here because even if the defendants' creditor statement was inaccurate, it would not be material and [the plaintiff's] § 1692e claim therefore fails.").

Here, the question is not simply whether conduct in connection with a foreclosure action can violate the FDCPA, but specifically whether the disclosure of the mere existence of Plaintiff's debt in court filings in foreclosure proceedings violates § 1692c(b), and whether the failure to disclose the beneficiaries of the trust that owned Plaintiff's mortgage constitutes a material misstatement or omission under § 1692e or an omission of required information from an initial communication under § 1692g(a)(2).

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 52 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

i. 15 U.S.C. § 1692c(b)

**\*11** Section 1692c(b) provides:

> [W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court held that the FDCPA can apply to lawyers who regularly collect consumer debts through litigation, but noted that "it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Id.* at 296. The Supreme Court went on to explain that "it is not necessary to read § 1692c(c) in that way," and that courts can plausibly read the exception under § 1692c(c)(2), which allows a debt collector or creditor to "notify the consumer" that it "may invoke specified remedies which are ordinarily invoked," 15 U.S.C. § 16c(c)(2), "to imply that they authorize the actual invocation of the remedy that the collector 'intends to invoke.' " *Id.* "The language permits such a reading, for an ordinary court-related document does, in fact, 'notify' its recipient that the creditor may 'invoke' a judicial remedy. Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies." *Id.*

Courts in this and other circuits, relying on *Heintz*, have similarly found that communications made in the context of foreclosure proceedings that would otherwise violate § 1692c if made to a third party do not run afoul of the FDCPA. *See, e.g., Marino v. Nadel*, No. 17-CV-2116, 2018 WL 4634150, at \*3 (D. Md. Sept. 27, 2018) ("The filing of an action to foreclose is a necessary precedent to reaching a postjudgment judicial remedy, so communications with a court that are necessary to maintain that foreclosure action do not violate § 1692c(b)."), *aff'd*, No. 18-2283, 2019 WL 1473931 (4th Cir. Apr. 3, 2019); *Owoh v. Sena*, No. 16-CV-4581, 2018 WL 1221164, at \*5 (D.N.J. Mar. 8, 2018) (dismissing § 1692c(b) claim where "the basis of [the] [p]laintiff's claim is [the] [d]efendants' filing of the lien with a county clerk" because it was "necessary in order for [the] [d]efendants to perfect their lien"); *Cohen v. Wolpoff & Abramson, LLP*, No. 08-CV-1084, 2008 WL 4513569, at \*6 (D.N.J. Oct. 2, 2008) ("There is no cause of action under [§ 1692c(b)] for an attorney's communication with a forum in pursuit of a legal remedy."); *Buffington v. Schuman & Schuman, P.C.*, No. 00-CV-1620, 2001 WL 34082273, at \*3 (N.D.N.Y. Feb. 21, 2001) (holding communications with debtor did not violate § 1692c because "the allegedly offending conduct ... was sent to institute foreclosure proceedings that were approved by the Bankruptcy Court," and "there is no indication from the record that defendants' actions involved the type of abusive conduct that the FDCPA was intended to prevent"); *cf. Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868, 2014 WL 4843947, at \*9–10 (E.D.N.Y. Sept. 26, 2014) (dismissing § 1692c(b) claims against attorneys who represented creditor in state court proceeding because "[t]he complaint does not adduce any facts whatsoever to connect these claims to the [attorney defendants]," but separately assessing whether attorneys' filings in state court violated § 1692e's prohibition on misleading statements); *Hooks v. Forman Holt Eliades & Ravin LLC*, No. 11-CV-2767, 2012 WL 3322637, at \*6 (S.D.N.Y. Aug. 13, 2012) ("[W]here a Defendant is attempting to comply with state law requirements in enforcing a specific remedy, a majority of courts have found that the FDCPA does not stand in the way."), *rev'd on other grounds*, 717 F.3d 282 (2d Cir. 2013).

**\*12** Plaintiff effectively asks the Court to hold that creditors may not pursue judicial foreclosure through their attorneys without violating the FDCPA. But "Plaintiff has cited no authority—nor is this Court aware of any—for the proposition that the sole act of filing a lawsuit," or documents necessary to prosecuting that lawsuit which necessarily identify the nature of the underlying debt, "against a debtor is a third-party communication prohibited by the statute," absent some allegation of misrepresentation or other improper communication. *Heagerty v. Lueder, Larkin, & Hunter, LLC*, No. 16-CV-99, 2016 WL 11580705, at \*8 (N.D. Ga. Oct. 21, 2016), *adopted by* 2016 WL 11580702 (N.D. Ga. Nov. 15, 2016). On the contrary, the Second Circuit in *Cohen* clearly

Case 5:24-cv-00188-DNH-MJK Document 7 Filed 05/01/24 Page 53 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

contemplated the continuing validity of creditors pursuing foreclosure proceedings in holding that conduct in the context of those proceedings must comply with the FDCPA:

> Indeed, *every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e., forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the house at auction, and applying the proceeds from the sale to pay down the outstanding debt). Moreover, mortgage foreclosure is contemplated in another portion of the statute. *See* 15 U.S.C. § 1692i(a)(1).

*Cohen*, 897 F.3d at 83 (citation, italics, and quotation marks omitted). Therefore, the Court dismisses Plaintiff's claims against the Attorney Defendants under § 1692c(b), based on their disclosure of Plaintiff's debt to the state court in the context of pursuing foreclosure, for failure to state a claim.

#### ii. 15 U.S.C. § 1692e

Plaintiff also alleges that the Attorney Defendants violated § 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiff alleges that her § 1692e claims constitute the "overarching violation" in this case, and that all Defendants violated § 1692e by failing to "identify Plaintiff's current creditor." (Am. Compl. ¶ 64.) Plaintiff's § 1692e claim against the Attorney Defendants fails.

First, Plaintiff's only factual allegations against the Attorney Defendants are that they filed documents in connection with her foreclosure proceeding that disclosed her debt and stated the debt was owed to Wells Fargo. (*Id.* ¶¶ 48–49.) Plaintiff's insistence that "[t]here is no creditor of Plaintiff to whom the debt is owed," (*id.* ¶ 68), and that the identification of Wells Fargo as the entity to whom the debt was owed was therefore misleading, was rejected by the state court in the Foreclosure Action, and is thus barred by issue preclusion. (*See* Opinion

26 n.17; Judgment of Foreclosure.) The Attorney Defendants therefore made no misrepresentation by indicating to the Dutchess County clerk that Plaintiff's debt was owed to Wells Fargo, as Plaintiff alleges. Additionally, as already discussed, Plaintiff's allegation that the investors in the Pass-Through Trust are her true creditors, (*id.* ¶ 64), is contradicted by caselaw holding that a trustee can be a creditor within the meaning of the FCDPA. *See, e.g., Munroe*, 2016 WL 1248818, at *5 (holding Bank of New York "as Trustee for the Certificate Holders of CWMBS, Inc., CIL Mortgage Pass-Through Trust 2005-04, Mortgage Pass-Through Certificates Series 2005-04" was a creditor where the plaintiff's mortgage was "assigned ... 'in default' " to the Bank as trustee). The plain language of § 1692a(6) defines "creditor" as, inter alia, any person "to whom a debt is owed," as long as they are not collecting on the debt on behalf of another; because Plaintiff's debt was indeed "owed" to Wells Fargo as the trustee, there was no misrepresentation made by any Party who suggested as much.

**\*13** Second, even if the investors in the Pass-Through Trust were Plaintiff's true creditors under the FDCPA, the characterization of Wells Fargo, rather than the beneficiaries of the Trust, as the entity to whom Plaintiff's debt was owed is not a *material* misrepresentation. "[N]ot every technically false representation by a debt collector amounts to a violation of the FDCPA, and FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice." *Cohen*, 897 F.3d at 85 (citations and quotation marks omitted). In *Cohen*, the Second Circuit held that § 1692e "incorporates a materiality requirement," which requires that "a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated consumer." *Id.* (citation, alteration, and quotation marks omitted). There, the Court concluded that even if incorrect, the identification of the mortgage servicer as the "creditor" was an immaterial misrepresentation "and therefore not actionable under § 1692e," because it would not "frustrate a consumer's ability to intelligently choose his or her response." *Id.* at 86 (citation and quotation marks omitted).

As in *Cohen*, any alleged omission here did not "misrepresent[ ] the nature or legal status of [Plaintiff's] debt" in any manner that "undermined [her] ability to respond to the debt collection." *Id.* Although Plaintiff alleges that Chase's purported concealment of the investor's identity "affect[ed] Plaintiff's decision making process," and that she "could have disputed entirely differently and much sooner," (Am. Compl.

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 54 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

¶¶ 34, 68), she does not explain how, *see Martinez v. I.C. Sys.*, No. 17-CV-5693, 2019 WL 1508988, at *3 (E.D.N.Y. Mar. 31, 2019) (dismissing claim under § 1692e where the plaintiff "fail[ed] to allege adequately how the purported [false] statements impaired [the] [p]laintiff from paying the debt or challenging the debt"); *Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 3d 223, 233 (W.D.N.Y. 2019) (dismissing § 1692e claim because, even assuming the defendants made false statements in connection with an underlying state court proceeding, the plaintiff "failed to allege or otherwise contend that any such falsity could mislead the least sophisticated consumer as to the nature and legal status of the underlying debt or could impede the consumer's ability to respond to or dispute collection" (citation, alteration, and quotation marks omitted)); *see also Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012) ("Although statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA, the false statements of which [the plaintiff] complains do not amount to the kind of misleading and deceptive practices that fall within the ambit of the FDCPA, and therefore fail to state a plausible claim." (citation omitted)).[8]

[8]    Further supporting this conclusion, the Second Circuit has held that plaintiffs lack standing to challenge assignments of mortgages to trusts like the one at issue here because, inter alia, they suffer no injury from not knowing the identities of the trust beneficiaries. *See Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 83 (2d Cir. 2014) ("While alleging that [the] defendants received and collected money from [the] plaintiffs that [the] defendants 'were not entitled to receive and collect' and seeking as restitution and as damages 'all payments on the mortgage loans in issue money [sic] collected and received by Deutsche Bank and [the] [d]efendant [t]rusts and their servicers, agents, employees and representatives,' the [c]omplaint did not allege or imply that any plaintiff ... made loan payments in excess of amounts due, made loan payments to any entity other than defendants, or was subjected to duplicate billing or duplicate foreclosure actions." (citations and alterations omitted)); *see also Beckford v. Bayview Loan Servicing, LLC*, No. 14-CV-249, 2017 WL 2588084, at *6 (D. Conn. June 14, 2017) ("Like the plaintiffs in *Rajamin* and the cases following it, the plaintiff's] [a]mended [c]omplaint alleges 'highly implausible' and 'entirely hypothetical' injuries,

for instance that the 'improper transfer of his debt prevented him from exploring options with the true debt owner,' which are too speculative 'to serve as a basis for Article III standing.' " (alterations omitted) (quoting *McCarty v. The Bank of N.Y. Mellon*, 669 F. App'x 6, 7 (2d Cir. 2016))), *aff'd*, 729 F. App'x 127 (2d Cir. 2018).

 *14    Therefore, because Plaintiff has included no allegations that could implicate the Attorney Defendants in a violation of § 1692e, this claim is dismissed.

### iii. 15 U.S.C. § 1692g(a)(2)

Plaintiff also alleges that the Attorney Defendants' failure to disclose Plaintiff's creditor within five days of its initial communications with Plaintiff violates § 1692g(a)(2). (*See* Am. Compl. ¶¶ 13, 41.)

Section 1692g(a)(2) states that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall ... send the consumer a written notice containing ... the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a) (2); *see also Cohen*, 897 F.3d at 80 (noting that § 1692g(a) "requires debt collectors to provide debtors with the name of the 'creditor to whom the debt is owed' within five days of an 'initial communication with a consumer in connection with the collection of any debt' ").

Plaintiff does not indicate what she considers the "initial communication" the Attorney Defendants sent her. In fact, Plaintiff alleges no specific communications between herself and the Attorney Defendants at all. At most, the Court can infer that the filing of the Foreclosure Action was the first "communication" between the Attorney Defendants and Plaintiff. However, the statute expressly states that "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of [§ 1692g(a)]." 15 U.S.C. § 1692g(d); *see also Cohen*, 897 F.3d at 87–88 & n.9 (holding that documents the attorney defendants "were legally obligated to file ... with the foreclosure complaint" were "covered by § 1962g(d)'s pleading exclusion," and noting that "[a] foreclosure complaint falls squarely within § 1692g(d)'s exclusion for 'formal pleadings' " (citation omitted)); *Izmirligil*, 2013 WL 1345370, at *4 ("[N]either [a] foreclosure summons nor foreclosure complaint is an 'initial communication' under the FDCPA, so as to trigger a debt collector's obligations under 15

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 55 of 90

Johnson-Gellineau v. Steine & Associates, P.C., Not Reported in Fed. Supp. (2019)

2019 WL 2647598

U.S.C. § 1692g." (citation omitted)). Because Plaintiff fails to plead any communication between herself and the Attorney Defendants other than the documents filed in connection with the Foreclosure Action, this claim is dismissed.

### III. Conclusion

In light of the foregoing analysis, the Court grants both the Bank Defendants' Motion To Dismiss and the Attorney Defendants' Motion to Dismiss. Because this is the second adjudication of Plaintiff's claims on the merits, the dismissals are with prejudice. *See Lastra v. Barnes & Noble Bookstore,* No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (stating that even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile"), *aff'd,* 523 F. App'x 32 (2d Cir. 2013).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2647598

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00188-DNH-MJK   Document 7   Filed 05/01/24   Page 56 of 90

Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)

2019 WL 1780140

KeyCite Yellow Flag - Negative Treatment

Distinguished by Sanders v. Sanders,  S.D.N.Y.,  September 24, 2021

2019 WL 1780140
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

John P. DASH III, Plaintiff,

v.

BANK OF AMERICA CORPORATION
and Real Time Resolutions, Inc., Defendants.

18-cv-4807 (RWL)
|
Signed 04/23/2019

**Attorneys and Law Firms**

John P. Dash, III, New York, NY, pro se.

Jason Robert Lipkin, Winston & Strawn LLP, New York, NY,
for Defendants.

### OPINION AND ORDER

ROBERT  W.  LEHRBURGER, United States Magistrate
Judge

 **\*1**  Plaintiff John P. Dash ("Dash"), proceeding *pro se*, brings
this action pursuant to the Fair Debt Collection Practices Act,
15 U.S.C. § 1692 et seq. He alleges that Defendant Bank of
America Corporation ("BAC") has violated the statute by,
*inter alia*, using improper means to collect on debt from a
real estate mortgage loan.[1] BAC has moved for dismissal
pursuant to Rules §§ 12(b)(1), 12(b)(3) and 12(b)(6) of the
Federal Rules of Civil Procedure. For the reasons that follow,
the motion is GRANTED and the action is dismissed with
prejudice.

[1]      As discussed further below, named defendant Real
Time Resolutions, Inc. is no longer a defendant in
this case.

Factual Background [2]

[2]

In accordance with the standard for assessing a
motion to dismiss, the following facts are derived
from Plaintiff's Complaint, dated May 31, 2018
(Dkt. No. 1), and accepted as true. *See Erickson
v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167
L.Ed.2d 1081 (2007); *Johnson v. Priceline.com,
Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). In addition
to the Complaint, the Court also draws upon
statements and documents incorporated into the
Complaint by reference, as well as matters of
which judicial notice may be taken, including
public records and documents that Plaintiff either
possessed or knew about, and relied upon, in
bringing the suit. *See Kleinman v. Elan Corp.*,
706 F.3d 145, 152 (2d Cir. 2013) (citing *ATSI
Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d
87, 98 (2d Cir. 2007)).

On March 1, 2006, Dash, a New York resident, obtained a
mortgage from non-party Bank of America, N.A. for real
property located at 2325 NW 9th Place, Cape Coral, Florida.[3]
(Complaint ¶¶ 2, 4; Ex. A ("Note") and B ("Mortgage")
attached to Motion to Dismiss, dated March 8, 2006). Dash
made the last mortgage payment on December 30, 2008,
but the account then went into default because "plaintiff
was attempting to get a short sale approved." (Complaint
¶ 5.) Almost seven years later in September 2015, BAC
"started changing the last payment date to re-age the
debt." (Complaint ¶ 6.) Dash alleges that this practice violated
the Fair Debt Collection Practices Act, which prohibits a
debt collector from attempting to collect on a debt more than
six years after the last payment date. (Pl. Opp. ¶ 1.) Dash
alleges that BAC has "a history of trying to either collect
on time-barred debts or ruining consumers credit reports by
re-aging or changing last payment dates or dates of first
delinquencies." (Complaint ¶ 6.)

[3]

In his Complaint and opposition papers, Dash
incorrectly states that Defendant Bank of America
Corporation was the mortgagee. But in fact, the
face of the mortgage and note indicate that Bank of
America, N.A. is the actual mortgagee. (Plaintiff's
Opposition to Motion to Dismiss ("Pl. Opp."), Ex.
D; Ex. A and B attached to the Motion to Dismiss.)

The Complaint alleges two causes of action. First, Dash
alleges that BAC violated 15 U.S.C. § 1692, "1692k(b)
(1)i".[4] Dash claims that as a result of this conduct, he
suffered damages and "future damages" including "worry,

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 57 of 90

Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)

2019 WL 1780140

mental anguish, distress and frustration." (Complaint ¶ 11.) He seeks actual damages, punitive damages, and attorneys' fees. [5] (Complaint ¶¶ 11-14.)

> [4]    The First Cause of Action cites "15 U.S.C. § 1692k(b)(1)i", but "(i)" does not exist in the statute. The Court construes that 15 U.S.C. § 1692k(b)(1) was intended. This section states: "In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors (1) ... the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional...."

> [5]    On the First Cause of Action, Dash alleges that he is entitled to attorneys' fees "pursuant to 15 U.S.C. § 1681k(a)(3)." This provision is part of the Fair Credit Reporting Act – the law that formed the basis for Dash's separate lawsuit against BAC, discussed in detail below. Even if this legislation were relevant here, that provision does not involve attorneys' fees; nor does it include a Subsection 3.

**\*2**  In the Second Cause of Action, Dash alleges that BAC violated 15 U.S.C. § 1692k because it "negligently failed to comply with the requirements imposed under the FDCPA, including but not limited to" (i) "failing to validate the debt;" (ii) "false representation or legal status of the debt;" (iii) "frequency and persistence of noncompliance, the nature of such noncompliance and the extent to which was intentional;" and (iv) "threaten[ing] to take legal action [against Dash]." (Complaint ¶¶ 15-16.) Again, Dash claims to have suffered damages and "future damages" including "worry, mental anguish, distress and frustration" (Complaint ¶ 17.) On the Second Cause of Action, Dash seeks actual damages and attorneys' fees. [6] (Complaint ¶¶ 18-19.)

> [6]    On the Second Cause of Action, Dash alleges that he is entitled to attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3). That section provides, in relevant part: "[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of ... (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

## Procedural Background

This action is not the first time that Dash has raised claims against BAC in connection with his Florida residential mortgage. On May 30, 2017, Dash filed a case in this District, bearing the case number 17 Civ. 4122, assigned to Judge William H. Pauley, III (hereinafter, the "Prior Litigation"). Though both lawsuits relate to the same mortgagee-mortgagor relationship, the primary difference between the Prior Litigation and this instant litigation is that the Prior Litigation made allegations against BAC based upon the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., ("FCRA"), whereas this lawsuit makes allegations based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA").

The Prior Litigation lasted for approximately five months. In that relatively brief period, Dash filed an Amended Complaint, a Second Amended Complaint, and a Third Amended Complaint. (Prior Litigation, Dkt. Nos. 8, 11, and 15.) In those pleadings, Dash alleged that in July and August of 2014, BAC began misreporting loan accounts in his credit reports for several months. (Prior Litigation, Dkt. No. 1 at ¶ 5-7.) Dash alleged that he demanded a "reasonable investigation" into the matter and that it be corrected, and that BAC was "negligent" and "willful" with respect to the alleged reporting errors. (Id. at ¶ 7-8.)

The Prior Litigation asserted two causes of action under the FCRA. First, Dash claimed that BAC failed to comply with the reinvestigation requirement of 15 U.S.C. § 1681i, causing him various unspecified damages. Second, he claimed that BAC failed to comply with various mandatory procedures under the FCRA, including (i) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, pursuant to 15 U.S.C. § 1681e(b); (ii) failing to comply with the reinvestigation requirements of 15 U.S.C. § 1681i; (iii) providing Dash's credit file to third-party companies without determining that those companies had a permissible purpose to obtain it; and (iv) failing to provide Dash with his credit file pursuant to 15 U.S.C. § 1681g. (Id. at ¶ 15.)

The parties appeared for an initial pre-trial conference on September 1, 2017 before Judge Pauley, and on that same day a case management schedule was entered. (Prior Litigation, Dkt. No. 14.) About one month later, Dash filed his Third Amended Complaint. (Prior Litigation, Dkt. No. 15.)

Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)

2019 WL 1780140

On October 3, 2017, with no explanation on the docket, Dash filed a "Notice of Dismissal with Prejudice" in which he "hereby dismisses this action, with prejudice, and without costs, pursuant to Fed. R. Civ. P. 41(a)(1) (A)(i)." (Prior Litigation, Dkt. No. 16.) Dash's Notice of Dismissal terminated the Prior Litigation, and no further filings were made on that docket.

**\*3** Approximately seven months after termination of the Prior Litigation, on May 31, 2018, Dash filed this action. [7] Dash initially named two Defendants: BAC and Real Time Resolutions, Inc. ("Real Time"). Real Time was a debt collection agency hired by non-party Bank of America, N.A. to collect on the past-due mortgage. (Pl. Opp., Ex. D, Contract Between Bank of America N.A. and Real Time, dated December 7, 2017.) On August 8, 2018, Dash voluntarily dismissed his claims against Real Time. (Dkt. No. 24.) Thus, BAC is the only remaining defendant. On September 26, 2018, the parties consented to the jurisdiction of the undersigned for all purposes. (Dkt. No. 27.)

[7]  Dash refers to the Prior Litigation as having been "settled" in September or October 2017. (Pl. Opp. at ¶ 4.; Pl. Sur-reply (Dkt. No. 32) at ¶ B.) BAC does not reference settlement of the Prior Litigation in its motion papers or reply.

BAC moved for dismissal on November 5, 2018. The motion papers included a Memorandum of Law ("Def. Mem.") and the Declaration of Jason R. Lipkin ("Lipkin Decl."), and Exhibits A through E. (Dkt. No. 29.) [8] Dash filed his opposition on November 8, 2018 in the form of a two-page numbered letter to the Court, attaching Exhibits A through D ("Pl. Opp."). (Dkt. No. 30.) BAC filed a Reply Memorandum of Law on December 17, 2018 ("Def. Reply"). (Dkt. No. 31.) Four days later, Dash filed a sur-reply consisting of a narrative letter of approximately one-page, and 58 pages of unlabeled exhibits ("Pl. Surreply"). [9] (Dkt. No. 32.)

[8]  BAC attached all motion papers to its Motion to Dismiss. (*See* Dkt. No. 29.)

[9]  Dash did not receive permission to file a sur-reply as required by Part III(E) of this Court's Individual Rules. *See also* Fed. R. Civ. P. 7(a) (7). Nevertheless, mindful of its duty to extend special solicitude to *pro se* plaintiffs, the Court has exercised its discretion to accept and consider the sur-reply. *See Munoz-Nagel v. Guess, Inc.,* No. 12 Civ. 1312, 2013 WL 1809772, at \*1 (S.D.N.Y. April 30, 2013) (reviewing sur-reply of *pro se* litigant in connection with motion to dismiss); *accord Gadson v. Goord,* No. 96 Civ. 7544, 1997 WL 714878, at \*1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987)) (same).

## Legal Standards

### A. Standard for Reviewing *Pro Se* Pleadings

Dash proceeds *pro se* in this litigation, as he did in the Prior Litigation. As an initial matter, the Court notes the well-settled principle that "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). A court must interpret such complaints "to raise the strongest arguments they suggest," the idea being that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

That said, "even *pro se* plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.' " *Martinez v. Ravikumar,* 536 F.Supp.2d 369, 370 (S.D.N.Y. 2008) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Nor does *pro se* status excuse a party from meeting deadlines. *Santos v. General Electric Co.,* No. 10 Civ. 6948, 2011 WL 5563544, at \*7 (S.D.N.Y. Sept. 28, 2011) ("plaintiff's *pro se* status does not excuse [his] noncompliance with statutory deadlines"); *Lobaito v. Chase Bank,* No. 11 Civ. 6883, 2012 WL 3104926, at \*5 (S.D.N.Y. July 31, 2012), *affirmed,* 529 F. App'x 100 (2d Cir. 2013) (summary order) (same).

### B. Standards for Motion to Dismiss

**\*4** BAC seeks dismissal based on three different provisions of the Federal Rules of Civil Procedure: Rules 12(b)(1), 12(b) (3) and 12(b)(6).

Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)

2019 WL 1780140

On a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. National Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *affirmed,* 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transportation System, Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion to dismiss, the Court " 'must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.' " *Morrison,* 547 F.3d at 170 (quoting *Natural Resources Defense Council v. Johnson,* 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation omitted)). In deciding the motion, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue...." *J.S. ex rel. N.S. v. Attica Central Schools,* 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings").

On a motion to dismiss pursuant to Rule 12(b)(3) for improper venue, "the plaintiff bears the burden of establishing that venue is proper." *Luxexpress 2016 Corp. v. Government of Ukraine,* No. 15 Civ. 4880, 2018 WL 1626143, at *4 (S.D.N.Y. March 30, 2018) (quoting *French Transit, Ltd. v. Modern Coupon Systems, Inc.,* 858 F.Supp. 22, 25 (S.D.N.Y. 1994)). When considering a motion to dismiss for improper venue under Rule 12(b)(3), "the plaintiff need only make a *prima facie* showing of venue." *Gulf Insurance Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir. 2005) (brackets omitted) (quoting *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 364-65 (2d Cir. 1986) (citations omitted)). As with a motion to dismiss for lack of subject matter jurisdiction, "in deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper. The Court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.' " *Concesionaria DHM, S.A. v. International Finance Corp.,* 307 F.Supp.2d 553, 555 (S.D.N.Y. 2004) (quoting *U.S. Environmental Protection Agency ex rel. McKeown v. Port Authority of New York and New Jersey,* 162 F.Supp.2d 173, 183 (S.D.N.Y. 2001)).

Finally, to survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**\*5** "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). In considering a motion to dismiss for failure to state a cause of action, a district court "accepts all factual claims in the complaint as true, and draws all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Industry Co.,* 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted). However, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level ... *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010) (quotation marks and brackets omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558, 127 S.Ct. 1955.

For the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *Cortec Industries v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.,* 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007)). In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.,* No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 60 of 90

Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)

2019 WL 1780140

*Barnum v. Millbrook Care Ltd. Partnership,* 850 F.Supp. 1227, 1232-33 (S.D.N.Y. 1994)). [10]

10    As relevant here, the Court may consider Dash's Note and Mortgage, as both documents are referenced in the Complaint and form the basis for Dash's claims. BAC's motion papers attach the two documents, both dated March 8, 2006. (Dkt. No. 29, Ex. A, B). The Court may also consider Dash's Prior Litigation, which is a matter of public record, referenced in Dash's opposition papers (Pl. Opp. at ¶ 4), and pleadings from which are attached to BAC's moving papers. (Dkt. No. 29, Ex. C, D.)

## C. FDCPA Standards

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and ... to protect consumers against debt collection abuses." *Vincent v. The Money Store,* 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)). To further these ends, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir. 2001). Among those rights, the FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." *Jacobson v. Healthcare Financial Services, Inc.,* 516 F.3d 85, 91 (2d Cir. 2008) (citing 15 U.S.C. § 1692k).

As relevant here, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. A debt collector also "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Such prohibited misrepresentations include, but are not limited to, the "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Finally, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

**\*6** To establish a violation under the FDCPA: (1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt; (2) the defendant collecting the debt must be considered a "debt collector" as defined by the statute; and (3) the defendant must have engaged in an act or omission in violation of FDCPA. *Plummer v. Atlantic Credit and Finance, Inc.,* 66 F.Supp.3d 484, 488 (S.D.N.Y. 2014) (quoting *Healy v. Jzanus Ltd.,* 02 Civ. 1061, 2002 WL 31654571, at *2 (E.D.N.Y. Nov. 20, 2002)); *Schuh v. Druckman & Sinel, L.L.P.,* 751 F.Supp.2d 542, 548 (S.D.N.Y. 2010).

## D. Standards for Res Judicata and Collateral Estoppel

The common law doctrines of res judicata and collateral estoppel are "related but distinct [and] operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits." *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002) (citing *Montana v. United States,* 440 U.S. 147, 153-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

"Res judicata [or claim preclusion] precludes parties from litigating issues 'that were or could have been raised' in a prior proceeding." *Perez v. Danbury Hospital,* 347 F.3d 419, 426 (2d Cir. 2000) (quoting *Monahan v. New York City Department of Corrections,* 214 F.3d 275, 284-85 (2d Cir. 2000)); *Irish Lesbian and Gay Organization v. Giuliani,* 143 F.3d 638, 644 (2d Cir. 1998). "To prove that a claim is precluded under this doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.' " *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (quoting *Monahan,* 214 F.3d at 284-85); *see also Truong v. Hung Thi Nguyen,* No. 10 Civ. 386, 2011 WL 1198254, at *3 (S.D.N.Y. March 3, 2011).

Collateral estoppel operates slightly differently than res judicata. "Collateral estoppel [or issue preclusion] prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding." *Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729, 734 (2d Cir. 1991) (citing *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326-27, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)). A party asserting collateral estoppel must establish four elements: "(1) the issues in the prior proceeding and the current proceeding are identical; (2) the issue raised in the current action was, in fact, actually decided in the prior proceeding; (3) there was a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the issue previously litigated and decided was necessary to support a valid and

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 61 of 90

Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)

2019 WL 1780140

final judgment on the merits." *GemShares, LLC v. Kinney,* No. 17 Civ. 844, 2017 WL 2559232, at *8 (S.D.N.Y. June 2, 2017) (citing *In re PCH Associates,* 949 F.2d 585, 593 (2d Cir. 1991)).

### Discussion

BAC asserts several arguments in support of its motion to dismiss. Three of those arguments each independently require dismissal of the Complaint. First, Dash's action is barred by the doctrine of res judicata based on the Prior Litigation. Second, Dash's action is barred by the applicable one-year statute of limitations within the FDCPA. Third, Dash's action fails to state a claim because BAC is not actually a "debt collector" within the meaning of the FDCPA. [11]

> [11]    BAC asserts additional arguments based on lack of subject matter jurisdiction and improper venue. The Court has considered these arguments and determined them to be without merit. Nevertheless, dismissal is warranted based on BAC's three other arguments discussed below.

### A. Dash's Action is Precluded by the Prior Litigation

**\*7** Citing the Prior Litigation, BAC argues that "collateral estoppel and/or res judicata bar Plaintiff's FDCPA claim as a matter of law" and the action should therefore be dismissed. (Def. Mem. at 7-8.) BAC is correct.

As outlined above, courts consider a three-factor analysis to determine whether a plaintiff's claim is precluded under res judicata. A defendant must show that "'(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.' " *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (quoting *Monahan,* 214 F.3d at 284-85); *see also Truong v. Hung Thi Nguyen,* No. 10 Civ. 386, 2011 WL 1198254, at *3 (S.D.N.Y. March 3, 2011).

As for the first factor, the Prior Litigation did not conclude with a trial verdict or judicial decision; it concluded with Dash's filing of a "Notice of Dismissal with Prejudice." (Prior Litigation, Dkt. No. 16.) This distinction, however, is irrelevant for purposes of the res judicata analysis. "Res judicata bars 'subsequent litigation of any ground of recovery

that was available in [a] prior action, whether or not it was actually litigated or determined.' " *Falardo v. New York City Police Department,* 566 F.Supp.2d 283, 285 (S.D.N.Y. 2008) (quoting *Balderman v. United States Veterans Administration,* 870 F.2d 57, 62 (2d Cir. 1989)). "A judgment on the merits for purposes of res judicata is not necessarily a judgment based upon a trial of contested facts." *Gianatasio v. D'Agostino,* 862 F.Supp.2d 343, 349 (S.D.N.Y. 2012) (quoting *Dillard v. Henderson,* 43 F.Supp.2d 367, 369 (S.D.N.Y. 1999)).

Rather, a discontinuance with prejudice serves as a final adjudication on the merits. *NBN Broad., Inc. v. Sheridan Broadcasting Networks, Inc.,* 105 F.3d 72, 78 (2d Cir. 1997) ("a discontinuance with prejudice is deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted, or which could have been asserted, in the suit"); *Allianz Insurance Co. v. Lerner,* 296 F.Supp.2d 417, 421 (E.D.N.Y. 2003) ("discontinuance with prejudice has the same effect as a final judgment on the merits for res judicata purposes"); *accord Cora v. Ranjan,* 98 A.D.3d 598, 599, 949 N.Y.S.2d 503, 504 (2d Dep't 2012); *Fifty CPW Tenants Corp. v. Epstein,* 16 A.D.3d 292, 294, 792 N.Y.S.2d 58, 60 (1st Dep't 2005) (stipulation of discontinuance with prejudice is a judgment on the merits for the purposes of *res judicata*). [12] Accordingly, the fact that Dash discontinued the action with prejudice is enough to satisfy the requirement that there was an adjudication on the merits in the Prior Litigation.

> [12]    In cases before a federal court on the basis of a federal question, the court applies federal common law in considering the preclusive effects of res judicata. *Taylor v. Sturgell* 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (holding that a federal court vested with federal question jurisdiction must apply federal common-law res judicata rules); *accord Paramount Pictures Corp. v. Allianz Risk Transfer AG,* 31 N.Y.3d 64, 88, 96 N.E.3d 737, 754 (2018) (same).

Second, the parties involved are identical in the Prior Litigation as the current litigation: John P. Dash III as Plaintiff and Bank of America Corporation as Defendant. Although Real Time was initially named as a defendant, a stipulation of voluntary dismissal removed that party, leaving only Dash and BAC. (Dkt. No. 25.) Therefore, the parties are identical.

**\*8** Third, and finally, the claims asserted in this action could have been asserted in the Prior Litigation. Parties are "barred from relitigating not only matters actually litigated

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 62 of 90

Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)

2019 WL 1780140

in [a] preceding action but also any matters that could have been litigated in that action ... [if those matters involve] the same nucleus of facts as that of any claim asserted in the prior action." *West v. Ruff*, 961 F.2d 1064, 1065 (2d Cir. 1992) (citing *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192-93, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981)); *Reilly v. Reed*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978). That is the case here. The allegations made in both the Prior Litigation and this one stem from the identical "nucleus of facts," namely Dash's residential mortgage and BAC's conduct with respect to the mortgage. Moreover, had Dash wanted to add a claim to his pleadings in the Prior Litigation, he had ample opportunity to do so. Indeed, Dash filed three amended complaints in the Prior Litigation without adding the legal claim Dash asserts here, despite the fact that both claims arising out of the same factual subject matter.

In his Opposition, Dash does not address the res judicata argument in any significant detail. He states that "Plaintiff has never filed a FDCPA against BAC previously ... [and] has only previously filed a Fair Credit Reporting Act case in May 2017, which was settled in September 2017." (Pl. Sur-reply at ¶ B.) But rather than helping his case, this statement only illuminates the reason for applying res judicata; Dash could have brought his FDCPA claim against BAC in the Prior Litigation but failed to do so.

Moreover, the Complaint in this case does not allege any new conduct subsequent to resolution of the Prior Litigation. In other words, there are no new events concerning BAC's conduct with respect to Dash's mortgage that could not have been raised in the Prior Litigation. Yet Dash waited over seven months before initiating this litigation after discontinuance of the Prior Litigation. These circumstances reflect precisely the sort of activity that the doctrine of res judicata seeks to prevent: relitigating issues that were, or should have been, already addressed through a single action. *See, e.g., EDP Medical Computer Systems, Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) ("*Res judicata* is a rule of fundamental repose important for both the litigants and for society' [because] [i]t 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication' ") (internal citations omitted); *Alaimo v. General Motors Corp.*, No. 07 Civ. 7624, 2008 WL 4695026, at *6 n.2 (S.D.N.Y. Oct. 20, 2008) ("the fundamental principles of *res judicata* [are] to prevent duplicative litigation, conserve judicial resources and prevent inconsistent decisions").

In short, Dash cannot now raise new claims regarding his mortgage that could have been raised in the Prior Litigation. Dash could have asserted his FDCPA claims against BAC in the Prior Litigation alongside his FCPA claims. He did not. That matter was long ago settled between the parties, and the case dismissed with prejudice. For this reason, this action must be dismissed pursuant to Rule 12(b)(6) based on the doctrine of res judicata. [13]

[13]     BAC argues that Dash's claims are barred by "collateral estoppel and/or res judicata." (Def. Mem. at 7.) Although courts sometimes refer to these two doctrines interchangeably, res judicata is the better doctrinal fit for this case. Collateral estoppel, or issue preclusion, bars the relitigation of *issues* previously decided in another action (rather than res judicata, which bars the relitigation of *claims*). Here, the specific "issue" of FDCPA liability was never raised or decided in the Prior Litigation.

**B. Dash's FDCPA Claims Are Barred By the Statute of Limitations**

Even if the Complaint were not barred by res judicata, Dash's claims would still be barred under the applicable statute of limitations contained in the FDCPA.

**\*9** In relevant part, 15 U.S.C. § 1692k(d) provides: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy ... within one year from the date on which the violation occurs." *See also Wright v. Zabarkes*, 347 F. App'x 670, 671-72 (2d Cir. 2009) ("an action under the FDCPA must be brought within one year from the date the violation occurred"); *Sierra v. Foster & Garbus*, 48 F.Supp.2d 393, 395 (S.D.N.Y. 1999) (dismissing FDCPA action against bank because all claims under the FDCPA must be brought "within one year from the date on which the violation occurs"); *Shieh v. Flushing Branch, Chase Bank USA, N.A.*, No. 11 CV 5505, 2012 WL 2678932, at *6 (E.D.N.Y. July 6, 2012) (same). The one-year period begins to run on "the date when [the consumer] receives an allegedly unlawful communication." *Somin v. Total Community Management Corp.*, 494 F.Supp.2d 153, 158-59 (E.D.N.Y. 2007) (dismissing FDCPA claim as time-barred under one-year limitations period); *Donchatz v. HSBC Bank USA, N.A.*, No. 14-CV-194, 2015 WL 860760, at *9-10

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 63 of 90

**Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)**

2019 WL 1780140

(W.D.N.Y. Feb. 27, 2015) (same), *affirmed*, 648 F. App'x 158 (2d Cir. 2016).

Here, Dash alleges that BAC "re-aged the debt" in violation of the FDCPA in or about September 2015. [14] (Complaint, ¶ 6.) Accordingly, the statute of limitations for his claims expired no later than September 30, 2016 – over a year before he filed the instant Complaint in May 2018.

[14]    Implicit in Dash's allegation is that he learned of BAC's having re-aged the debt through a communication he received in or about September 2015.

The plain fact is that Dash had notice of any alleged FDCPA violations by September 2015, yet he waited more than three years to file his lawsuit. Consequently, because of the one-year statutory deadline imposed by the FDCPA, the Complaint must be dismissed for failure to state a cause of action upon which relief can be granted pursuant to Rule 12(b)(6). [15]

[15]    Dash does not address BAC's statute of limitations arguments in any detail in his Opposition.

**C. BAC is not a "Debt Collector" for Purposes of FDCPA**
Even if Dash could survive the res judicata and statute of limitations bars, his Complaint would still be subject to dismissal for failure to state a cause of action upon which relief could be granted because BAC is not a proper defendant under the FDCPA. As BAC correctly argues, it is not a "debt collector" within the meaning of the statute. [16]

[16]    BAC argues that the Complaint should be dismissed because Dash incorrectly named "Bank of America Corporation" in this lawsuit rather than "Bank of America, N.A." The former is merely a holding company, BAC asserts, and therefore never formally serviced Dash's loan or attempted to collect on the debt owed within the meaning of the FDCPA. (Def. Mem. at 10.) The face of the Note and Mortgage indicate that the agreements are between Dash and non-party "Bank of America, N.A." This may be so, but this argument for dismissal is unavailing. Courts construe the pleadings of *pro se* plaintiffs liberally. *Triestman,* 470 F.3d at 474-75. To the extent that Dash improperly named an affiliated entity,

such an error could be forgiven at this early stage of the litigation, especially if it could be cured through an amendment of the pleadings. For reasons discussed elsewhere in this opinion, however, such an amendment would be futile.

Under the FDCPA, the term "debt collector" means: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Meanwhile, the FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4); *see also Vincent v. The Money Store,* 736 F.3d 88, 98 (2d Cir. 2013). Although debt collectors are subject to the FDCPA, creditors generally are not. The FDCPA "limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts." *1077 Madison Street LLC v. March,* No. 14-CV-4253, 2015 WL 6455145, at *3 (E.D.N.Y. Oct. 26, 2015) (citing *Maguire v. Citicorp Retail Services, Inc.,* 147 F.3d 232, 235 (2d Cir. 1998)).

**\*10**    Additionally, "a creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." *Burns v. Bank of America,* 655 F.Supp.2d 240, 255 (S.D.N.Y. 2008) (quoting *Doherty v. Citibank (South Dakota) N.A.,* 375 F.Supp.2d 158, 162 (E.D.N.Y. 2005), *affirmed,* 360 Fed. App'x. 255 (2d Cir. 2010)). Where an entity is assigned "a debt in default solely for the purpose of facilitating collection of such debt for another," it falls outside the definition of a "creditor" under the FDCPA. *See* 15 U.S.C. § 1692a(4); *Johnson-Gellineau v. Steine & Associates,* P.C., No. 16 Civ. 9945, 2018 WL 1605574, at *8 (S.D.N.Y. March 29, 2018).

The distinction between creditors and debt collectors was highlighted in a recent opinion by the U.S. Supreme Court, *Henson v. Santander Consumer USA Inc.,* 582 U.S. ——, 137 S.Ct. 1718, 198 L.Ed.2d 177 (2017). There, the Court considered the possible definitions of a "debt collector" and what sorts of entities should be subject to the FDCPA. The Court held that "entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account" are not debt collectors within the meaning of the statute. *Id.* at 1721.

BAC does not meet the definition of a "debt collector" within the meaning of the FDCPA. Dash himself acknowledges that

Case 5:24-cv-00188-DNH-MJK    Document 7    Filed 05/01/24    Page 64 of 90

Dash v. Bank of America Corporation, Not Reported in Fed. Supp. (2019)

2019 WL 1780140

BAC – or, more correctly, Bank of America, N.A. – merely contracted its debt collection services to Real Time. (Pl. Opp., Ex. D.) The Complaint does not articulate any activities that BAC engaged in, separate and apart from Real Time, that would constitute violations of the FDCPA.

Dash's opposition papers do not address BAC's argument in this regard, except by stating that BAC violated the FDCPA and attaching voluminous documents and statements bearing the Bank of America corporate logo, some dating back to 2006, which discuss the terms of his mortgage. (*See* Pl. Sur-reply, attachments). But none of these attachments show how BAC is anything more than a creditor within the definition of the FDCPA, or how it has violated the provisions of the FDCPA.

In short, Dash has failed to plead facts to show that BAC is actually a debt collector within the meaning of the statute. Consequently, the action is subject to dismissal as a matter of law. *See, e.g., Frederick v. Capital One Bank (USA), N.A.,*

No. 14 Civ. 5460, 2018 WL 1583289, at *12 (S.D.N.Y. March 27, 2018) (dismissing FDCPA claims where plaintiff failed to establish that defendant was a debt collector).

Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and this action is dismissed. The Court has considered the remaining arguments raised by the parties, and to the extent they are not addressed herein, finds them to be without merit. The Clerk of the Court is respectfully directed to terminate Dkt. No. 29 and close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1780140

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   9

760 Fed.Appx. 66
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Shahnewaz QURASHI, Plaintiff-Appellant,
Nahid A. Qurashi, Plaintiff,

v.

OCWEN LOAN SERVICING, LLC, Merscorp
Holdings, Inc., FKA MERS/Mortgage Electronic
Registration Systems, Defendants-Appellees,
Seneca Mortgage Servicing, Defendant.

18-1045
|
January 24, 2019

**Synopsis**
**Background:** Mortgagor brought Fair Debt Collection
Practices Act (FDCPA) action pro se against alleged debt
collector and loan servicer. The United States District Court
for the Eastern District of New York, Joan M. Azrack, J.,
2018 WL 1392346, adopting report and recommendation
of Anne Y. Shields, United States Magistrate Judge, 2018
WL 2078167, granted motion of alleged debt collector and
loan servicer to dismiss for failure to state claim. Mortgagor
appealed.

**Holdings:** The Court of Appeals held that:

[1] mortgagor failed to adequately allege that alleged debt
collector was debt collector as defined by FDCPA, and

[2] mortgagor failed to adequately allege that loan servicer
was subject to FDCPA by failing to allege that loan had been
in default at time that loan servicer had assumed that role.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for
Failure to State a Claim.

West Headnotes (2)

[1]    **Finance, Banking, and Credit** 🔑 Creditors
and lenders; assignees and loan servicers
**Finance, Banking, and Credit** 🔑 Debt
collection practices

Mortgagor proceeding pro se failed to
adequately allege that alleged debt collector was
debt collector as defined by Fair Debt Collection
Practices Act (FDCPA), and thus failed to state
FDCPA claim against alleged debt collector;
mortgagor did not allege that alleged debt
collector had obtained interest in mortgage while
obligation had been in default or that alleged
debt collector itself had undertaken any efforts to
collect on obligation, and alleged debt collector
was in fact identified in mortgage as nominee for
lender at time of origination of loan. Consumer
Credit Protection Act § 803, 15 U.S.C.A. §
1692a(6).

13 Cases that cite this headnote

[2]    **Finance, Banking, and Credit** 🔑 Debt
collection practices

A Fair Debt Collection Practices Act (FDCPA)
complaint that does not allege that a servicer
acquired the plaintiff's debt after it was in default
fails to plausibly allege that the servicer qualifies
as a debt collector under the FDCPA. Consumer
Credit Protection Act § 803, 15 U.S.C.A. §
1692a(6).

14 Cases that cite this headnote

Appeal from a judgment of the United States District Court for the Eastern District of New York (Azrack, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Shahnewaz Qurashi, pro se, Hollis, NY.

For Defendants-Appellees: Brett L. Messinger and Brian J. Slipakoff, Duane Morris LLP, New York, NY.

PRESENT: ROBERT A. KATZMANN, Chief Judge, PETER W. HALL, GERARD E. LYNCH, Circuit Judges.

## *67  SUMMARY ORDER

Shahnewaz Qurashi and Nahid A. Qurashi (collectively "the Qurashis"), appearing *pro se*, sued Ocwen Loan Servicing, LLC ("Ocwen"), Merscorp Holdings, Inc. ("MERS"), and Seneca Mortgage Servicing ("Seneca"),[1] for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and state law in connection with a mortgage on real property in Coram, New York. Broadly construed, the Qurashis alleged that the defendants failed to validate a debt request and that MERS's predecessor company invalidly assigned their mortgage to another entity. They also sought to quiet title and alleged various state-law violations. The district court adopted the magistrate judge's Report and Recommendation ("R & R") finding the complaint devoid of the factual allegations needed to state the elements of a plausible FDCPA claim and declining to exercise supplemental jurisdiction over any potential state law claims. Shahnewaz Qurashi ("Qurashi")[2] appeals the district court's grant of the defendants' motion to dismiss the complaint for failure to state a claim under the FDCPA. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

[1]  By electronic order dated March 29, 2017, the district court dismissed the complaint as against Seneca upon consent and with prejudice. Qurashi does not challenge Seneca's dismissal on appeal.

[2]  Only Shahnewaz Qurashi appealed the district court's judgment.

This Court "review[s] the grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013) (per curiam).[3] To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although allegations in a complaint are assumed to be true, this tenet "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

[3]  Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

Although the defendants argue that we should deem all appellate issues waived given "Qurashi's brief, two sentence argument in support of reversal," Appellees' Br. 8, we liberally construe Qurashi's *pro se* brief as raising a general challenge to the district court's dismissal of the FDCPA claim, *see Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003) ("This court construes appellate briefs submitted by *pro se* litigants liberally and reads such submissions to raise the strongest arguments they suggest."). However, Qurashi has not challenged either (1) the district court's decision to refrain from exercising supplemental jurisdiction or (2) the district court's determination that granting leave to amend would be futile. Therefore, these two issues are waived for purposes of this appeal. *See Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998) (stating that while **\*68** *pro se* litigants are afforded some latitude, this Court need not decide issues that a party fails to raise clearly in his or her appellate brief).

The only federal cause of action identifiable in the Qurashis' complaint is a violation of the FDCPA. The FDCPA aims to "eliminate abusive debt collection practices by debt collectors" and to "protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). With certain exceptions inapplicable here, creditors are generally not considered "debt collectors" subject to the FDCPA. *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (explaining that the FDCPA gives rights to consumers "whose debts are placed in the hands of professional debt collectors for collection").

The Qurashis' complaint fails adequately to allege that the defendants qualify as debt collectors for purposes of the FDCPA, which only applies to statutorily defined "debt collectors." 15 U.S.C. § 1692a(6) (defining "debt collector" as "any person who uses ... interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect ... debts owed ... or due another"). The FDCPA excludes from this definition of debt collector "any person collecting or attempting to collect any debt owed ... or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F).

 **[1]**  The Qurashis have not alleged that either Ocwen or MERS obtained an interest in the mortgage while the obligation was in default. To the contrary, MERS is identified in the mortgage as the nominee for the lender at the time of origination of the loan. Additionally, the Qurashis do not allege that MERS itself undertook any efforts to collect on the obligation. Thus, the Qurashis have not plausibly alleged that MERS is a debt collector under the FDCPA.

 **[2]**  As for Ocwen, the complaint is devoid of any allegations concerning its role as a loan servicer and the status of the Qurashis' loan at the time Ocwen began servicing it. A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status. *See Roth v. CitiMortgage Inc.,* 756 F.3d 178, 183 (2d Cir. 2014); *accord Obduskey v. Wells Fargo,* 879 F.3d 1216, 1219–20 (10th Cir.), *cert. granted on other grounds sub nom. Obduskey v. McCarthy & Holthus LLP,* —– U.S. —–, 138 S.Ct. 2710, 201 L.Ed.2d 1095 (2018) (mem.); *Glazer v. Chase Home Fin. LLC,* 704 F.3d 453, 457 (6th Cir. 2013); *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985). Therefore, a complaint that "does not allege that [a servicer] acquired [the plaintiff's] debt after it was in default ... fails to plausibly allege that [the servicer] qualifies as a debt collector under FDCPA." *Roth,* 756 F.3d at 183. Because the Qurashis do not allege that their home loan was already in default at the time Ocwen became the servicer of their mortgage, they have not plausibly alleged that Ocwen was a debt collector under the FDCPA.

For these reasons, the Qurashis have failed to plead facts demonstrating that the FDCPA applies to defendants Ocwen and MERS. Accordingly, the district court properly granted the defendants' motion to dismiss. The judgment of the district court is **AFFIRMED**.

### All Citations

760 Fed.Appx. 66

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1639347
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

HELEN ELAINE WEST, Plaintiff,

v.

THE CITY OF NEW YORK, et al., Defendants.

23-CV-2256 (LTS)
|
Filed 04/15/2024

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN Chief United States District Judge

**\*1** Plaintiff, who resides in Alabama and is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this complaint alleging that Defendants violated her rights. This is Plaintiff's second action in this court asserting claims about (1) her allegedly improper placement, beginning in 2011, in homeless shelters in New York City for persons diagnosed as mentally ill and chemically addicted (MICA), and (2) the lack of adequate assistance from other social services agencies during that period. *See West v. City of New York*, No. 17-CV-2369 (CM) (S.D.N.Y. Nov. 3, 2017) ("*West I*") (dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)).

By order dated May 30, 2023, the Court directed Plaintiff to amend her complaint in this action to address deficiencies in her original pleading. After requesting an extension of time, Plaintiff filed an amended complaint on September 25, 2023, and the Court has reviewed it. In her amended complaint, Plaintiff asserts claims against the City of New York, the Department of Health and Mental Hygiene (DOHMH), and thirteen individuals working for social services agencies. For the reasons set forth below, the action is dismissed.

STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v.*

*Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

**\*2** In *West I*, filed in 2017, Plaintiff Helen West alleged that during a difficult period of her life that began in or before 2011, she lost her job as a teacher, lost her basement apartment, was placed in a homeless shelter that was inadequate and inappropriate, and was "rough[ed] up" by someone named Monae Levy. *See West*, No. 17-CV-2369 (ECF 2).[1]

[1]     Plaintiff attached to the complaint in *West I* a pleading indicating that she had also filed suit in 2015 in the Supreme Court of the State of New York, New York County, against several New

York City agencies (the Department of Education; Department of Homeless Services (DHS); the Human Resources Administration (HRA)). In the state court action, she asserted claims for "torture and ill treatment" in a MICA shelter. *Id.* at 10. The results of that action are unclear.

Judge Colleen McMahon issued a 15-page order in *West I* describing the deficiencies in Plaintiff's complaint and granting Plaintiff leave to file an amended complaint. The order explained that Plaintiff did not state a claim: (1) against the City of New York because she had not alleged facts showing any policy, custom, or practice that caused a violation of her rights; (2) for a violation of due process because she had no protected interest in placement in a particular type of shelter, because administrative and state processes had been available to her, and because the government has no general duty under the U.S. Constitution to protect an individual from harm, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); (3) for discrimination based on her "perceived" white race in violation of the Equal Protection Clause, 42 U.S.C. § 1981, or the Fair Housing Act, because she failed to plead sufficient facts; and (4) for a violation of her First Amendment rights because she not allege any causal connection between her speech (reporting another teacher who allegedly slapped a kindergartener) and any violation of her rights in the shelter system. *West*, No. 17-CV-2369 (ECF 5). Chief Judge McMahon extended the deadline for Plaintiff to amend her complaint (ECF 7) and ultimately dismissed the action on November 3, 2017, after Plaintiff failed to submit an amended complaint. In the order of dismissal, Judge McMahon held that the "action, filed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), is dismissed for failure to state a claim[.] 28 U.S.C. § 1915(e)(2)(B)(ii)." (ECF 8 at 1.)

Approximately six years after Plaintiff filed *West I*, she brought this new action, on March 16, 2023, asserting many of the same claims arising since 2011. She again sued the City of New York, and also named as defendants city agencies (DOHMH; DHS; HRA; Housing Preservation and Development (HPD)), and Lantern Community Services. The Court dismissed Plaintiff's complaint for failure to state a claim and granted her leave to file an amended complaint. (ECF 6.) The Court noted, among other things, that (1) in determining whether to reassert her claims, Plaintiff should consider whether the claims were time barred and whether there was any basis for equitable tolling; and (2) her allegations that she had temporarily left New York City during

the pandemic were insufficient to plead that she was a citizen of Alabama for purposes of diversity jurisdiction. [2]

[2]     Plaintiff's complaint did not indicate that she had previously litigated the claims arising from her time in New York City shelters beginning in 2011, and the Court was, at the time of issuing the order to amend, unaware of *West I*.

 **\*3**  In Plaintiff's amended complaint, she alleges that her claims arose from 2011-2020. She sues the City of New York, the DOHMH, and thirteen individual defendants whom she identifies as having formerly been employed at shelters (Stadium Shelter; Lantern Community Services; CAMBA Broadway House) or other social services agencies with which she interacted.

Plaintiff alleges that she was harmed by policies of the City of New York. First, the City allegedly caused her homelessness due to its policy of failing to penalize landlords of illegal basement apartments. (ECF 9 at 6.) Plaintiff reasons that, because no "vacate order" was issued for her illegal basement apartment, she did not receive relocation assistance that she believes would have been available to her from HPD if a vacate order had issued, and she therefore ended up "in the shelter system." (*Id.*) Second, Plaintiff alleges generally that the City of New York has a long history of "not meeting reasonable accommodations for clients of the shelter system," though she does not identify any basis for requiring accommodations or the type of accommodations to which she is referring. (*Id.*) Third, the City of New York is "known for hiring under qualified people." (*Id.*) Finally, Plaintiff alleges that the City of New York fails to allow individuals "to choose the type or actual shelter that is best for them." (*Id.* at 6.)

Plaintiff reiterates her claims that misinformation in various records (including errors stating that her 2011 eviction was due to illegal activity and that she suffered mental illness) caused her to be misclassified in terms of her shelter placement. Plaintiff also reasserts her claims litigated in *West I* regarding Monae Levy's assault on her and harassment and other difficulties that she suffered in the shelter system.

Plaintiff alleges that an HRA representative in Housing Court in Brooklyn, New York, provided "zero help" and told Plaintiff that she should join her daughter in California rather than entering the shelter system. (*Id.* at 6.) Plaintiff "reached out to Susan Nayowith and DHS multiple times seeking help" but did not receive help, even though Defendant Nayowith

allegedly was aware at that time that a different shelter would have been more suitable for Plaintiff. (*Id.* at 7.)

Defendant Lindsay Lambert, Plaintiff's assigned case manager at CAMBA Broadway House, told Plaintiff that the only housing available "was supportive housing for people who were mentally ill or chemically addicted or both." (*Id.* at 7-8.) Lambert told Plaintiff that "Section 8 did not exist," and included "blatant lie[s]" in case notes suggesting that Plaintiff was delusional. (*Id.* at 8.) Another resident, who "was of a darker skin color" than Plaintiff told the security guard that she "got Section 8." (*Id.* at 9.) Plaintiff states that she learned that she would not get housing from CAMBA "because she was the wrong color." (*Id.*)

Defendant Diana Santos committed "absolute fraud" by misleading Plaintiff and failing to explain restrictions on the housing provided at Prospero Hall; specifically, Plaintiff "was not told" that she was entering into a "case management / employment contract." (*Id.* at 9.) Moreover, Santos showed the apartment to a prospective tenant named Tammy, who is Black, and Tammy rejected the apartment because it faced the train tracks. However, Santos only showed Plaintiff an apartment that she stated would be "similar" to the one Plaintiff would be assigned, and did not show Plaintiff the actual apartment. Plaintiff contends that this constituted discrimination based on race.

**\*4** Defendant Amy Berg made allegedly false statements on Plaintiff's Section 8 housing application that suggested that Plaintiff "was a very needy person" and was not "self-directed." (*Id.* at 10.) Plaintiff states that Santos, Tonia Cortes, and Amy Berg, all "cho[se] to lie" about the apartment at Prospero House. (*Id.*)

Plaintiff includes many details demonstrating that she "did not get what she needed." (*Id.*) Plaintiff states that many individuals "never helped" her, including Tania Cortes, Brian Dickerson, Amy Berg, "Mr. Rogers," Harry Kennedy, Cory Hioska, Andrei Zatalokin, and George Rizzo. She also alleges generally that "[e]very single case manager and administrator who worked at every single shelter [that she] was at was blatantly negligent by not informing me of the slanderous labels that were in my file, as well as withholding procedures for transferring me to a suitable place ...." (*Id.* at 7.)

Plaintiff seeks to have her "reputation cleared," and to be compensated $10 million for "lost wages," lost property, and other suffering.

## DISCUSSION

### A. Claims against City of New York

#### 1. Claim Preclusion

Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not bring a new case that includes claims or defenses that were, or could have been, raised in an earlier case in which the same parties were involved if that case resulted in a judgment on the merits. *Brown v. Felsen,* 442 U.S. 127, 131 (1979). Claim preclusion thus "prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.,* 898 F.3d 232, 236-37 (2d Cir. 2018)*, rev'd on other grounds,* 140 S. Ct. 1589 (2020). Claim preclusion generally applies if: "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation Co.,* 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted). [3]

> [3] Although claim preclusion is an affirmative defense to be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c), the Court may raise the issue on its own initiative. *See, e.g., Grieve v. Tamerin,* 269 F.3d 149, 154 (2d Cir. 2001) (affirming district court's *sua sponte* dismissal on grounds of preclusion because it involves "important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions").

To determine whether a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001), or, in other words, whether facts essential to the second suit were present in the first suit, *NLRB v. United Techs. Corp.,* 706 F.2d 1254, 1260 (2d Cir. 1983). Claims are treated as the same if they "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner,* 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees,* 140 S. Ct. at 1595) "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates,*

*LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted).

**\*5** Here, Plaintiff's earlier suit, *West I* – which alleged mistreatment, inadequate assistance, and racial discrimination by social service agencies and individuals during her period of homelessness beginning in 2011 – resulted in a judgment on the merits. Plaintiff's complaint in *West I* was dismissed in its entirety, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim and judgment was entered by a court of competent jurisdiction. *West*, No. 17-CV-2369 (ECF 9). A "dismissal for failure to state a claim operates as 'a final judgment on the merits and thus has *res judicata* effects.' " *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (quoting *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009)).

The City of New York was a defendant in *West I* and is a defendant in this action. [4] Plaintiff also asserted claims in both actions arising from the same facts – that is, her experiences in homeless shelters beginning in 2011. While Plaintiff alleges in the amended complaint now before the Court that her claims arose during a ten-year period between 2011-2021, and it is possible that she may be asserting some claim that arose after judgment was entered in *West I* in 2017, many of the facts alleged are the same as those raised in *West I* and involve events that took place beginning in 2011. Plaintiff's claims against the City of New York (and its employees acting in an official capacity) that arise from these facts and took place before judgment entered in *West I* in 2017 are therefore barred by claim preclusion.

[4]   Plaintiff sues City of New York DHS employees, Defendants Susan Nayowith, George Rizzo, and Henry Kennedy. Insofar as Plaintiff sues them in an official capacity, rather than a personal capacity, the claims against them would be considered claims against the City of New York. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("A claim against a municipal employee in his or her official capacity may be treated as an action against the municipality itself."). Claims against these New York City employees in their official capacities thus would also barred by claim preclusion. The Court addresses the claims against them in their personal capacities below.

2. Policies of City of New York

Because Plaintiff may be advancing some claim that arose after 2017, which could not have been included in *West I*, the Court addresses her allegations that policies of the City of New York caused violations of her constitutional rights. As Plaintiff has repeatedly been advised, to state a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997).

Here, Plaintiff has alleged that she was harmed by several City of New York policies: (1) the failure to regulate basement apartments (which meant that there was no "vacate order" for her apartment, which might have qualified her for certain housing assistance); (2) the failure to offer "reasonable accommodations for clients of the shelter system"; (3) hiring "under qualified people" who are not "sufficiently trained"; and (4) not allowing individuals to choose their own shelter placement. (ECF 9 at 6.) First, the allegations regarding Plaintiff's basement apartment appear to arise from facts that relate to her eviction in or around 2011. Because this claim was known to her at the time, it appears to be barred by the three-year limitations period for a claim under Section 1983. These facts also do not allege the violation of any right protected by the U.S. Constitution.

**\*6** Second, Plaintiff's general allegation that employees lacked training is insufficient to state a claim against a municipality. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("[I]t [will not] suffice to prove that an injury or accident could have been avoided if [an employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury."). General allegations that employees were unqualified or untrained, or vague allegations that unspecified accommodations were not provided, do not state a claim on which relief can be granted.

Finally, Plaintiff's allegation that she was unable to select a shelter is also insufficient to state a claim for a violation of a constitutional right, because there is no right to placement in a particular type of shelter. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Plaintiff thus fails to state a claim on which relief can be granted under Section 1983 against the City of New York.

The Court therefore dismisses Plaintiff's claims against the City of New York based on claim preclusion and for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. DOHMH

The Court advised Plaintiff in the Order to Amend that her original complaint failed to state a claim against the DOHMH under 42 U.S.C. § 1983, and that if she named this defendant in her amended complaint, she must plead facts about how DOHMH's policies, customs, or practices, caused a violation of her federal rights. In the amended complaint, Plaintiff alleges that DOHMH "does not require shelters to tell people that they are going to be in these case management programs and that the housing they're going to be in is not going to be anything like normal housing." (ECF 9 at 10.) This allegation does not plead a violation of a right protected by the U.S. Constitution or federal law. Plaintiff thus fails to state a claim under Section 1983 against DOHMH, and the Court dismisses any claims that Plaintiff is bringing against DOHMH under Section 1983. 28 U.S.C. § 1915(e)(2)(B)(ii).

### C. Individual Defendants

1. Federal claims under 42 U.S.C. § 1983

a. Employees of private entities

Plaintiff asserts claims against individual employees of private entities providing housing and social services, including Lantern Community Services, CAMBA, Park Avenue Women's Shelter, and Acacia Network/Stadium Shelter. This includes Defendants Brian Dickerson, Diana Santos, Amy Berg, and Cory Hioska (all from Lantern); Lindsay Lambert and Stephanie Purnell (CAMBA); Tanya Cortes (Park Avenue); Andrei Zatalokin, and "Mr. Rogers" (Acacia); and Naomi Kimmel ("therapist").

A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir.

2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Because these individuals are alleged to work for private nongovernmental entities, and the facts alleged do not suggest that their actions are attributable to the state, Plaintiff cannot state a claim against these individuals under Section 1983 for any alleged violation of her constitutional rights. [5] The Court therefore dismisses Plaintiff's Section 1983 claims against Defendants Dickerson, Santos, Berg, Hioska, Lambert, Purnell, Cortes, Zatalokin, Rogers, and Kimmel for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

[5]    Although the actions of a private entity are attributable to the state for purposes of Section 1983 in certain situations, *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (describing "public function" "joint action," and "compulsion" tests for state action), the "provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." *Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-CV-5995, 2020 WL 1043305, *4 (E.D.N.Y. Mar. 4, 2020) (internal quotation marks and citation omitted); *Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001) ("[T]he provision of housing, for the poor or for anyone else, has never been the exclusive preserve for the state" and thus is not a public function). Plaintiff makes no allegations that the challenged actions (false notes in her case files, inappropriate shelter placement, general failure to assist) are "fairly attributable" to the state. *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)); *Young*, 152 F. Supp. 2d at 364 ("[T]he crucial relationship for a finding of state action is between the governmental entity and the action taken by the private entity, not between the governmental entity and the private actor.").

b. DHS employees

**\*7** Plaintiff also sues former DHS employees Susan Nayowith, George Rizzo, and Harry Kennedy. She alleges that Defendant Nayowith "withheld help & procedures

2024 WL 1639347

for proper shelter placement and help with securing housing." (ECF 9 at 15.) Defendants Rizzo and Kennedy allegedly "did not help [Plaintiff] when [she] complained about Tillary [shelter] & how afraid [she] was." (*Id.* at 18.)

As Judge McMahon explained in *West I*, Plaintiff's allegations that she "did not receive staff assistance ... fail to state claims for deprivation of due process. The government does not have a general duty under the Constitution to protect an individual from harm." *West I*, 17-CV-2369 (ECF 5 at 7) (citing *DeShaney*, 489 U.S. at 195-96). Judge McMahon also identified the two recognized exceptions to the general rule that there is no constitutional duty to provide assistance. The first exception is where the government forcibly takes someone into its custody, and the second is where the government facilitates harm (such as by preventing someone from acting on their own). *Id.*

Here, under *DeShaney*, Plaintiff's allegations that the assistance that DHS provided was inadequate do not state a claim for a violation of rights under the U.S. Constitution. Moreover, Plaintiff's allegations do not suggest that she was within any exception to this rule because DHS did not require Plaintiff to remain in its custody or prevent her from acting on her own. The allegations in the amended complaint, that Defendants Nayowith, Rizzo, and Kennedy did not help Plaintiff, thus fail to state a claim under Section 1983 on which relief can be granted.

**D. State law claims**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, the Court has dismissed all of the federal claims over which the Court has original jurisdiction.

However, Plaintiff also invokes the Court's diversity jurisdiction, 28 U.S.C. § 1332. As explained in the order to amend (ECF 6), to establish diversity jurisdiction under Section 1332, a plaintiff must allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory

jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).

For purposes of diversity jurisdiction, "[a]n individual's citizenship, within the meaning of the diversity statue, is determined by [her] domicile." *Johnson v. Smithsonian*, 4 F. App'x 69, 70 (2d Cir. 2001) (citing *Palazzo v. Corio*, 232 F.3d 88, 42 (2d Cir. 2000)). "In general, domicile has two components: (1) physical presence in a state, and (2) the intent to make the state a home." *LoCurto v. LoCurto*, No. 07-CV-8238 (NRB), 2008 WL 4410091, at *3 (S.D.N.Y. Sept. 25, 2008). A corporation is a citizen, for purposes of Section 1332, of both the State where it is incorporated and the State where it has its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). A plaintiff bears the burden of establishing that diversity jurisdiction existed at the time the action was commenced. *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

**\*8** Plaintiff alleges that she is a citizen of Alabama. [6] (ECF 9 at 2.) She does not plead facts about where defendants are domiciled. Although she identifies many defendants as previously having been employed in New York City at some point during the 2011-2021 period when her claims arose, she does not allege facts about where any defendant was domiciled at the time Plaintiff brought this action. Plaintiff thus fails to satisfy her burden of pleading facts showing diversity of citizenship.

[6]     In her original complaint, Plaintiff had not adequately pleaded her citizenship in Alabama because she merely alleged that she had been "helped to temporarily leave NYC during COVID and was able to find affordable housing in a safe place." (ECF 1 at 6.) Plaintiff's amended complaint gives no indication that her residence in Alabama is temporary, which would be a basis for concluding that she had not abandoned her prior citizenship in New York. *See Palazzo*, 232 F.3d at 42 (holding that domicile "is presumed to continue in the same place, absent sufficient evidence of a change").

The Court therefore declines to exercise its supplemental jurisdiction of any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can

refuse its exercise.' " (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### E. Leave to amend

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Here, Plaintiff has already filed two suits arising from her time in New York City homeless shelters beginning in 2011, and was granted leave to amend in each. Because the amended complaint gives no indication that the defects in Plaintiff's amended complaint could be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

### CONCLUSION

The Court dismisses Plaintiff's federal claims for failure to state a claim on which relief can be granted and as barred be claim preclusion. 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of Plaintiff's state law claims.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is directed to enter judgment in this matter.

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 1639347

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8650192
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Rasheed AHMAD, Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., Defendant.

23-cv-2222 (LJL)
|
Signed December 14, 2023

**Attorneys and Law Firms**

Rasheed Ahmad, Bronx, NY, Pro Se.

Chris J. Lopata, Ryan Wesley McMullan, Jones Day, New York, NY, Victoria Dorfman, Jones Day, Washington, DC, for Defendant.

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

**\*1** Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint against it for failure to state a claim upon which relief can be granted. Dkt. No. 14. The motion is granted.

**BACKGROUND**

Defendant removed this case, brought by Rasheed Ahmad ("Plaintiff"), from state court pursuant to this Court's federal-question jurisdiction. See Dkt. No. 1. Plaintiff sets forth his allegations in an Amended Endorsed Complaint, Dkt. No. 1-5, an incomplete filing entitled "Letter re Exhibits," Dkt. No. 9, and his response to Defendant's motion to dismiss, Dkt. No. 20. For purposes of the motion to dismiss, the Court accepts as true the well-pleaded allegations of Plaintiff's complaint, Dkt. No. 1-5 at 5–6, as supplemented by the other materials submitted in his "letter," Dkt. No. 9. And, because Plaintiff is proceeding *pro se*, the Court construes Plaintiff's filings broadly and liberally so as to raise the strongest arguments they suggest. See, e.g., Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007); Weixel v. Bd. of Educ. of City of New

York, 287 F.3d 138, 146 (2d Cir. 2002); Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000).

Plaintiff is an individual consumer residing in the Bronx, New York. Dkt. No. 9 at 22–23. He is a "consumer" as defined by N.Y. Gen. Bus. L. § 380-A(b) and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(b) and (c). *Id.* at 22. Defendant is a Georgia corporation duly authorized and qualified to do business in the State of New York. *Id.* It is also a consumer reporting agency ("CRA") [1] within the meaning of the FCRA. Dkt. No. 20 ¶ 5.

[1]    Although the FCRA speaks of a "consumer reporting agency," courts often refer to such entities as "credit reporting agencies." *See, e.g.*, Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 444 (2d Cir. 2015).

Plaintiff alleges that he was denied credit by certain financial institutions and multiple accounts of his were re-aged as a result of inaccurate reporting by Defendant, causing him emotional distress. Dkt. No. 9 at 1. He includes in the materials he has filed with the Court in the "Letter re Exhibits" several letters he sent to Defendant complaining that Defendant had improperly included information about ten specific accounts in his credit report and that Defendant had failed to maintain reasonable procedures to assure accuracy in his published credit report and had failed to verify some information in his credit report. *Id.* at 2, 4, 24. Plaintiff demanded that Defendant produce "verifiable proof," in the form of the original signed contract with his signature on it for each of the challenged accounts, and that Defendant remove any accounts for which it did not have the original signed contract. *Id.* at 24, 26. He demanded that Defendant reinvestigate his report. *Id.* at 26. He also complained that Defendant had provided such non-public information to non-affiliated third parties, *id.* at 24, 26, and attaches letters from a number of financial institutions denying his applications for credit and citing information in the credit reports furnished by Defendant, *id.* at 3, 6–7, 8, 13. Plaintiff includes in the "Letter re Exhibit" materials a grievance he filed with the Consumer Financial Protection Bureau ("CFPB") that Defendant failed to fix his credit report and had sent copies of his credit report to third parties without his permission or consent and without a permissible purpose. *Id.* at 14–18. He also attaches notices of balances due from an account that he claims is not his. *Id.* at 11–12. Plaintiff alleges that Defendant failed to follow proper procedures in correcting his information and failed to correct false information about him. Dkt. No. 20 at 2–3.

2023 WL 8650192

## PROCEDURAL HISTORY

**\*2** This case was initiated by summons and endorsed complaint filed in the Civil Court of the City of New York, Bronx County, on November 14, 2022, and served on Defendant on November 17, 2022. Dkt. No. 1 ¶ 2. As served on Defendant, the endorsed complaint contained a caption but did not contain any allegations. Dkt. No. 1-1. The portion of the form complaint where he would identify the nature and substance of his cause of action was blank. *Id.* The endorsed complaint was dismissed by order on February 21, 2023. Dkt. No. 1 ¶ 3; Dkt. No. 1-4. The state court noted that the endorsed complaint had left completely blank the section regarding the nature and the substance of the cause of action Plaintiff intended to plead, and that the description of the action which Plaintiff had included in an application for a summons still did not contain any factual allegations. Dkt. No. 1-4. On March 1, 2023, the court issued an Amended Decision and Order vacating its prior order, explaining that the endorsed complaint was blank due to a clerical error, deeming the endorsed complaint to incorporate a related Application for a Summons, and giving Defendant 60 days thereafter to answer, move or otherwise respond to the Endorsed Complaint. *Id.*; Dkt. No. 1-5. The Application for a Summons to which the court referred is not in the record.

On March 15, 2023, Defendant removed the case to this Court, pursuant to 28 U.S.C. § 1446(b), invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Dkt. No. 1 ¶¶ 6, 9. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

On April 12, 2023, Plaintiff filed his "Letter re Exhibits" before this Court. Dkt. No. 9. [2] On May 5, 2023, Defendant filed this motion to dismiss the complaint for failure to state a claim for relief along with an accompanying memorandum of law in support of the motion. Dkt. Nos. 14–15. On June 15, 2023, Defendant filed a reply memorandum of law in support of the motion. Dkt. No. 17. On June 23, 2023, the Court issued an order noting that that Plaintiff's time to submit opposition papers to Defendant's motion to dismiss had expired on June 2, 2023. Dkt. No. 19. The Court nevertheless extended Plaintiff's deadline to submit opposition papers to July 15, 2023. *Id.* On July 14, 2023, Plaintiff filed a "response" to the motion to dismiss in which he complained that Defendant had engaged in "unfair deceptive practices" and "exchange[d]"

his identity and had failed to follow a reasonable procedure in correcting his credit information. Dkt. No. 20. On July 28, 2023, Defendant filed a further reply memorandum of law in support of the motion to dismiss. Dkt. No. 21.

[2]    Plaintiff's Letter re Exhibits contains paragraphs 1 through 7 (in part) and then paragraphs 14 through 17 of a purported complaint. Dkt. No. 9 at 20–23. It is missing portions of paragraph 7 and the entirety of paragraphs 8 to 13. In other words, it is missing the third page.

## DISCUSSION

### I. Pleading Standards Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

**\*3** The Court is obligated to construe *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). However, the Court's liberal construction of *pro se* pleadings does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)

("Even in a *pro se* case, ... 'although a court must accept as true all of the allegations contained in the complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " (quoting *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009))). Nor does the Court's liberal construction relieve *pro se* litigants of the obligation to otherwise comply with the pleading requirements set forth by the Federal Rules of Civil Procedure. *Saidin v. N.Y.C. Dep't of Educ.,* 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007).

## II. The Fair Credit Reporting Act

Plaintiff purports to plead claims under the FCRA. Dkt. No. 9; Dkt. No. 1-5 at 5–6. "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007). "The FCRA 'places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies.' " *Ritchie v. N. Leasing Sys., Inc.,* 2016 WL 1241531, at *8 (S.D.N.Y. Mar. 28, 2016) (quoting *O'Diah v. New York City,* 2002 WL 1941179, at *12 (S.D.N.Y. Aug. 21, 2002)).

In particular, the FCRA imposes a series of complementary obligations on CRAs to ensure the confidentiality, accuracy, relevance, and proper utilization of consumer credit information. [3] *Nguyen v. Ridgewood Sav. Bank,* 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014). "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 473 (2d Cir. 1995); *see* 15 U.S.C. §§ 1681n, 1681*o*. It permits a CRA to furnish a consumer report only for one of the enumerated purposes in 15 U.S.C. § 1681b, and it prohibits certain information from being included in a consumer report for any but a limited number of exempted purposes, 15 U.S.C. § 1681c. The FCRA further contains provisions designed to promote accuracy in credit reporting. It imposes on a CRA the duty to "maintain reasonable procedures ... to limit the furnishing of consumer reports" to the statutory permissible purposes, 15 U.S.C. § 1681e(a), and, in the preparation of a consumer report, to follow "reasonable procedures to assure maximum possible accuracy" of information in a consumer's credit report, 15 U.S.C.§ 1681e(b).

[3]   The following paragraphs, which describe some of the more salient duties that the FCRA imposes on CRAs, are not intended to be exhaustive.

Other sections of the FCRA govern information disclosure to consumers. The FCRA requires each CRA, upon request, to disclose to the consumer, "[a]ll information in the consumer's file at the time of the request" and "[t]he sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report" need not be disclosed. 15 U.S.C. § 1681g(a)(1), (2). The statute also requires the CRA, upon request, to identify each person that procured a consumer report from the CRA. 15 U.S.C. § 1681g(a)(3).

And, the FCRA imposes reinvestigation obligations on CRAs. With limited exceptions, "if the completeness or accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the [CRA]" of the incompleteness or inaccuracy, the FCRA requires a CRA to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" free of charge and to record the current status of the disputed information or to delete it if it is inaccurate or incomplete or cannot be verified. 15 U.S.C. § 1681i(a)(1)(A). The CRA is required to review and consider all relevant information submitted by the consumer in connection with the dispute, 15 U.S.C. § 1681i(a)(4), and to provide the consumer written notice of the results of the reinvestigation no later than five business days after the completion of the reinvestigation, 15 U.S.C. § 1681i(a)(6). In addition, the CRA must provide to the consumer, upon request, a description of the procedure it used to determine the accuracy and completion of the information in the consumer report. 15 U.S.C. § 1681i(a)(6)(B), (a)(7).

**\*4**   The obligations on CRAs under the FCRA operate in tandem with the obligations of users of consumer reports and on furnishers of information to CRAs. *See, e.g.,* *Braun v. Client Servs. Inc.,* 14 F. Supp. 2d 391, 395 (S.D.N.Y. 2014). Under § 1681m, a report user who takes an adverse action against a consumer based on information contained in the consumer report must provide notice to the consumer that it has taken adverse action based on information provided in a consumer report with the name, address, and telephone number of the CRA and of the consumer's right to obtain (free of charge) a copy of the consumer report. 15 U.S.C. § 1681m. A person furnishing information to a CRA may not do so if he or she "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)

(A). After receiving notice of a dispute as to the completeness or accuracy of information furnished to a CRA, the furnisher must conduct an investigation with respect to the disputed information, report its results to the CRA, and, if an item of information is inaccurate or cannot be verified, refrain from reporting such information. 15 U.S.C. § 1681s-2(b)(1); see Galper, 802 F.3d at 445 (describing duties of furnisher of information to a CRA). By those means, a consumer denied credit on the basis of a consumer report she believes to be inaccurate or incomplete can request a reinvestigation by the CRA and in turn by the furnisher, and, if dissatisfied with the results of the reinvestigation, obtain information about how the reinvestigation was conducted.

A CRA faces liability for noncompliance with the FCRA that is either willful or merely negligent. A CRA that *negligently* fails to comply with a requirement under the FCRA is liable to a consumer for actual damages sustained by the consumer as a result of that failure. 15 U.S.C. § 1681*o*. A CRA that *willfully* fails to comply with a requirement of the FCRA is liable for actual damages or statutory damages, plus punitive damages. 15 U.S.C. § 1681n. Statutory damages in that instance are limited to $1,000. Id. § 1681n(a)(1)(A). And under both the negligence and willfulness provisions, the consumer may recover the costs of the action and reasonable attorneys' fees. Id. §§ 1681n(a)(3), 1681*o*(a)(2).

**III. Plaintiff's Allegations Under the FCRA**

The materials submitted by Plaintiff can be generously and liberally construed to raise the following claims under the FCRA: (1) Defendant failed to follow reasonable procedures to assure the accuracy of the information in his consumer report, 15 U.S.C. § 1681e(b); (2) Defendant failed to conduct a "reasonable reinvestigation" to determine whether the disputed information was accurate, 15 U.S.C. § 1681i; (3) Defendant gathered information about Plaintiff and reported it without his consent; and (4) Defendant has failed to disclose the information in Plaintiff's file, including the sources of information, 15 U.S.C. § 1681g(a). Plaintiff does not properly allege any of these claims. [4]

[4]    Plaintiff also references New York's Fair Credit Reporting Act ("NYFCRA"). Dkt. No. 9 at 23. "Because the language of the NYFCRA and the FCRA is substantially similar, 'the two statutes must be construed the same way.' " *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 267 n.1 (2d Cir. 2023) (quoting *Scott v. Real Estate Fin. Grp.*,

183 F.3d 97, 100 (2d Cir. 1999)); *see also Owoyemi v. Credit Corp Sols. Inc.*, 596 F. Supp. 3d 514, 519–20 (S.D.N.Y. 2022) (dismissing NYFCRA claim because the FCRA expressly preempts the NYFCRA pursuant to 15 U.S.C. § 1681t(b)). Accordingly, the Court's discussion of Plaintiff's claims under the FCRA also applies to the extent he intends to assert claims under the NYFCRA. Plaintiff's additional state law claims are addressed further below.

**A. Formal Pleading Deficiencies**

As a preliminary matter, it is not clear that Plaintiff has complied with the formal requirements for filing a complaint. The complaint that was filed in state court and that has been removed to this Court is entirely blank with respect to its allegations. Such a defect is apparently the result of a clerical error in state court, Dkt. No. 1-4, but the error was not corrected in state court. Although Plaintiff has submitted a document entitled "Letter re: Exhibits," and that document contains incomplete portions of a purported complaint mixed with other documents, it is not clear that Plaintiff intends those pages to serve as his complaint and, in any case, they are incomplete. Dkt. No. 9.

**\*5** Rule 10(a) of the Federal Rules of Civil Procedure requires that every pleading "contain a caption ... setting forth the title of the action" with "the name of the first party on each side with an appropriate indication of other parties." Fed. R. Civ. P. 10(a). Federal Rule of Civil Procedure Rule 10(b) requires a plaintiff to "plead by stating [his or her] claims or defenses in numbered paragraphs." Fed. R Civ. P. 10(b); *Wade Park Land Holdings, LLC v. Kalikow*, 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023). Defendant is entitled to know the allegations against it, and to have those allegations framed in separate paragraphs, "with sufficient clarity to allow the defendant to frame a responsive pleading." *Jackson v. Warning*, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (quoting *Suntrust Mortg., Inc. v. First Residential Mortg. Servs. Corp.*, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012)). Plaintiff thus will have to file a new complaint, with a proper caption, identifying the claims he intends to bring and the factual allegations in support of those claims.

**B. Merits**

To the extent that facts can be gleaned from the material stated by Plaintiff, they fail to state a claim for relief.

## 1. Reasonable Procedures to Assure Maximum Accuracy

Although Plaintiff does not cite to the relevant part of the FCRA that he alleges Defendant violated, it appears, from the face of the complaint, that he attempted to assert a violation of § 1681e. *See* Dkt. No. 9 at 22 ("Defendant negligently and/or willfully failed to follow reasonable procedures to assure maximum accuracy."). Section 1681e creates liability if a CRA fails "to follow reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b). To state a negligence claim against a CRA under § 1681e(b) for inaccurate reporting, a plaintiff must allege: (1) the CRA reported inaccurate information about the plaintiff; (2) the CRA was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (3) the plaintiff was injured; and (4) the CRA's negligence caused the plaintiff's injury. *Wenning v. On-Site Manager, Inc.*, 2016 WL 3538379, at \*8 (S.D.N.Y. June 22, 2016). To state a willfulness claim against a CRA under § 1681e, a plaintiff must allege: "(1) inaccuracy and (2) a failure to follow reasonable procedures that is (3) knowing or reckless." *Id.* The final element (requiring an allegation of "knowing or reckless" violation by a CRA) requires a plaintiff to allege facts "related to" a CRA's "state of mind" when the CRA violated the FCRA. *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 167 (S.D.N.Y. 2014). A plaintiff need not plead actual damages or causation to make out a willfulness claim. *Feliciano v. CoreLogic Rental Prop. Sols., LLC*, 332 F.R.D. 98, 105 (S.D.N.Y. 2019).

Plaintiff does not state either a negligence claim or a willfulness claim under § 1681e(b). Exactly what Plaintiff is alleging with respect to how his accounts are inaccurate is unclear.[5] But assuming Plaintiff sufficiently alleges that the accounts are inaccurate, Plaintiff fails to allege how the procedures used by Defendant were unreasonable. A CRA "is not held strictly liable under the FCRA merely for reporting it; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report." *Ogbon v. Beneficial Credit Servs., Inc.*, 2013 WL 1430467, at \*6 (S.D.N.Y. Apr. 8, 2013) (quoting *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)). "[L]iability does not attach unless the [CRA] failed to follow reasonable procedures in generating the inaccurate report." *Feliciano*, 332 F.R.D. at 105 (internal quotation marks omitted). But Plaintiff does not allege how Defendant failed to follow reasonable procedures to ensure accuracy. In fact, Plaintiff "states nothing at all

about [Defendant's] procedures." *Johnson v. Target Corp.*, 2019 WL 1227784, at \*1 (E.D.N.Y. Feb. 12, 2019), *report and recommendation adopted sub nom.Johnson v. Target Corp.*, 2019 WL 1253467 (E.D.N.Y. Mar. 13, 2019). Because Plaintiff nowhere alleges how Defendant failed to follow reasonable procedures when it generated the consumer report at issue, dismissal is proper. *See, e.g.*, *Abdallah v. LexisNexis Risk Sols. FL Inc.*, 2021 WL 6197060, at \*7 (E.D.N.Y. Dec. 30, 2021) (collecting cases); *see alsoFrederick v. Capital One Bank (USA), N.A.*, 2015 WL 5521769, at \*7 (S.D.N.Y. Sept. 17, 2015) (dismissing claim where "Plaintiff merely recites the elements of the statute, alleging in a conclusory fashion that the Defendants failed to 'follow reasonable procedures' " with alleging supporting facts).

[5]    To sufficiently allege the first element of either a negligence claim or a willfulness claim—inaccuracy—a plaintiff must both (1) identify the specific information on his credit report that is inaccurate; and (2) explain why the identified information is inaccurate. *Swainson v. Lendingclub Corp.*, 2022 WL 2704629, at \*8 (S.D.N.Y. June 24, 2022). Plaintiff, by identifying in his filings various account names and numbers, does identify the specific information on his credit report that is inaccurate. But exactly what he alleges with respect to *how* the information is inaccurate is unclear. He claims alternatively that some accounts did not belong to him and that some accounts did belong to him but contained inaccurate information. If Plaintiff chooses to replead he must allege "*why* such information is inaccurate." *Phipps v. Experian*, 2020 WL 3268488, at \*3 (S.D.N.Y. June 15, 2020) (emphasis added); *see alsoGestetner v. Equifax Info. Servs. LLC*, 2019 WL 1172283, at \*2 (S.D.N.Y. Mar. 13, 2019) (dismissing complaint alleging that credit report was inaccurate without "any explanation as to why" information was false); *Varlack v. Transunion*, 2023 WL 6608980, at \*2 (S.D.N.Y. Oct. 10, 2023). Allegations that "a number of tradelines were ... 'inaccurate and/ or incomplete' ... [without] specifics regarding the alleged errors" are insufficient to satisfy this threshold inquiry. *DeSmarattes v. Equifax*, 2023 WL 8473362, at \*8 (E.D.N.Y. Dec. 7, 2023).

## 2. Reasonable Reinvestigation

**\*6** Plaintiff also may have attempted to raise a § 1681i claim of failure to sufficiently reinvestigate. "Section 1681i requires that if a consumer notifies a CRA of a dispute as to the accuracy of any item of information contained in his file, within 30 days of notification, the CRA 'shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.' " *Perez*, 2021 WL 4784280, at \*9 (quoting 15 U.S.C. § 1681i(a)(1)(A)).

To state a negligence claim against a CRA for failure to reasonably reinvestigate a plaintiff must show that (1) the CRA reported inaccurate information; (2) the plaintiff disputed the inaccurate information and the dispute was not frivolous or irrelevant; and (3) the CRA failed to conduct a reasonable reinvestigation into the inaccurate information which (4) caused tangible or intangible damage. *Choudhury v. Citibank, N.A.*, 2018 WL 11447942, at \*3 (E.D.N.Y. Dec. 7, 2018); *see* *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 92 (2d Cir. 2021). To establish that such a violation was willful, not just negligent, a plaintiff must additionally allege that the CRA's interpretation of its reinvestigation procedures was "objectively unreasonable." *Choudhury*, 2018 WL 11447942, at \*3; *see also* *Suluki v. Credit One Bank, NA*, 2023 WL 2712441, at \*8 (S.D.N.Y. Mar. 30, 2023) ("The mere failure to correct a plaintiff's inaccurate credit information, even after notification of the inaccuracy, does not constitute a willful failure to comply with the FCRA (alterations omitted)).

Plaintiff fails to make allegations supporting the third element—that the CRA failed to conduct reasonable reinvestigation into the disputed information. The reasonableness of the investigation "depend[s] on the circumstances of a particular dispute." *Jones v. Experian Info. Sols.*, 982 F. Supp. 2d 268, 273 (S.D.N.Y. 2013). But without any allegations as to what Defendant *did* in the course of reinvestigating, the Court cannot assess the reasonableness of Defendant's reinvestigation procedure. *See, e.g.*, *Nguyen v. Ridgewood Sav. Bank*, 2015 WL 2354308, at \*11 (E.D.N.Y. May 15, 2015) (dismissing FCRA claim where the plaintiff "fail[ed] to make any allegations regarding either the procedures followed or investigations by" the CRAs "in response to [the plaintiff's] complaints"); *Viverette v. Experian*, 2022 WL 357274, at \*3 (S.D.N.Y. Feb. 7, 2022) (dismissing FCRA claim where the plaintiff failed "to allege any facts showing that [the defendant CRA] failed to follow reasonable reinvestigation procedures"). The CFPB's response to Plaintiff's grievance indicated that Defendant *did* reinvestigate. *See* Dkt. No. 9 at 18. But Plaintiff does not tell us what he heard back regarding the reinvestigation, if

anything. Absent *any* allegations as to what Defendant did or did not do in the course of reinvestigating, Plaintiff fails to state a negligent, much less willful, violation of § 1681i.

### 3. Consumer Authorization

Third, to the extent that Plaintiff suggests that Defendant failed to obtain his consent before sharing his consumer report with others, he has not alleged that Defendant had any such obligation. Section 1681b of the FCRA permits a CRA to furnish a consumer report for a number of permissible purposes including:

> To a person which it has reason to believe (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account, of the consumer; or (B) intends to use the information for employment purposes; or ... (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or (F) otherwise has a legitimate business need for the information (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

**\*7** 15 U.S.C. § 1681b(a)(3).[6] Liability for violation of § 1681b typically attaches to "third parties who willfully or negligently 'use or obtain' a consumer report for an impermissible purpose," not the CRAs themselves. *Rajapakse v. Shaw*, 2022 WL 1051108, at \*5 (S.D.N.Y. Feb. 18, 2022), *report and recommendation adopted by* 2022 WL 855870 (S.D.N.Y. Mar. 23, 2022); *see also* *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 396 (S.D.N.Y.

2014). However, a CRA itself may face liability under § 1681e(a) if the CRA either willfully or negligently failed to maintain reasonable procedures designed to avoid violations of § 1681b. *Moore v. Experian*, 2023 WL 7169119, at *5 (S.D.N.Y. Oct. 13, 2023). Here, Plaintiff does not allege anything that has to do with Defendant's procedures. Accordingly, he cannot state a claim for violation of § 1681e(a).

6    There are limited exceptions. For example, the consumer must authorize the CRA to provide credit information for a consumer report for employment purposes, 15 U.S.C. § 1681b(b)(2), or a consumer report in connection with a credit or insurance transaction that is *not initiated by the consumer*, 15 U.S.C. § 1681b(c)(1)(A).

And, more fundamentally, the FCRA does not always require consumer authorization before a credit report may be issued. "Under the FCRA, there are circumstances pursuant to which a consumer's credit report may be obtained without the consent or even the knowledge of the consumer." *Gamble v. Citifinancial & Landers*, 2002 WL 31643028, at *2 (D. Conn. Nov. 19, 2002); *cf. Boyd v. Experian*, 2023 WL 346004, at *4 (E.D. Mo. Jan. 20, 2023) ("[P]laintiff has not provided the Court with any citations to FCRA indicating that Experian needs her consent or permission to place valid financial information on her credit report.").

Plaintiff has not alleged the disclosure of his consumer report beyond those purposes permitted by law. In fact, the letters Plaintiff received back from various financial institutions reflect that Plaintiff affirmatively initiated credit transactions that triggered disclosure of his credit report. Dkt. No. 9 at 3, 6–7, 8, 13. That is an instance in which the FCRA expressly does not require Plaintiff's affirmative consent. 15 U.S.C. § 1681b(a)(3)(A) (a CRA may furnish a consumer report to anyone which it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer").

### 4. Disclosure

Finally, at various points in his submissions, Plaintiff appears to complain that Defendant has violated § 1681g(a), which requires CRAs, upon request, to disclose "[a]ll information

in the consumer's file at the time of the request" (except for a consumer's full Social Security Number and credit risk scores), as well as "[t]he sources of the information" (except sources acquired and used solely to prepare an investigative consumer report). 15 U.S.C. § 1681g(a)(1), (2). Plaintiff has not alleged facts to establish a violation of that provision.

A consumer's "file" refers to "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g); *see Cortez v. Trans Union, LLC*, 617 F.3d 688, 711 (3d Cir. 2010) (CRA may not avoid disclosure by simply contracting with a third party to store and maintain information subject to disclosure). It includes "all information on the consumer that is recorded and retained by a [CRA] that might be furnished, or has been furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711–12; *see also id.* at 711 n.27 (noting the information in a consumer's "file" may be broader than the information in the "consumer report"); *accord Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018). However, a CRA is not obligated to disclose purely internal record-keeping items not found within a consumer report. *See, e.g., Gillespie v. Trans Union Corp.*, 482 F.3d 907, 910 (7th Cir. 2007) (CRA not obligated to furnish the date of delinquency of a credit account); *Shaw*, 891 F.3d at 759–60.

*8 Plaintiff appears to complain that Defendant failed to provide him "verifiable proof (i.e., an original consumer contract with [his] signature on it) that [Defendant] ha[s] on file." Dkt. No. 9 at 24. But Plaintiff does not allege facts to support that Defendant would have in his file a copy of the original consumer contract. *See Frazier v. Experian Info. Sols., Inc.*, 2018 WL 3785131, at *4 (D. Md. Aug. 9, 2018). What's more, the FCRA does not require CRAs to "keep copies of consumer contracts related to accounts appearing on their credit reports." *Pawlowski v. Experian Info. Sols., Inc.*, 2021 WL 2930076, at *3 (E.D. Va. July 12, 2021) (citing, *inter alia, Jackson v. Warning*, 2016 WL 7228866 (D. Md. Dec. 13, 2016)). Thus, Plaintiff has not stated a claim under Section 1681g(a).

### IV. State Law Claims

It appears that in his Application for a Summons, Plaintiff also makes two additional state-law claims for defamation and for deprivation of his right of privacy under New York Civil Rights Law § 50. *See* Dkt. No. 1-5 at 6 (state court decision describing Application for Summons). Although the "Letter re Exhibits" states only one state-law claim arising

under the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law §§ 380 *et seq.*, Dkt. No. 9 at 23, the Court does not understand that document to constitute an attempt to amend the complaint. [7]

[7]  "When a case is removed to federal court, 'the federal court takes the case up where the State court left it off.' " *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974)). The district court takes the removed case "in the posture in which it existed when it is removed from a state court's jurisdiction and must give effect to all actions and procedures accomplished in a state court prior to removal." *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 387 (S.D.N.Y. 2001) (quoting *Miller v. Steloff*, 686 F.Supp. 91, 93 (S.D.N.Y. 1988)); *see also Adler v. Adler*, 862 F. Supp. 70, 71 (S.D.N.Y. 1994) (pre-removal state court decisions should be followed unless there is a valid reason not to). In this instance, the state court proceedings left off with the Amended Decision and Order dated March 1, 2023 deeming the Application for a Summons to constitute the timely served "Amended Endorsed Complaint." Dkt. No. 1-5 at 4. For the purposes of proceedings before this Court, the Amended Endorsed Complaint is therefore operative.

In light of the deficiencies with Plaintiff's federal claims discussed above, the Court need not separately analyze the state law claims. The Court declines to exercise jurisdiction over his state-law claims standing alone. The Court has discretion whether to exercise supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In considering whether to exercise jurisdiction, a district court should consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In the usual case where, as here, all federal-law claims are eliminated before trial, the balance of factors to be considered militate against the exercise of jurisdiction over any remaining state-law claims. *Id.* at 350 n.7; *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be

avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). There is no reason to depart from that practice in this case. Should Plaintiff choose to file an amended complaint, he may include state-law claims in that pleading on the assumption that he can plead such claims.

### V. Dismissal Without Prejudice with Leave to Amend

**\*9**  As noted, Plaintiff proceeds in this matter without the benefit of an attorney. The Second Circuit has instructed that district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009); *see Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011). Indeed, the Second Circuit has cautioned that district courts should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999) (alteration omitted) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("*[A] pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim.").

Because Plaintiff may be able to allege additional facts to state valid claims, the Court grants Plaintiff 60 days leave to amend his complaint. Should Plaintiff opt to file an amended complaint, he should caption it as such and organize it as required by Federal Rule of Civil Procedure 10. Plaintiff may, in the amended complaint, raise any federal and state claims that he wishes—Plaintiff is not bound by the claims he raised in his previous filings. The amended complaint should include the facts Plaintiff believes to be relevant to his claims for relief, listed in enumerated paragraphs.

Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

  a) the names and titles of all relevant people;

  b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and

time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief under the applicable state and federal laws. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint. Plaintiff may attach relevant documents, including those in his "Letter re Exhibits" as exhibits to the amended complaint, Fed. R. Civ. P. 10(c), so long as the information they contain are integral to his claims: for example, if the documents are referenced in the complaint or if Plaintiff relied on them in bringing suit, *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383–84 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order).

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED without prejudice to the filing of an amended complaint. Plaintiff has leave to file an amended complaint within 60 days of the date of this Order, on or before February 12, 2024.[8]

[8] Plaintiff may consider contacting the New York Legal Assistance Group's ("NYLAG") Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this court. The clinic is run by a private organization; it is not part of, or run by, the Court. It cannot accept filings on behalf of the court, which must still be made by any *pro se* party through the Pro Se Intake Unit.

**\*10**  SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 8650192

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 9

2002 WL 31643028
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

GAMBLE

v.

CITIFINANCIAL AND LANDERS

No. 3:02CV693(JBA).
|
Nov. 19, 2002.

*Ruling and Order*

ARTERTON, J.

**\*1** Plaintiff Barbara Gamble commenced this lawsuit
on April 19, 2002 (at least the thirty-second suit she
has filed in the District of Connecticut since January 7,
2002, *see* Ruling on IFP [Doc. # 2] at 1–2) against
Defendants Citifinancial and Paula Landers, alleging fraud,
breach of contract, and violation of right to privacy and
confidentiality all in connection with defendant's use of
personal information contained in plaintiff's consumer credit
report in making plaintiff an offer of pre-approved credit.
Although Ms. Gamble has met the requirements of 28
U.S.C. § 1915(a) and has been granted leave to proceed
*in forma pauperis* in this action, the Court concludes that
sua sponte dismissal is mandated by 28 U.S.C. § 1915(e)
(2)(B) because Ms. Gamble's sole allegation implicating the
Court's original jurisdiction fails to state a claim on which
relief may be granted. As to Ms. Gamble's claims under state
statutory or common law (including fraud, breach of contract,
and invasion of privacy), the Court declines supplemental
jurisdiction under 28 U.S.C. § 1367(c)(3), noting that there
is no basis stated in the complaint for diversity jurisdiction
under 28 U.S.C. § 1332.

I. Factual Background
Ms. Gamble's complaint lists both herself and defendant
Ms. Landers as residents of Connecticut. Compl. ¶¶ A1–A2.
Under the heading "Jurisdiction", Ms. Gamble drew a line and
wrote nothing. *Id.* ¶ B2. Describing the nature of her case, Ms.
Gamble states:

"Breach of Contract and Invasion of the Right to Privacy....

Citifinancial, Inc .... collected non-public personal
information about me ... which information is contained in
my consumer credit report with a credit reporting agency
and ... used [it] ... in connection with [an] offer of credit....

Citifinancial mailed to me a pre-approved account
statement which shows that a ... $5,500 ... loan has been
pre-approved for my immediate use.... Most businesses
want to please their customers and will do what they can to
make sure that you're satisfied....

I have acknowledge[d] that, for a fee, businesses can look
at these records and use the information to decide whether
to give you credit.... However, if access to non-public
personal information about you to those businesses who
need only to know that information to provide products or
services to you, but has fail[ed] to meet all of its conditions
is known as 'embezzlement' as well as 'fraud' and is a
invasion of the right to privacy and confidentiality.

*Id.* ¶ C. Ms. Gamble attached to her complaint Citifinancial's
"Pre–Approved Account Statement" dated April 8, 2002
and corresponding letter signed by Ms. Landers as Branch
Manager for Citifinancial. The letter includes the following
text:

> The enclosed statement shows that
> a $5,500 loan has been pre-
> approved for your immediate use.
> This pre-approved status means no
> lengthy application is required. Simply
> complete the attached Confirmation of
> Receipt and return it in the enclosed
> return envelope.

**\*2** The "Pre–Approved Account Statement" contains this
"Special Notice": "BARBARA A. GAMBLE—Our central
office has authorized me to offer you a pre-approved loan
for $5,500." The reverse side sets out the "Terms of Pre–
Approved Offer" in smaller print, stating,

> Information contained in your
> consumer credit report with a
> credit reporting agency was used
> by us in connection with this
> offer of credit. You received this

offer because that credit report indicated that you satisfied the criteria for creditworthiness used to select consumers to receive this offer. Among other criteria to qualify for this offer, you must in fact have the credit qualifications on which the offer was based, you must be the owner of residential real estate property in which you live, payments must be current on any first mortgage loan secured by your residential real property, and you must have a minimum verifiable annual income of $20,000. The credit may not be extended, if, after you respond to the offer, we determine that you do not meet the criteria used to select your name for this offer, or any applicable criteria bearing on creditworthiness, or you have opened any loan account with us in the last 75 days.

## II. Analysis

Pursuant to 28 U.S.C. § 1915(e)(2)(B), "the court shall dismiss the case at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted...." 28 U.S.C. § 1915(e)(2)(B). The Court "construe[s] pro se complaints liberally and [applies] a more flexible standard in determining the sufficiency of a pro se complaint than [it] would in reviewing a pleading submitted by counsel." *Platsky v. C.I.A.,* 953 F.2d 26, 28 (2d Cir.1991) (*citing, inter alia, Haines v. Kerner,* 404 U.S. 519, 520–521 (1972)). Thus, "when an *in forma pauperis* plaintiff raises a cognizable claim, his complaint may not be dismissed *sua sponte* under § 1915(e)(2)(B)(i) even if the complaint fails to 'flesh out all the required details.' " *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (*quoting Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (per curiam). The Court exercises caution in dismissing a case under § 1915(e) because a claim that the court perceives as unlikely to be successful does not necessarily fail to state a claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (Although "it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] that is not the test" for whether a complaint states a claim.); *Neitzke v. Williams,* 490 U.S. 319, 329 (1989).

Ms. Gamble's complaint is difficult to understand, but mindful of the liberal pleading standards applicable to *pro se* complaints, the Court construes Ms. Gamble's complaint broadly to conclude that, in addition to possibly alleging state statutory and common law actions, her complaint alleges a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (2002), which provides a private right of action against entities requesting credit information that fail to follow the provisions of the FCRA with respect to the release and use of consumer credit information. *See* 15 U.S.C. §§ 1681b(f) and 1681n and o. Under the FCRA, there are circumstances pursuant to which a consumer's credit report may be obtained without the consent or even the knowledge of the consumer. *See e.g.,* 15 U.S.C. § 1681b(c) and (f); *see also Cole v. U.S. Capital, Inc.,* No. 02C1858, 2002 WL 31415736 (N.D.Ill. Oct. 25, 2002), *Swift v. First USA Bank,* No. 98C8238, 1999 WL 965449, at *1–5 (N.D.Ill. Sept. 30, 1999).

**\*3** 15 U.S.C. § 1681b(c)(1)(B) provides:

A consumer reporting agency may furnish a consumer report relating to any consumer ... in connection with any credit ... transaction that is not initiated by the consumer only if -

(B)(i) the transaction consists of a firm offer of credit ...;

(ii) the consumer reporting agency has complied with subsection (e) of this section; and

(iii) there is not in effect an election by the consumer, made in accordance with subsection (e) of this section, to have the consumer's name and address excluded from lists of names provided by the agency pursuant to this paragraph.

15 U.S.C. § 1681a(l)(1)(A) and (B) in turn provide:

The term "firm offer of credit ..." means any offer of credit ... to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:

(1) The consumer being determined, based on information in the consumer's application for the credit ..., to meet specific criteria bearing on credit worthiness ... that are established -

(A) before selection of the consumer for the offer;

and

(B) for the purpose of determining whether to extend credit ... pursuant to the offer.

 (2) Verification -

(A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness ... of the consumer; or

(B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness....

Plaintiff's complaint could be read to allege the following violation of the FCRA: 1) Citifinancial obtained information in plaintiff's consumer report from a credit agency without plaintiff's knowledge or consent and then used the information to determine that she was eligible for and to make her a pre-approved offer of credit; 2) Citifinancial had no right to obtain and use plaintiff's credit information unless it first paid plaintiff a fee; and 3) Citifinancial did not pay plaintiff any fee in exchange for obtaining and using the information in consumer report.

So construed, plaintiff's allegations fail to state a claim under the FCRA because defendant's pre-approved account statement and attendant letter clearly establishes that defendant's pre-approved offer of credit constitutes a "firm offer" as defined by the FCRA. Taken together, the documents appended to plaintiff's complaint and thus incorporated clearly reveal that: 1) Ms. Gamble was offered a pre-approved loan for $5,500 based on information in her consumer credit report; 2) Ms. Gamble received the offer because, based on information in her consumer report, she satisfied the specific criteria generally used to select consumers to

receive the offer; 3) The loan offer was further conditioned on plaintiff being determined, based on information in her response to the offer, to meet specific criteria bearing on credit worthiness (including, among other things, actually having the credit qualifications on which the offer was based, being the owner of residential real estate property in which one lives, and having a minimum verifiable annual income of $20,000); and 4) Such further conditions were established before the selection of plaintiff for the offer and for the purpose of determining whether to extend credit pursuant to the offer. Accordingly, defendants' pre-approved offer of credit is a "firm offer" as defined by the FCRA, and, as such, defendants were permitted by FCRA to obtain plaintiff's credit information without her knowledge or consent and to use such information without payment of a fee to plaintiff for the purpose of evaluating plaintiff's eligibility for and making of the loan offer, and therefore plaintiff's complaint must be dismissed.

 **\*4** Because the Court cannot "rule out any possibility, however unlikely it might be, that an amended complaint would succeed" in stating a claim under some federal consumer protection statute, Ms. Gamble will be afforded one opportunity to file an amended complaint no later than twenty days from the date of this order. *Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 795–96 (2d Cir.1999). *Pro Se* plaintiff Gamble is advised that any such amendment must comply with Fed.R.Civ.P. 8(a)(1), which requires "a short and plain statement of the grounds upon which the court's jurisdiction depends...."

III. Conclusion

For the reasons set out above, plaintiff's complaint [Doc. # 3] is DISMISSED, with leave to file an Amended Complaint within twenty (20) days of the date of this Order. It is certified that any appeal *in forma pauperis* from this order would not be taken in good faith within the meaning of 28 U.S.C. § 1915(a).

All Citations

Not Reported in F.Supp.2d, 2002 WL 31643028

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1556890
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Shaniqua ROGERS, Plaintiff,

v.

TRANS UNION LLC, Defendant.

23-CV-0536 (RPK) (TAM)
|
Signed April 10, 2024

**Attorneys and Law Firms**

Shaniqua Rogers, Brooklyn, NY, Pro Se.

Camille Renee Nicodemus, Quilling Selander Lownds
Winslett Moser, Indianapolis, IN, Joshua Allen Stiers,
Seyfarth Shaw LLP Schuckit & Associates, P.C., New York,
NY, for Defendant.

**MEMORANDUM AND ORDER**

RACHEL P. KOVNER, United States District Judge:

 **\*1** *Pro se* plaintiff Shaniqua Rogers sued defendant Trans
Union LLC ("TransUnion") under the Fair Credit Reporting
Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and New York
State laws. *See* Compl. (Dkt. #1). TransUnion has moved
for judgment on the pleadings under Federal Rule of Civil
Procedure 12(c). *See* Mot. for J. on Pleads. (Dkt. #16). For the
reasons set out below, the motion is granted.

**BACKGROUND**

The following facts are drawn from the complaint and are
assumed true for purposes of this order.

Plaintiff alleges that "[t]here were accounts and personal
information that were furnished inaccurately on [p]laintiff's
reports" from TransUnion, a credit reporting agency. Compl.
¶ 9. She does not specify what the alleged inaccuracies
were. *See generally* Compl. Plaintiff states that she
submitted Consumer Financial Protection Bureau complaints
to question the accuracy and completeness of her TransUnion
"consumer file." *Id.* ¶ 8. She alleges that TransUnion failed to
"properly investigate disputes, sent generic letters and failed

to provide lawful information about [p]laintiff's consumer
file and consumer report after numerous requests." *Id.* ¶
11. Plaintiff further alleges that TransUnion's "procedures to
furnish and verify information are inaccurate or incomplete."
*Id.* ¶ 13. Plaintiff claims that TransUnion's furnishing
of inaccurate information "caused damage to [p]laintiff's
credit report and limited [p]laintiff's desire to extend credit
for personal, family, or household purposes," *id.* ¶ 14,
caused plaintiff to face "numerous adverse actions for credit
extensions," *id.* ¶ 15, and caused her "severe emotional
distress," *id.* ¶ 17.

Plaintiff filed this lawsuit in 2023, alleging that TransUnion
violated the FCRA, which authorizes consumers to sue "any
person" who "willfully" or "negligent[ly]" fails to comply
with the FCRA's requirements. 15 U.S.C. §§ 1681n, 1681*o*.
Plaintiff alleges that TransUnion acted negligently by failing
to (i) compile and maintain an accurate consumer file for
plaintiff, (ii) furnish accurate information on her consumer
report, (iii) investigate plaintiff's evidence of inaccuracy, and
(iv) correct the inaccurate information. Compl. ¶¶ 21–29.
Plaintiff also brings state-law claims for violations of the New
York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen.
Bus. Law § 380, as well as for defamation of character and
"assumption of duty." *Id.* ¶¶ 30–41. Plaintiff seeks "punitive,
actual and statutory damages" from TransUnion. *Id.* ¶ 18.

TransUnion answered the complaint, *see* Answer (Dkt. #12),
and has now moved for judgment on the pleadings under Rule
12(c), *see* Mot. for J. on Pleads.

**STANDARD OF REVIEW**

Motions for judgment on the pleadings under Federal Rule
of Civil Procedure 12(c) and motions to dismiss under Rule
12(b)(6) are evaluated under the same standard. *Ziemba v.
Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). In evaluating
either motion, a court must "accept[ ] all factual claims in the
complaint as true, and draw[ ] all reasonable inferences in the
plaintiff's favor."*Lotes Co. v. Hon Hai Precision Indus. Co.*,
753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse v.
5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)). To
avoid dismissal, the complaint's "[f]actual allegations must be
enough to raise a right to relief above the speculative level ...
on the assumption that all of the complaint's allegations are
true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
The complaint, in other words, must plead "enough facts to
state a claim to relief that is plausible on its face." *Id. at 570*.

While the plausibility standard "is not akin to a 'probability requirement,' " it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

**\*2** The complaint of a *pro se* plaintiff must be "liberally construed, and ... however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Plaintiff has not plausibly alleged that TransUnion violated the FCRA or the NYFCRA. As alleged, plaintiff's state common-law claims are expressly preempted by the FCRA. Even if plaintiff's common-law claims were not preempted, she fails to state sufficient facts to support those claims.

## I. Plaintiff Fails to Allege a Plausible FCRA Claim
Plaintiff has failed to plausibly allege any violations of the FCRA. The FCRA "regulates the consumer reporting agencies that compile and disseminate personal information about consumers" and "imposes a host of requirements concerning the creation and use of consumer reports." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 335 (2016)). The complaint appears to assert violations of 15 U.S.C. §§ 1681e(b) and 1681i. *See* Compl. ¶¶ 21–29. Those sections require TransUnion to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," 15 U.S.C. § 1681e(b), and to "conduct a reasonable reinvestigation" when the "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer," *id.* § 1681i.

Plaintiff fails to adequately allege that TransUnion violated Section 1681e(b) or 1681i. To bring claims under these provisions, plaintiff must plausibly allege (among other things) that (i) her credit report contained disputed information that is inaccurate, and (ii) defendant failed to

follow reasonable procedures to assure maximum possible accuracy of a report, *see id.* § 1681e(b), or to reinvestigate, *see id.* § 1681i. *See, e.g., Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269–70 (2d Cir. 2023) (discussing claims under Section 1681e(b)); *Jones v. Experian Info. Sols., Inc.*, 982 F. Supp. 2d 268, 272–74 (S.D.N.Y. 2013) (compiling cases addressing claims under Section 1681i). Plaintiff has not done so.

Plaintiff has not adequately pleaded an inaccuracy because she fails to specify what information in her credit report was incorrect and why. Plaintiff makes only conclusory allegations that TransUnion reported "inaccurate information," Compl. ¶ 22, and "did not delete names, addresses, and other contact information that were inaccurate," *id.* ¶ 27. This Court recently dismissed plaintiff's Section 1681e(b) and 1681i claims in a separate lawsuit against Experian Information Solutions, Inc., based on identical allegations. *Rogers v. Experian Info. Sols., Inc.*, No. 23-CV-0538 (RPK) (TAM), 2024 WL 1348500, at \*2 (E.D.N.Y. Mar. 29, 2024). Other courts also routinely dismiss Section 1681e(b) and 1681i claims like this that do not identify specific misstatements and explain why they were incorrect. *See, e.g., Varlack v. TransUnion, LLC,* No. 23-CV-6760 (LTS), 2023 WL 6608980, at \*2 (S.D.N.Y. Oct. 10, 2023) (dismissing Section 1681e(b) claim because plaintiff did not "plead facts about what inaccurate information appeared on her consumer reports ... other than stating that there was a 'billing error' "); *Gestemer v. Equifax Info. Servs., LLC*, No. 18-CV-5665 (JFK), 2019 WL 1172283, at \*2 (S.D.N.Y. Mar. 13, 2019) (dismissing both Section 1681e(b) and 1681i claims because the complaint did not include "any explanation as to why" information was inaccurate); *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at \*4 (E.D.N.Y. June 14, 2019) (dismissing both Section 1681e(b) and 1681i claims because plaintiff did not "state facts demonstrating that [d]efendant's report about [p]laintiff was inaccurate" and collecting cases); *see also Henry v. Flagstar Bank, FSB*, No. 16-CV-1504 (JMA), 2019 WL 1471267, at \*2 (E.D.N.Y. Mar. 31, 2019) (dismissing FCRA claim because plaintiffs did not allege "what information [defendant] allegedly reported, to whom, why it was allegedly false, or any other information that could support such a claim").

**\*3** The complaint is also devoid of factual allegations regarding TransUnion's procedures to ensure the accuracy of its reports, *see* 15 U.S.C. § 1681e(b), or to reinvestigate any disputed information, *see id.* § 1681i. Because Sections

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1681e(b) and 1681i do not impose strict liability for inaccuracies, the failure to allege what steps TransUnion took or failed to take pertaining to the accuracy of its reports is an independent basis to dismiss plaintiff's FCRA claims. See Rogers, 2024 WL 1348500, at *3 (dismissing plaintiff's claims against Experian based on identical allegations); Ahmad v. Experian Info. Sols., Inc., No. 23-CV-2222 (LJL), 2023 WL 8650192, at *5–6 (S.D.N.Y. Dec. 14, 2023) (dismissing Section 1681e(b) claim because plaintiff "states nothing at all about [defendant's] procedures" and Section 1681i claim because plaintiff did not allege "what [d]efendant *did* in the course of reinvestigating" (citation and internal quotation marks omitted)); Nguyen v. Ridgewood Sav. Bank, No. 14-CV-1058 (MKB), 2015 WL 2354308, at *11 (E.D.N.Y. May 15, 2015) (dismissing Section 1681e(b) claim because plaintiff failed "to make any allegations relating to the procedures ... Trans Union instituted to ensure the accuracy of the information" and Section 1681i claim because plaintiff failed "to make any allegations regarding either the procedures followed or investigations by ... Trans Union in response to [plaintiff's] complaints").

In sum, because plaintiff's allegations amount to little more than "a formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, the Court cannot "draw the reasonable inference that the defendant is liable" under the FCRA, Iqbal, 556 U.S. at 678. Plaintiff's FCRA claims are accordingly dismissed.

## II. Plaintiff Fails to Allege a Plausible State-Law Claim

Plaintiff also fails to allege a plausible violation of New York State law. While plaintiff does not explicitly invoke diversity jurisdiction as a basis for this Court to exercise subject matter jurisdiction over these claims, plaintiff has pleaded that the parties are diverse, *see* Compl. ¶¶ 5, 7, and that the amount in controversy exceeds the sum or value of $75,000, *seeid.* at 5 ("Invoice"). The Court therefore considers plaintiff's state-law claims under its diversity jurisdiction. *See* 28 U.S.C. § 1332.

### A. Plaintiff Fails to State NYFCRA Claims

Plaintiff does not plausibly allege that TransUnion violated Sections 380-j(a), 380-h(a), and 380-h(b) of the NYFCRA.

Plaintiff fails to state a claim under Section 380-j(a) of the NYFCRA. As relevant here, Section 380-j(a) prohibits a consumer agency from "report[ing] or maintain[ing] in the file on a consumer" information "which it has reason

to know is inaccurate." N.Y. Gen. Bus. Law § 380-j(a) (4). "Because the language of the NYFCRA and the FCRA is substantially similar," the Court's "conclusions regarding the FCRA also dispose of [plaintiff's] NYFCRA claim[ ]." Mader, 56 F.4th at 267 n.1; *see* Rogers, 2024 WL 1348500, at *3 (dismissing this plaintiff's identical NYFCRA claim against Experian); Ahmad, 2023 WL 8650192, at *4 n.4 ("[T]he Court's discussion of [p]laintiff's claims under the FCRA also applies to the extent he intends to assert claims under the NYFCRA."). As discussed above, plaintiff's FCRA claims are dismissed because plaintiff failed to plausibly allege that her consumer report or file contained inaccurate information. *See* supra pp. 4–5. Accordingly, her Section 380-j(a) claim is dismissed for the same reason.

Plaintiff's claim that TransUnion failed to furnish "a copy of investigative consumer reports after requests," in violation of Sections 380-h(a) and (b), is also dismissed. Neither of those sections requires a consumer reporting agency to supply a copy of investigative reports to a consumer upon her request. See N.Y. Gen. Bus. Law §§ 380-h(a), 380-h(b). Plaintiff's Section 380-h(a) and (b) claims are therefore dismissed.

### B. Plaintiff Fails to State Any Common-Law Claims

Plaintiff's common-law claims also fail. While plaintiff pleads claims for defamation of character and "assumption of duty," "assumption of duty" is not itself a cause of action but is instead "a theory that satisfies one of the multiple elements a plaintiff must allege to plead a claim for negligence." Kloner v. United States, No. 13-CV-3171 (MKB), 2016 WL 5921071, at *5 (E.D.N.Y. Oct. 11, 2016) (collecting cases). The Court therefore construes the complaint as bringing negligence and defamation claims, which fail both because they are preempted by the FCRA and because, in any event, they are too conclusory to survive dismissal.

**\*4** Plaintiff's negligence and defamation claims are expressly preempted by the FCRA. The FCRA preempts "any action or proceeding in the nature of defamation ... or negligence with respect to the reporting of information against any consumer reporting agency ... based in whole or in part on [a consumer] report[,] except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Because plaintiff does not plausibly allege that TransUnion acted with malice or willful intent to injure, the FCRA bars plaintiff from bringing these causes of action. *See* Rogers, 2024 WL 1348500, at *4 (finding this plaintiff's identical defamation and negligence claims against Experian were

preempted by FCRA); *Desmarattes v. Equifax*, No. 22-CV-3330 (KAM), 2023 WL 8473362, at *11 (E.D.N.Y. Dec. 7, 2023) (dismissing defamation claim because plaintiff did not "allege[ ] facts establishing malice or willful intent to injure"); *Holmes v. Experian Info. Sols., Inc.*, 507 F. App'x 33, 35 (2d Cir. 2013) (affirming district court's ruling "that the FCRA preempts claims of negligence by consumer reporting agencies, allowing recovery only for malice or willfulness, which [plaintiff] did not allege").

Even if the FCRA did not preempt plaintiff's negligence and defamation claims, plaintiff fails to allege nonconclusory facts to support those claims. To state a claim for defamation, a complaint must allege, among other elements, "a false statement that is ... published to a third party." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). And in alleging her negligence claim, plaintiff asserts that TransUnion breached its "duty to address, provide reasonable care, and prevent incomplete and inaccurate information on [p]laintiff's credit report and consumer file." Compl. ¶ 40. Because, as discussed above, plaintiff has not plausibly alleged her credit report contained inaccurate or false information, *see supra* pp. 4–5, her defamation and negligence claims fail.

**CONCLUSION**

Defendant's motion for judgment on the pleadings is granted. Because courts should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted), plaintiff may file an amended complaint within 30 days of the date of this Order, *see Regeda v. City of New York*, No. 09-CV-5427 (KAM) (VVP), 2012 WL 7157703, at *3 (E.D.N.Y. Sept. 7, 2012) (noting that courts may allow leave to replead upon granting a Rule 12(c) motion), *report and recommendation adopted*, 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013); *Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 441 (S.D.N.Y. 2010) (same). If plaintiff does not file an amended complaint within 30 days, judgment shall be entered dismissing the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, so *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 1556890

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.